E-FILED
Wednesday, 21 November, 2018  06:29:58 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| Richard Brooks, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| -vs- | ) | No. 17-cv-2265 |
| | ) | |
| City of Kankakee, Illinois, | ) | |
| | ) | |
| *Defendant.* | ) | |

## ANSWERS TO INTERROGATORIES

Plaintiff Richard Brooks, under penalties of perjury, certifies that

the following interrogatory answers are true:

1. State your full name, address, Social Security Number, date of birth, driver's license number and State of issue. Further state whether you have ever been known by or used any other name(s) and, if so, please state such other name(s) and the dates within which you used or were known by such name(s).

ANSWER: Richard Brooks, ███████████████████████.
Other information on file with City of Kankakee, IL and produced in discovery by defendant. No other names.

2. State the full name and last known residence address and telephone number of each person who witnessed or claims to have witnessed the occurrences that are the subject of this suit, and specify the subject matter that each person witnessed.

ANSWER:  Defendant posted a list for promotion to sergeant in 2014 and used that list to promote Paul Berge and Gary Tison to sergeant in 2016 and 2017, respectively. The final decision to promote Berge was made by the then Chief of Police, then Larry Regnier. Although was no longer the Chief when Tison was promoted, Regnier was responsible for covering up an incident of racial abuse by Tison, which, but for the cover-up, would have disqualified Tison from promotion.

My score of 57 on the "oral assessment" portion of the 2014 promotional process was lower than it should have been because of retaliation. (I did better on the 2011 oral assessment than I had done in 2014, when I re-



EXHIBIT
1
8/30/18   BH

Exhibit A, Part 2

ceived a score of 67.) The members of the assessment panel in 2014 who were involved in this act of retaliation are Robin Passwater and Chris Kidwell, each a current employee of the City of Kankakee.

I received 12 "Chief's Merit's Points" on the 2014 promotional process, rather than the 15 to which I was entitled. Larry Regnier, who was then the Chief of Police, is responsible for this act of retaliation.

On April 25, 2016, then Chief Larry Regnier informed me in writing that I would be fired if I continued to complain about race discrimination and the refusal of the Police Department to investigate the cover-up of wrongdoing by Officer Berge. A copy of that memorandum is attached to my complaint as Exhibit 1.

On September 17, 2015, then Chief Larry Regnier suspended me for three days for allegedly having violated police department rules. White officers, including Paul Berge, Michael Shreffler, and Michael Coash, had engaged in similar alleged wrongdoing. Shreffler received a one day suspension. There was no reason, other than race for this disparate treatment.

Regnier's intent to retaliate against me because of my complaints about racial discrimination at the Kankakee Police Department is known to the following present and former Kankakee police officers:

    1. Billy Jerome Moore (have his address on the EEOC Charge)

    2. Joe Baptiste, retired,

    3. Matt Adamson (former Commander) report about Berge, and refusal of Chief Regnier to approve Adamson's request that I receive a letter of commendation;

    4. Mike Suprenant, Kankakee police officer, knows about Regnier's refusal to approve Adamson's request that I receive a letter of commendation;

    5. Willie Hunt (present Deputy Chief), knows about my treatment.

    6. Scott Halper, Kankakee police officer, knows about manipulation of the 2014 promotional list to favor Paul Berge and the cover-up of Tison's racial comments.

3. State the full name and current residence address of each person not named in interrogatory No. 2 above who was present and/or claims to have been present at the scene immediately before, at the time of, and/or immediately after the occurrences, and specify the subject matter that each person witnessed.

ANSWER: See response to interrogatory 2.

4. Do you know of any statements made by any person relating to the occurrences that are the subject of this suit, including

statements made on any form of social media? If you answered "yes," state the following: (a) the date or dates of such conversations and/or statements; (b) the place of such conversations and/or statements; (c) all persons present for the conversations and/or statements; (d) the matters and things stated by the person in the conversations and/or statements; (e) whether the conversation was oral, written and/or recorded; and (f) who has possession of the statement if written and/or recorded.

ANSWER: No.

5. Were any photographs, movies and/or videotapes taken of the scene of the occurrences that are the subject of this suit or of the persons involved? If so, state the date or dates on which such photographs, movies and/or videotapes were taken, the subject thereof, who now has custody of them, and the name, address and occupation and employer of the person taking them.

ANSWER: No.

6. Have you ever been convicted of a misdemeanor involving dishonesty or false statement, or of a felony? If so, state the nature thereof, the date of the conviction, and the court and the caption in which the conviction occurred. For the purpose of this interrogatory a plea of guilty shall be considered as a conviction.

ANSWER: No.

7. Were you ever in the military service? If so, state: (a) rank; (b) serial number; (c) branch of service; (d) approximate dates of entry and discharge; (e) location of assignment; (f) nature of discharge, whether honorable or otherwise, and if for medical reasons, so state, giving the nature of the medical disability. Were you the subject of any disciplinary proceedings in the military service? If so, state the nature and outcome of such proceedings.

ANSWER: No.

8. Describe every injury you claim to have been caused by the occurrences that are the subject of this suit. If you claim multiple injuries inflicted by different individuals or entities or at different times and places, so state, indicating when and where each such injury was inflicted.

ANSWER: I was denied equal employment opportunities, lost wages, retirement benefits and suffered the emotional distress associated with being the victim of racial distress.

9. If you claim to have suffered any mental or emotional injuries as a result of the occurrences that are the subject of this suit,

-3-

explain and describe the alleged injuries or condition, list each mental health care provider who has diagnosed or treated you for the injury or condition, and indicate the address of the provider and the dates of treatment.

ANSWER: No treatment. Emotional distress associated with being the victim of racial distress: feelings of anger and helplessness.

10. If you claim that as a consequence of the occurrences that are the subject of this suit you were unable to work or that your employment was otherwise somehow affected (i.e., termination, suspension, demotion, reassignment), state: (a) the name and address of your employer, if any, at said time; (b) the date or inclusive dates on which you were unable to work; (c) the amount of wage or income loss claimed by you; and (d) the base rate of pay received by you at the time of the incident.

ANSWER: No.

11. State any and all economic losses you claim as a result of the occurrences that are the subject of this suit. As to each loss, state the date or dates it was incurred, the name of the person, firm and/or company to whom such amounts are owed, whether the expense or loss in question has been paid and, if so, by whom it was so paid, and describe the reason and/or purpose of each expense and/or loss.

ANSWER: I would have, to date, earned about twenty thousand dollars over what I earned had I been promoted to lieutenant in March of 2016.

12. Had you suffered any personal injury and/or illness within the ten (10) years prior to the date of the occurrences? If so, state where and how you were injured and/or ill and describe the injuries and/or illness suffered.

ANSWER: No.

13. Have you suffered any personal injury and/or illness since the date of the occurrences that are the subject of this suit? If so, state when, where and how you were injured and/or ill and describe the injuries and/or illness suffered.

ANSWER:No.

14. Apart from the case at bar, have you ever been a party to any civil lawsuit, whether filed by you or against you? If so, state the caption, the court in which filed, the year filed and docket number of the case.

ANSWER: Yes. *Baptist v. City of Kankakee*, C.D.Ill., No. 03-cv-2115, settled after trial, *aff'd Baptist v. City of Kankakee*, 481 F.3d 485 (7th Cir. 2007).

15. Identify every time that you applied "for promotion to the position of police sergeant" as referenced in Paragraph 4 of your complaint. For each application, state: (a) the date on which you applied; (b) the date on which the promotion(s) to sergeant were made; (c) the name of any individual(s) who were promoted to sergeant; and (d) every reason you believe that the individual(s) promoted were less qualified than you to be police sergeant.

ANSWER: I believe I applied for promotion about 5 or 6 times. I was hired in 1996, and applied for promotion in 2001, 2005, 2008, 2011, and 2014. I do not recall the dates on which promotions were made.

In 2011, Michael Sneed was promoted over me. Berge was promoted over me in 2016 and Tison was promoted over me in 2017.

16. Identify every one of the "variety of retaliatory acts against plaintiff' as referenced in Paragraph 6 of your complaint. For each act, state: (a) who committed the alleged act and who else was present when the act occurred; (b) where the alleged act was committed; (c) when the alleged act was committed; (d) what the act consisted of; and (e) why you believe the act was retaliatory.

ANSWER: In addition to the facts I provided in response to interrogatory 2, on two occasions in 2013 or 2014, my commander (Matthew Adamson) put me in for a letter of commendation. The Chief (Larry Regnier) refused to issue the letter.

17. Identify any other African American police officer employed by the City of Kankakee who, since the date of the filing of the *Baptist* case mentioned in Paragraph 5 of your complaint, has obtained the rank of sergeant or higher. For each person so identified, state: (a) the name of that person; (b) the date that person obtained that rank; (c) whether you believe that *you* are more qualified than that person for the rank at issue; and (d) every reason for your answer given in (c).

ANSWER: 2007: Willie Hunt

       2011 List: Michael Sneed

18. Have you ever been disciplined in connection with your duties as a City of Kankakee Police Officer? If yes, identify every incident of discipline, and for each incident, state: (a) the allegations which led to the discipline; (b) the date of the event(s) in the allegations; (c) the discipline given to you; (d) the identity of every person involved in the disciplinary process; and (e) whether the allegations were true or false.

ANSWER: Discipline is identified in my personnel file, as produced by defendant in this litigation.

19. Do you contend that the City of Kankakee is in any way in violation of the *Baptist* settlement, which you reference in paragraph 5 of your complaint, and have attached to your Rule 26 disclosures? If yes, identify: (a) every violation you believe to have occurred; (b) the nature of the violation; (c) the date the violation occurred; (d) the person(s) committing the violation; and (e) the basis of knowledge for your answers to this interrogatory.

## ANSWER: No.

20. Identify what information or opinions relevant to this case the eight individuals you list in paragraph "A" of your initial disclosures possess.

## ANSWER: See response to interrogatory 2.

21. Identify any social media accounts (Facebook, Twitter, etc.) which you currently or previously maintain or over which you currently or previously exercise control. For any account, state: (a) all account or screen names you have used for that platform; (b) the approximate date you joined that platform; (c) whether you ever made any statements related to the occurrence on which this suit is based on the platform; and (d) the date and nature of any such statements made.

## ANSWER: No social media accounts.

22. Describe in detail the amount of and basis for each element of damages you are claiming in this case, including, but not limited to, lost wages and benefits, and provide: (a) an itemization of the value of any reduced benefits claimed, including but not limited to pension, insurance, benefits; (b) all evidence supporting your inclusion of "future lieutenant's salary" in your calculations, including any date you believe that you should have been or should be promoted to lieutenant and every reason you believe that date is appropriate; (c) the amount of interest, if any, included and every reason you believe that amount of interest is appropriate; (d) the assumed retirement date for any future damages calculation, and every reason you believe that assumption appropriate for your damages calculations; and (e) the method for calculating damages.

## ANSWER: A sergeant earns about 15,000 more each year than I do; a lieutenant earns about $10,000 more each year than a sergeant.

Dated: July 1, 2018

Richard Brooks

-6-

**E-FILED**
Thursday, 22 September, 2005 12:49:17 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA/DANVILLE DIVISION

| | | |
|---|---|---|
| JOSEPH BAPTIST, RICHARD BROOKS, PRICE DUMAS, WILLIE HUNT and LAMONT UPTON, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 03-2115 |
| CITY OF KANKAKEE and MICHAEL KINKADE in his official capacity as CHIEF OF POLICE of CITY OF KANKAKEE, | ) ) ) ) | |
| Defendants. | ) ) | |

### AGREED JUDGMENT ORDER

This matter comes on for hearing and the plaintiffs, by and through their attorney, CHRISTOPHER BENT, and the defendants, by and through their attorneys, STANLEY L. MORRIS of QUINN, JOHNSTON, HENDERSON & PRETORIUS and CHRISTOPHER W. BOHLEN, Corporation Counsel, do hereby stipulate and agree to the entry of the following order in resolution of the outstanding and pending issues.

IT IS, THEREFORE, ORDERED AS FOLLOWS:

1.      The City of Kankakee does hereby agree that it is the goal and desire of the City of Kankakee and further that it shall use reasonable efforts to recruit, hire and promote qualified African American, Hispanic, female and other minority candidates as police patrol officers and supervisors in order to assure that the employees of said department are diverse in their cultural background and reflect the racial, gender and ethnic demographics of the civilian labor force residing in the City of Kankakee.

2.      In order to assure that the recruitment, employment and promotional processes are free from discrimination against race, gender or cultural background and in order to assure that the broadest pool of applicants are made aware of the employment possibilities within the police department, the City of Kankakee agrees to re-establish a "Blue Ribbon Committee" appointed by the Mayor of the City of Kankakee and consisting of the President of the Kankakee County NAACP; the President of the Kankakee County Society of Women in the Law; the Personnel/Affirmative Action Officer of the City of Kankakee; the president of the Casa Casacuaran or Casa Guanajuarata Council; a supervisory employee of the Illinois State Police or similar outside police

**EXHIBIT**
2
8/30/18  BH

FEM/AD 0001-001-699

BROOKS1001

-Page 2-

agency who is familiar with the hiring and promotional processes of that and other outside police agencies and a representative of the Equal Employment Opportunity Commission (if such an appointment is permitted by the Commission). In the event that any of the persons holding the office described above is unable to serve for any reason, the mayor and the person unable to serve shall confer to appoint a substitute committee representative.

3.    The Blue Ribbon Committee shall be requested to review the recruiting processes for new employees of the department, the testing process for new employees of the department and the testing process for promotional purposes within the department for the purpose of assuring that the process is free from discrimination and that the processes are conducted in such a manner to assist in meeting the goals described in Paragraph 1 of this Order.  The Committee shall have the right to advise and make recommendations to the Chief of Police and to the City of Kankakee Fire and Police Commission regarding its findings and recommendations.

4.    During the written testing process for employment and for promotion, the City of Kankakee agrees to utilize the services of an independent testing company which shall certify that the written test is in compliance with the guidelines contained in 29 C.F.R 1607.1 et. seq.  The independent testing company shall have possession of all testing materials and the individual's responses to the test questions.  Those records shall be maintained for periods of time consistent with the records retention described herein. The City agrees to retain the testing service to conduct one preparation session for each test. Attendance at the sessions shall be voluntary.

5.    All records regarding the identity, race, gender or minority status  of applicants for employment who complete the testing process shall be maintained for a period of three years after the testing process.  All medical records regarding any person who is disqualified due to a medical condition shall be maintained for a period of three years.

6.    All records regarding the testing process for promotional purposes shall be maintained for a period of five years.  Those records shall be maintained by the City of Kankakee, except those records generated and evaluated by an independent testing service, which records shall be maintained by that testing company.

7.    The City of Kankakee shall conduct annual cultural diversity training for the members of the Police Department.

8.    The City of Kankakee shall provide 120 days notice prior to the administering of any promotional exam.  Such notice shall be given to each individual police officer within the department.

BROOKS1002

-Page 3-

9.    The final allocation of points and the determination of the process for the administration of any competitive exams for employment or promotion shall remain the decision of the City of Kankakee Fire and Police Commission with due consideration given to the advise and recommendations of the Blue Ribbon Committee, the Chief of Police and any other interested person. In the event that the Police and Fire Commission elects not to adopt any of the recommendations of the Blue Ribbon Committee, the Commission will meet with the Committee, if so requested by the Committee to discuss the Commission's decision.

10.    This order shall remain in full force and effect through January 31, 2011 or for a period of two promotional examinations following the entry of the order, whichever occurs last.

11.    The defendant City of Kankakee shall pay to Christopher Bent the sum of Sixty-Seven Thousand and no/100s Dollars ($67,000.00) as and for reimbursement for attorneys fees and costs related to this matter. Said payment shall be made withing fifteen (15) days of the date of the execution of this judgment order.

12.    The plaintiffs do hereby agree to dismiss the pending appeal in the United States Court of Appeals for the Seventh Circuit, Case No. 05-2115 with prejudice.

13.    The plaintiffs do hereby dismiss all other pending matters in the above case before the Central District of Illinois with prejudice.

14.    The plaintiffs shall execute a covenant not to sue indemnifying the City of Kankakee from any claims by the each and all of the plaintiffs relating to the 2005 promotional examination and for any other claims which now exist as of the date of this order.

15.    The plaintiffs agree to dismiss with prejudice all complaints for discrimination filed against the City with the Equal Employment Opportunity Commission and the Illinois Department of Human Rights and known as Case Nos. .

16.    The defendants agree that the plaintiffs shall not lose any vacation, personal or sick days or other compensation as the result of their attendance in court on September 12, 2005.

ENTERED this 22nd day of September, 2005

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE

So Stipulated and Approved

| s/Christopher B. Bent | s/Stanley L. Morris | s/Christopher W. Bohlen |
|---|---|---|
| Christopher B. Bent | Stanley Morris | Christopher W. Bohlen |
| Attorney for Plaintiffs | Attorney for Defendants | Attorney for Defendants |

BROOKS1003

3

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974: See Privacy act statement<br>before completing this form.<br><br>#14W0325-13 | AGENCY<br>☒ IDHR<br><br>☐ EEOC | CHARGE NUMBER<br><br>2014CA2471 |
|---|---|---|

### Illinois Department of Human Rights and EEOC

| NAME OF COMPLAINANT (Indicate Mr. Ms. Mrs.) | | TELEPHONE NUMBER (include area code) | |
|---|---|---|---|
| **Mr. Richard Brooks** | | ▆▆▆▆▆▆▆▆ | |
| STREET ADDRESS | CITY, STATE AND ZIP CODE | | DATE OF BIRTH |
| | | | M   D   YEAR |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (IF MORE THAN ONE LIST BELOW)

| NAME OF RESPONDENT | NUMBER OF EMPLOYEES, MEMBERS 15+ | TELEPHONE NUMBER (include area code) |
|---|---|---|
| **City of Kankakee, Illinois Police Department** | | **(815) 933-0420** |
| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
| **385 East Oak Street** | **Kankakee, Illinois  60901** | **Kankakee (097)** |

| CAUSE OF DISCRIMINATION BASED ON: | DATE OF DISCRIMINATION<br>EARLIEST (ADEA/EPA) LATEST (ALL) |
|---|---|
| **Race      Age      Retaliation** | **10/01/13**<br>☐ CONTINUING ACTION |

THE PARTICULARS OF THE CHARGE ARE AS FOLLOWS:

  I.  A.   ISSUE/BASIS

         FAILURE TO PROMOTE, ON OR ABOUT OCTOBER 1, 2013, BECAUSE OF MY
         RACE, BLACK.

      B.   PRIMA FACIE ALLEGATIONS

         1.   My race is black.

         2.   I have satisfactorily performed my duties as a Police Officer, and have been employed
              with the Respondent since June 10, 1996.

Page 1 of 3

| I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | SUBSCRIBED AND SWORN TO BEFORE ME<br><br>THIS _25_ DAY OF _March_ , 2014.<br><br>▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆<br>NOTARY SIGNATURE |
|---|---|
| OFFICIAL SEAL<br>JACQUELYN TURNER HAMB<br>NOTARY PUBLIC - STATE OF ILLINOIS<br>MY COMMISSION EXPIRES:11/12/17<br>NOTARY STAMP | ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆  03/25/14<br>SIGNATURE OF COMPLAINANT      DATE<br><br>I declare under penalty that the foregoing is true and correct I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |

EEO-5 FORM (Rev. 7/12-INT)

EXHIBIT
3
8/30/18   8A

KANKAKEE 000003

Charge Number:  2014CA2471
Complainant:  Richard Brooks
Page 2 of 3

3. On or about November 28, 2011, the Respondent offered a promotional opportunity for a Sergeant's vacancy.  I was interested in, and qualified for the position, and I applied for the vacancy.

4. On or about October 1, 2013, I discovered that Jeff Martin (white), a less qualified candidate, was selected for Respondent's promotional opportunity.

II.   A.   ISSUE/BASIS

FAILURE TO PROMOTE, ON OR ABOUT OCTOBER 1, 2013, BECAUSE OF MY AGE, 51.

B.   PRIMA FACIE ALLEGATIONS

1. I was 51 years of age at the time of the promotional opportunity.

2. I have satisfactorily performed my duties as a Police Officer, and have been employed with the Respondent since June 10, 1996.

3. On or about November 28, 2011, the Respondent offered a promotional opportunity for a Sergeant's vacancy.  I was interested in, and qualified for the position, and I applied for the vacancy.

4. On or about October 1, 2013, I discovered that Jeff Martin (30's), a less qualified candidate, was selected for Respondent's promotional opportunity.

III.   A.   ISSUE/BASIS

FAILURE TO PROMOTE, ON OR ABOUT OCTOBER 1, 2013, IN RETALIATION FOR FILING A PREVIOUS CHARGE OF DISCRIMINATION AGAINST THE RESPONDENT.

B.   PRIMA FACIE ALLEGATIONS

1. On or about February 25, 2002, I engaged in a previously protected activity when I filed discrimination charge number 2002CF1923 against the Respondent with the Illinois Department of Human Rights.  I also acted as a witness for Officer Billy Moore in January of 2014 in his discrimination charge, number 2014CA0767

2. On or about November 28, 2011, the Respondent offered a promotional opportunity for a Sergeant's vacancy.  I was interested in, and qualified for the position, and I applied for the vacancy.

KANKAKEE 000004

Charge Number:  2014CA2471
Complainant:  Richard Brooks
Page 3 of 3

    3.  On or about October 1, 2013, I discovered that Jeff Martin, a less qualified candidate, was selected for Respondent's promotional opportunity.

    4.  Respondent's adverse actions have followed my protected activity within such a period of time as to raise an inference of retaliatory motivation.

ACF/

KANKAKEE 000005

STATE OF ILLINOIS
DEPARTMENT OF HUMAN RIGHTS

IN THE MATTER OF:

RICHARD BROOKS,                           )
                                          )
                    COMPLAINANT,          )
                                          )         CHARGE NO.  2014CA2471
                                          )         EEOC NO.    21BA41255
AND                                       )
                                          )
CITY OF KANKAKEE, ILLINOIS,               )
POLICE DEPARTMENT,                        )
                                          )
                    RESPONDENT.           )

### NOTICE OF DISMISSAL
### FOR LACK OF SUBSTANTIAL EVIDENCE

Richard Brooks                      L. Patrick Power, Asst. City Attorney
705 S. Roosevelt Ave.               City of Kankakee
Kankakee, IL 60901                  304 S. Indiana Ave.
                                    Kankakee, IL 60901

DATE OF DISMISSAL: January 7, 2015

1.   YOU ARE HEREBY NOTIFIED that based upon the enclosed investigation
     report, the DEPARTMENT OF HUMAN RIGHTS (DHR) has determined that
     there is NOT substantial evidence to support the allegations of the charge(s).
     Accordingly, pursuant to Section 7A-102(D) of the Human Rights Act (775 ILCS
     5/1-101 et. seq.) and its Rules and Regulations (56 Ill. Adm. Code. Chapter II,
     Section 2520.560), the charge is HEREBY DISMISSED.

2.   If Complainant disagrees with this action, Complainant may:

     a) Seek review of this dismissal before the Illinois Human Rights Commission,
        100 West Randolph Street, Suite 5-100, Chicago, Illinois, 60601, by filing a
        "Request for Review" with the Commission by the request for review filing
        date below.  Respondent will be notified by the Human Rights Commission if
        a Request for Review is filed.

     **REQUEST FOR REVIEW FILING DEADLINE DATE: April 13, 2015**

     Or,

     b) Commence a civil action in the appropriate state circuit court within ninety
        (90) days after receipt of this Notice.  A complaint should be filed in the circuit
        court in the county where the civil rights violation was allegedly committed.



EXHIBIT

4

8/30/18    BH

KANKAKEE 000224

**Page 2**
**Notice of Dismissal for Lack of Substantial Evidence**
**2014CA2471**

> If you intend to exhaust your State remedies, please notify the Equal
> Employment Opportunity Commission (EEOC) immediately. The EEOC
> generally adopts the Department's findings. The Appellate Courts in
> Watkins v. Office of the State Public Defender, ___ Ill.App.3d ___, 976
> N.E.2d 387 (1ˢᵗ Dist. 2012) and Lynch v. Department of Transportation, ___
> Ill.App.3d ___, 979 N.E.2d 113 (4ᵗʰ Dist. 2012), have held that discrimination
> complaints brought under the Illinois Human Rights Act ("IHRA") against the
> State of Illinois in the Illinois Circuit Court are barred by the State Lawsuit
> Immunity Act. (745 ILCS 5/1 et seq.). Complainants are encouraged to
> consult with an attorney prior to commencing a civil action in the Circuit Court
> against the State of Illinois.

**Please note that the Department cannot provide any legal advice or assistance.
Please contact legal counsel, your city clerk, or your county clerk with any
questions.**

3.   Complainant is hereby notified that the charge(s) will be dismissed with prejudice
     and with no right to further proceed if a timely request for review is not filed with
     the Commission, or a written complaint with the appropriate circuit court.

4.   If an EEOC charge number is cited above, this charge was also filed with the
     Equal Employment Opportunity Commission (EEOC). If this charge alleges a
     violation under Title VII of the Civil Rights Act of 1964, as amended, or the Age
     Discrimination in Employment Act of 1967, Complainant has the right to request
     EEOC to perform a Substantial Weight Review of this dismissal. Please note
     that in order to receive such a review, it must be requested in writing to EEOC
     within fifteen (15) days of the receipt of this notice, or if a request for review is
     filed with the Human Rights Commission, within fifteen days of the Human Rights
     Commission's final order. Any request filed prior to your receipt of a final notice
     WILL NOT BE HONORED. Send your request for a Substantial Weight Review
     to EEOC, 500 West Madison Street, Suite 2000, Chicago, Illinois 60661.
     Otherwise, EEOC will generally adopt the Department of Human Rights' action in
     this case.

**PLEASE NOTE: BUILDING SECURITY PROCEDURES PRESENTLY IN PLACE DO
NOT PERMIT ACCESS TO EEOC WITHOUT AN APPOINTMENT. IF AN
APPPOINTMENT IS REQUIRED, CALL 312-869-8000 OR 1-800-669-4000.**

                                        DEPARTMENT OF HUMAN RIGHTS

HB1509/HB59
NOD/LSE
12/10

KANKAKEE 000225

STATE OF ILLINOIS
HUMAN RIGHTS COMMISSION

RECEIVED

MAR 2 4 2015

HUMAN RIGHTS COMMISSION
(RD)USPS FX MM ID

IN THE MATTER OF:                     )

RICHARD BROOKS,                       )
                                      )
              COMPLAINANT,            )          CHARGE NO.  2014CA2471
                                      )          EEOC NO.    21BA41255
AND                                   )
                                      )
CITY OF KANKAKEE, ILLINOIS,           )
POLICE DEPARTMENT,                    )
                                      )
              RESPONDENT.             )

## REQUEST FOR REVIEW

Richard Brooks                          L. Patrick Power, Asst. City Attorney
                                        City of Kankakee



TO:  Richard Brooks

DATE:  January 7, 2015

REQUEST FOR REVIEW FILING DEADLINE DATE:  April 13, 2015


      I hereby request that the Department of Human Rights' (DHR) dismissal of the
charge be reviewed by the Illinois Human Rights Commission.


Complainant's Current Address (please print clearly):

_____  _____Apt/Unit #_____

City_____  State_____  Zip_____  Phone_____

EXHIBIT
5
8/30/18    BH

KANKAKEE 000236

Page 2
REQUEST FOR REVIEW
2014CA2471

## TO REQUEST INVESTIGATION FILE:

The Department's investigation file may be reviewed or copied upon request once the Department's investigation is completed. The Department is not responsible for copy service fees. **A minimum of 3 business days' notice is required.** Call (312) 814-6262 to make arrangements.

## REQUEST FOR REVIEW INSTRUCTIONS:

IN THE SPACE PROVIDED BELOW, YOU <u>MUST</u> LIST AND DESCRIBE THE SPECIFIC REASONS THAT THE CHARGE SHOULD NOT HAVE BEEN DISMISSED. If applicable, you may write on the back of this form or attach additional information or documents, which support your Request for Review. You may review your investigation file, to help you prepare your request by calling 312-814-6262 or 217-785-5100.



SIGNATURE

_03/24/15_
DATE

**YOU MUST ENCLOSE THE ORIGINAL AND THREE COPIES, INCLUDING SUPPORTING DOCUMENTS, OF YOUR ENTIRE REQUEST AND SIGN, DATE AND HAVE THIS FORM POSTMARKED OR HAND DELIVERED BY THE FILING DEADLINE DATE ABOVE, TO:**

Illinois Human Rights Commission, 100 West Randolph Street, Suite 5-100, Chicago, IL  60601.

Please note that pursuant to Section 5300.410 of the Commission's Procedural Rules, except by permission of the Commission, the request, argument and supporting materials shall not exceed 30 pages.

Further, note that pursuant to *56 Ill. Admin. Code § 5300.40(b)* of the Commission's Procedural Rules, all arguments in support of the Request for Review must be written on 8 ½ x 11 paper. Any argument submitted on non-conforming paper (such as a "post-it" note) will not be considered part of the Request for Review, and will be disregarded by the Commission.

**THIS FORM MAY NOT BE SENT VIA TELEFAX.**
HB1509/HB59 HRC R/R 01/14

KANKAKEE 000237

STATE OF ILLINOIS
DEPARTMENT OF HUMAN RIGHTS

IN THE MATTER OF:

RICHARD BROOKS, )
)
COMPLAINANT, )        CHARGE NO.  2014CA2471
)        EEOC NO.   21BA41255
AND )
)
CITY OF KANKAKEE POLICE )
DEPARTMENT, )
)
RESPONDENT. )

## NOTICE OF DISMISSAL
## FOR LACK OF SUBSTANTIAL EVIDENCE

Richard Brooks                              L. Patrick Power
                                            City of Kankakee

DATE OF DISMISSAL:  December 29, 2015

1.    YOU ARE HEREBY NOTIFIED that based upon the enclosed investigation
      report, the DEPARTMENT OF HUMAN RIGHTS (DHR) has determined that
      there is NOT substantial evidence to support the allegations of the charge(s).
      Accordingly, pursuant to Section 7A-102(D) of the Human Rights Act (775 ILCS
      5/1-101 et. seq.) and its Rules and Regulations (56 Ill. Adm. Code. Chapter II,
      Section 2520.560), the charge is HEREBY DISMISSED.

2.    If Complainant disagrees with this action, Complainant may:

      a) Seek review of this dismissal before the Illinois Human Rights Commission,
         100 West Randolph Street, Suite 5-100, Chicago, Illinois, 60601, by filing a
         "Request for Review" with the Commission by the request for review filing
         date below.  Respondent will be notified by the Human Rights Commission if
         a Request for Review is filed.

      **REQUEST FOR REVIEW FILING DEADLINE DATE:  April 4, 2016**

      Or,

      b) Commence a civil action in the appropriate state circuit court within ninety
         (90) days after receipt of this Notice.  A complaint should be filed in the circuit
         court in the county where the civil rights violation was allegedly committed.



EXHIBIT
6

8/34/18   8H

KANKAKEE 000250

Page 2
Notice of Dismissal for Lack of Substantial Evidence
2014CA2471

> **If you intend to exhaust your State remedies, please notify the Equal
> Employment Opportunity Commission (EEOC) immediately. The EEOC
> generally adopts the Department's findings.** The Appellate Courts in
> Watkins v. Office of the State Public Defender, ___ Ill.App.3d ___, 976
> N.E.2d 387 (1st Dist. 2012) and Lynch v. Department of Transportation, ___
> Ill.App.3d ___, 979 N.E.2d 113 (4th Dist. 2012), have held that discrimination
> complaints brought under the Illinois Human Rights Act ("IHRA") against the
> State of Illinois **in the Illinois Circuit Court** are barred by the State Lawsuit
> Immunity Act. (745 ILCS 5/1 et seq.). Complainants are encouraged to
> consult with an attorney prior to commencing a civil action in the Circuit Court
> against the State of Illinois.

**Please note that the Department cannot provide any legal advice or assistance.
Please contact legal counsel, your city clerk, or your county clerk with any
questions.**

3.   Complainant is hereby notified that the charge(s) will be dismissed with prejudice
     and with no right to further proceed if a timely request for review is not filed with
     the Commission, or a written complaint with the appropriate circuit court.

4.   If an EEOC charge number is cited above, this charge was also filed with the
     Equal Employment Opportunity Commission (EEOC). If this charge alleges a
     violation under Title VII of the Civil Rights Act of 1964, as amended, or the Age
     Discrimination in Employment Act of 1967, Complainant has the right to request
     EEOC to perform a Substantial Weight Review of this dismissal. Please note
     that in order to receive such a review, it must be requested in writing to EEOC
     within fifteen (15) days of the receipt of this notice, or if a request for review is
     filed with the Human Rights Commission, within fifteen days of the Human Rights
     Commission's final order. Any request filed prior to your receipt of a final notice
     WILL NOT BE HONORED. Send your request for a Substantial Weight Review
     to EEOC, 500 West Madison Street, Suite 2000, Chicago, Illinois 60661.
     Otherwise, EEOC will generally adopt the Department of Human Rights' action in
     this case.

**PLEASE NOTE: BUILDING SECURITY PROCEDURES PRESENTLY IN PLACE DO
NOT PERMIT ACCESS TO EEOC WITHOUT AN APPOINTMENT. IF AN
APPPOINTMENT IS REQUIRED, CALL 312-869-8000 OR 1-800-669-4000.**

                              DEPARTMENT OF HUMAN RIGHTS

HB1509/HB59
NOD/LSE
12/10

                                                        KANKAKEE 000251

STATE OF ILLINOIS
DEPARTMENT OF HUMAN RIGHTS
INVESTIGATION REPORT
ADDENDUM[1]

**Complainant:** Richard Brooks        **IDHR No.:** 2014CA2471
**Respondent:** City of Kankakee Police Department    **EEOC No.:** 21BA41255

**Investigator:** WPS      **Supervisor:** ███    **Date:** 12-11-15

**Issue/Basis:**

A. Failure to promote/race. black
B. Failure to promote/age, 51 DOB April 3, 1962
C. Failure to promote/ retaliation for engaging in a protected activity

**Finding:**

A. Lack of substantial evidence
B. Lack of substantial evidence

C. Lack of substantial evidence

**Jurisdiction:**

| | | |
|---|---|---|
| Alleged violation: | A. B & C | October 1, 2013 |
| Charge filed: | | March 25, 2014 |
| Charge perfected: | | March 25, 2014 |
| Amendments: | | June 29, 2015 |
| Number of employees: | | 67 |

**Verified Response:**

Due:      June 6, 2014
Received:   April 24, 2014
Timely:    X   Untimely: ___      **Group Exhibit A**
If untimely, good cause shown:   Yes ___   No ___

**Background:**

Complainant filed a perfected charge of discrimination with the Department on March 25, 2014. alleging that Respondent, City of Kankakee-Police Department , failed to promote him because of his race, black (Count A), and age, 51 (Count B) , and in retaliation for filing a previous charge of discrimination and for participating in an investigation under the Illinois Human Rights Act (Count C), in violation of sections 2-102 (A) and 6-101(A) of the Act. On January 7, 2015, the Department dismissed Complainant's charge, for Lack of Substantial Evidence. On March 24, 2015, After being notified that the charge was dismissed, Complainant

---

[1]

An addendum report is intended to reflect additional work conducted pursuant to a vacate order and as such should be read in conjunction with the original investigation report and any prior addendum reports.

KANKAKEE 000252

Charge No.: 2014CA2471
Page 2 of 6
Addendum

filed a request for review with the Human Rights Commission. The Commission vacated the
dismissal and ordered further investigation on all counts .

**Uncontested Facts:**

1. Respondent is a municipal governmental body providing services to its residents and
   constituents.

2. Complainant was hired by a Fire and Police Commission vote on June 10, 1996.

3. Respondent can only choose from the top three ranking candidates on the Police and Fire
   Commission promotional process list for promotion to Sergeant.

**Complainant's Allegations – Counts A & B:**

Complainant, a Police Officer, alleges that Respondent failed to promote him because of his
race, black (Count A), and his age, 51 (Count B). Complainant alleges that he has satisfactory
performed his duties as a Police Officer.

**Respondent's Defenses – Counts A & B:**

Respondent denies it failed to promote Complainant because of his race, black and age, 51.
Respondent's legitimate articulated non-discriminatory reason it did not promote Complainant
was because Respondent can only choose from the top three scoring candidates on the Police and
Fire Commission promotional process list for promotion to Sergeant and Complainant ranked
seventh on the list.

**Additional Evidence:**

A.  **Complainant's Evidence**

1. Complainant  stated that Respondent manipulated the subjective portions of the test to
   prohibit him from receiving the promotion to Sergeant because of his race, black and
   age, 51.

2. Joe Baptist ((black, 62), retired patrolman, stated that Respondent used the oral part of
   the exam to manipulate the exam score to exclude blacks from promotion to Sargent.
   Baptist stated that this is what happened to Complainant. Baptist stated that Lieutenant
   Passwarter who sat on the oral exam was the same person who had previously posted
   racial cartoons on the bulletin board which stated that no blacks would be a part of
   management.

3. Michael Supremant (non-black, age, 34), Patrolman, stated that both he and Complainant
   had letters of accommodations sent to the Chief of Police but he never issued them.

KANKAKEE 000253

Charge No.: 2014CA2471
Page 3 of 6
Addendum

Supreman did not remember the date this occurred.  Supreman stated that the Chief had
his favorites who he treated better than others.  Supreman stated that the Chief gives the
highest Chief's Merit points to the individuals he wants promoted and this does not
include blacks.  Supreman stated that he was discriminated against because he had
many black friends in the Department.

**B.    Respondent's Evidence**

1. Larry Regnier (non-black, 58), Chief of Police, stated that the City of Kankakee Police
   and Fire Commission is an independent Board established by State statute  consisting of
   three members appointed by the Mayor for five year staggered terms. Its duties are to set
   standards for hiring, promotions and discipline of police officers  and firefighters.
   Regnier stated that  the Board is responsible for  creating eligibility and promotion list
   based upon testing of applicants. The Board prepared the 2011 promotion  list and
   posted it publically as required by law.   Regnier stated that he choose Jeff Martin for
   promotion to Lieutenant from the top three candidates from the list created by the Board.
   The Board hired Standard & Associates , Inc. to prepare,  administer, and evaluate the
   applicants.   Regnier stated that Standard & Associates, Inc.  maintains all the materials
   related to the testing process and will only provide them to a third party  upon
   submission of a  Subpoena. Regnier stated that the positions of police officer and
   patrolmen are the same.

2. Regnier stated that  Respondent provided the same criteria in selecting Jeff Martin  over
   Complainant that it applied when it promoted other individuals to the Sergeant's position
   during the period of January 1, 2011, through October 1, 2013, and it followed its
   promotional policies /procedures / practices and rules including the Federal Consent
   Decree.  Regnier stated that  the Chief's Merit Points (**Exhibit E**) are based on every
   ranking officer (Sergeants and above) evaluation of the candidates .    Regnier stated that
   Complainant ranked tied for last with a non-black Police Officer with a score of 10 out .
   Regnier stated that  Michael Sneed (black scored a 15 out of 15. Regnier stated that
   Sneed also scored lower on the written test but placed  fifth on the over- all score

**C.    Complainant's Rebuttal,**

1. 1. Complainant did not provide any additional information other than what was previously
      identified in the Complainant's Evidence section.

<u>Analysis:</u>

The investigation revealed that Respondent's EEO policy states that it is Respondent's policy to
provide equality in employment training, compensation, promotion and other conditions of
employment to employees and applicants for employment without regard to race, religion, color,
sex, (including pregnancy status), age, sexual orientation, national origin, physical or mental
disability, military status, or any other classification protected basis under city, state and federal
laws. Complainant maintains that Respondent denied him a promotion to Sergeant because of his
race black and age, 51.  Complainant maintains that Respondent preferred to promote a non-

KANKAKEE 000254

Charge No.: 2014CA2471
Page 4 of 6
Addendum

black, younger Police Officer to Sergeant and used the subjective portions of the evaluations to
reduce his ranking to prevent him from being promoted. Respondent denies it failed to promote
Complainant because of his race, black, and age, 51. Respondent's position is the tests are vetted
nationally and the Sergeant's oral assessment center consists of three officers with the rank of
Lieutenant or above from outside agencies and two officers from Respondent with the rank of
Commander or above. Respondent's position is it did not promote Complainant because
Respondent can only choose from the top three scoring candidates on the Police and Fire
Commission promotional process list for promotion to Sergeant and Complainant ranked seventh
on the list. Respondent's position is that at least nine non-black Police Officers scored lower
than Complainant and all were younger than Complainant, and one black Police scored lower
than Complainant on the written test but placed fifth on the over- all score

### Findings and Conclusion - Counts A & B:

The evidence shows that Respondent can only choose from the top three scoring candidates on
the Police and Fire Commission promotional process list for promotion to Sergeant and
Complainant ranked seventh on the list, and therefore was ineligible for promotion. The evidence
shows that at least nine non-black Police Officers scored lower than Complainant and all were
younger than Complainant. The evidence shows one black Police scored lower than Complainant
on the written test but placed fifth on the over- all score. The investigation did not find nor did
Complainant provide evidence that Respondent failed to promote him because of his race, black
and age, 51.

### Complainant's Allegations – Count C:

Complainant, a Police Officer, alleges that Respondent failed to promote him in retaliation for
engaging in a protected activity when he filed a charge of discrimination against Respondent
with the Illinois Department of Human Rights (IDHR), on February 25, 2002, and also acted as a
witness for Officer Billy Moore in January 2014, in his discrimination charge against
Respondent filed with the IDHR.

### Respondent's Defenses – Count C:

Respondent denies that it denied Complainant a promotion in retaliation for engaging in
protected activities. Respondent's legitimate articulated non-discriminatory reason it did not
promote Complainant was because Respondent can only choose from the top three scoring
candidates on the Police and Fire Commission promotional process list for promotion to
Sergeant and Complainant ranked seventh on the list.

### Additional Evidence:

**A. Complainant's Evidence**
   1. No additional evidence presented.

**B Respondent's Evidence**

Charge No.: 2014CA2471
Page 5 of 6
Addendum

    1. Larry Regnier (no protected activity, no//PA) Chief of Police, stated that Respondent had no knowledge that Complainant was a witness for an IDHR charge of discrimination.

**C. Complainant's Rebuttal**

    1. Complainant did not provide any additional information other than what was previously identified in the Complainant's Evidence section.

**Analysis:**

The investigation revealed Respondent's policy on retaliation states that there shall be no, retaliation against employees for good faith reporting of discrimination and/or harassment or assisting Respondent in the investigation of such complaints. Complainant maintains that Respondent failed to promote him in retaliation for engaging in a protected activity when he filed a charge of discrimination against Respondent with the IDHR on February 25, 2002, and also acted as a witness for Officer Billy Moore in January 2014 in his discrimination charge against Respondent filed with the IDHR. The investigation revealed that Complainant's engagement in a protected activity on February 25, 2002, occurred 11 years prior to the alleged failure to promote on October 1, 2013, which is far too long of period of time to have elapsed to raise an inference of retaliatory motivation. The investigation revealed that Complainant's acting as a witness in January 2014, for Billy Moore in his charge of discrimination against Respondent occurred after he had discovered that he had not been promoted on October 1, 2013, and therefore this could not have resulted in retaliation. Respondent's position is had no knowledge that Complainant was a witness for an IDHR charge of discrimination.

**Findings and Conclusion - Count C:**

The evidence shows that Complainant's engagement in a protected activity on February 25, 2002, occurred 11 years prior to the alleged failure to promote on October 1, 2013, which is far too long of period of time to have elapsed to raise an inference of retaliatory motivation. The evidence shows that Complainant's acting as a witness in January 2014, for Billy Moore in his charge of discrimination against Respondent occurred after he had discovered that he had not been promoted on October 1, 2013, and therefore this could not have resulted in retaliation.

**Witness Information:**

    A. Complainant                          FFC

    B. Larry Regnier (non-black, 58, no P/A) Chief of Police      FFC
       C/o  L. Patrick Power, Assistant City Attorney
       City of Kankakee

KANKAKEE 000256

Charge No.: 2014CA2471
Page 6 of 6
Addendum

███████████████

C.  Billy J Moore (black, 50, no protected activity), Police Officer          in person interview 8/20/14


D.  Lonnie Sturkey  (black, 50 no protected activity), Patrolman          telephone interview 12/5/14

███████████

E.  Joe Baptist  ((black, 62),  retired patrolman.          Telephone interview 10/2015

████████████

F. Micheal Supremant (non-black, 34, Patrolman          in person interview 10/24/2015

Exhibit

F.  Chief's Merit points scores.

ADDSHELL.HB Prev.M.Rep.
Revised 9/08

To:  Whom this may concern

From:  Richard Brooks

Re: Request for review IDHR complaint

Date:  03/01/15

To whom this may concern, I'm writing this letter in response to the findings of the fact finding conference, and to request that the findings be reviewed by the IDHR Review Board Commission.

For evidence, I've provided a chronology of events that had occurred since the implementation of a Federal Court ordered Consent Decree in 2005 which was put into place to monitor the actions and behavior of the respondent (The Chief, Larry Regnier, and his immediate Administration, Deputy Chief, John Gerard and Commander, Robin Passwater) over a certain time period or two testing procedures, which ever came last, which will show that this complaint that I've filed in regards to the 2011 promotional testing falls well within the required parameters of this court order.

During the fact finding conference I've shown (as a protected party of the Consent Decree) that, the Chief and his immediate Administration, has continued the same behavior of not only discriminating against myself and other minorities through discretionary and subjective scoring during the testing for promotions, but also retaliating against me for bringing the repeated offenses to light.  During the subjective/discretionary scoring part of the testing, (although part of the Consent Decree agreement was that the Chief or his Administration would not partake in administering any part of the testing procedure), the Chief would continually take part in submitting his subjective and discretionary "Chief Points" where my scores continued to decline each year after this order was put into place, and the Deputy Chief Gerard and Commander Passwater would continually sit in on the 5 person panel (as representatives of the department) to present and score the oral interview part of the testing.  Their influences on the other three members of the panel (who were members of foreign departments looking for direction, but not aware of the consent decree in place), has continually cause my scoring to decrease each year during my career (19 years) of testing for promotion, although my evaluations from my day to day work by immediate supervisors were increasing each year.  I would like you to also keep in mind that, Commander Robin Passwater was once removed as my and four other



KANKAKEE 000238

minority officers immediate supervisor, due to his averted behavior towards myself and the other four minority officers for filing a complaint with EEOC.

During the findings it was also pointed out that my IDHR complaint had already been filed prior to acting as a witness for the IDHR complaint of Officer Billy J. Moore, but what was not pointed out is that, I had  testified during the fact finding conference, to having acted as a witness for Officer Moore during several incidents in which I believed he (Officer Moore) was being racially discriminated against, and that, when Officer Moore was wrongfully terminated in 2013, he advised the Chief verbally then that, I would be testifying on his behalf against his wrongful and racially charged termination, of which, was  just prior to the filing of my IDHR complaint.  One other incident of many where Officer Moore requested that I be a witness was when, the present Chief, Larry Regnier, suspended Officer Moore for 30 days, relating to what was thought to be, a racially charged incident, which occurred and was assumed to be resolved under the leadership of the prior chief, Chief Mike Kincade, approximately a year prior to Chief Regnier becoming Chief and revisiting the incident.  Officer Moore states that, he has and will testify to this now and in Federal Court on my behalf.

Another point brought out in the fact finding conference was that, the reason I was not promoted was because I was not one of the top three on the list.  When in fact, I should have been moved into the third position from the fourth, but because of the actions or the lack of action by Chief Regnier, who allowed a white officer, Officer Paul Berge, who at the time was moved to the top of the of the list after the promotion of another white officer Jeff Martin, remained on the list, although Chief Regnier had knowledge of Officer Berge's:

1. Battering a Sergeant/supervisor off duty where the supervisor remained in the hospital for over a week,
2. His use of illegal drugs, while participating in a drug enforcement unit spear headed by the Illinois State Police, of which he (Berge) was immediately removed from by the State Police when made aware of the incident.
3. The filing a false police report relating to a vehicle accident Officer Berger was involved in personally (where witnesses state, he was leaving a bar in the City of Kankakee, and struck a neighboring Jewel Food store building) with his own personal vehicle, and the following day reported it as a hit and run, reporting to Officers that his vehicle was parked and not running, but could not explain why the airbags were deployed while his vehicle was parked and not running.  Witnesses, who are willing to testify in Federal Court reference this, state that the Chief refused to allow this matter to be investigated.

KANKAKEE 000239

4.  Also the threat to commit suicide, and attempted cover up of this behavior to keep from removing Officer Berge from the list.

    This only showed that Chief Regnier was willing to allow criminal behavior by a white Officer to persist in order to retaliate against and prevent me from being placed in the 3rd position on the list to be promoted. I have several Officers who state they will testify to this in Federal Court.

Also from the findings of the fact finding conference, it was brought to light that witness, Officer Sturkey, stated that, due to Officer Berge's behavior, he should have been removed from the promotional list, but also it was also pointed out that, he (Officer Sturkey) stated that he hadn't experienced racial discrimination, when in fact, Officer Sturkey stated to me that, it was taken out of context, and that he was speaking in reference to this testing process, of which, Officer Sturkey stated that he refused to take part in, because of the discriminatory practices towards other minority Officers that he has witnessed during his career with this department.  Officer Sturkey pointed out that he felt that, just recently, he had experienced the same racially motivated subjective and discretionary scoring through an oral interview for an appointed position (by the Chief) to the Stolen Auto Task Force, in which, he applied for, but was given to, what he believed to be, a lessor qualified white Officer.

I would like to conclude this response by stating that, although I've filed a complaint with the IDHR Department, I truly believe that the facts in this complaint, of which, have already been determined as substantial in Federal Court (the origin of the Consent Decree) should be allowed to be taken back to Federal Court, where I also truly believe that, through the testimonies of myself and other potential witnesses (of which some who are seeking legal advice for fear of retaliation), will show cause that, the Federal Court Order (Consent Decree) had been egregiously violated by this Chief and his immediate Administration.

Sincerely,



Richard Brooks

KANKAKEE 000240

**STATE OF ILLINOIS**
**DEPARTMENT OF HUMAN RIGHTS**

IN THE MATTER OF:                   )
                                    )
RICHARD BROOKS,                     )
                                    )
            COMPLAINANT,            )    CHARGE NO.   2016CA1966
                                    )    EEOC NO.     21BA60878
AND                                 )
                                    )
CITY OF KANKAKEE POLICE             )
DEPARTMENT,                         )
                                    )
                                    )
            RESPONDENT.             )

### NOTICE OF DISMISSAL
### FOR LACK OF SUBSTANTIAL EVIDENCE

Richard Brooks                    Patrick Power, Assistant City Attorney
705 S. Roosevelt Avenue           City of Kankakee
Kankakee, IL  60901               304 S. Indiana Avenue
                                  Kankakee, IL  60901

DATE OF DISMISSAL: **APRIL 3, 2017**

1.    YOU ARE HEREBY NOTIFIED that based upon the enclosed investigation
      report, the Department has determined that there is NOT substantial evidence to
      support the allegation(s) of the charge. Accordingly, pursuant to Section 7A-
      102(D) of the Act (775 ILCS 5/1-101 et seq.) and the Department's Rules and
      Regulations (56 Ill. Adm. Code. Chapter II, §2520.560) the charge is HEREBY
      DISMISSED.

2.    If Complainant disagrees with this action, Complainant may:

      a) Seek review of this dismissal before the Illinois Human Rights Commission
         (Commission), 100 West Randolph Street, Suite 5-100, Chicago, Illinois,
         60601, by filing a "Request for Review" with the Commission by the request
         for review filing date below.  Respondent will be notified by the Commission if
         a Request for Review is filed.

**REQUEST FOR REVIEW FILING DEADLINE DATE: JULY 7, 2017**

      Or, Complainant may:

      b) Commence a civil action in the appropriate state circuit court within ninety
         (90) days after receipt of this Notice.  A complaint should be filed in the circuit
         court in the county where the civil rights violation was allegedly committed.

EXHIBIT
8
8/30/18  BH

KANKAKEE 000061

**Page 2**
**Notice of Dismissal for Lack of Substantial Evidence**
**Charge No. 2016CA1966**

> If you intend to exhaust your State remedies, please notify the Equal Employment Opportunity Commission (EEOC) Immediately. The EEOC generally adopts the Department's findings. The Appellate Courts in Watkins v. Office of the State Public Defender, ___ Ill.App.3d ____, 976 N.E.2d 387 (1st Dist. 2012) and Lynch v. Department of Transportation, ___ Ill.App.3d ___, 979 N.E.2d 113 (4th Dist. 2012), have held that discrimination complaints brought under the Illinois Human Rights Act ("IHRA") against the State of Illinois in the Illinois Circuit Court are barred by the State Lawsuit Immunity Act. (745 ILCS 5/1 et seq.). Complainants are encouraged to consult with an attorney prior to commencing a civil action in the Circuit Court against the State of Illinois.

**PLEASE NOTE: The Department cannot provide any legal advice or assistance. Please contact legal counsel, your city clerk, or your county clerk with any questions.**

3. Complainant is hereby notified that the charge(s) will be dismissed with prejudice and with no right to further proceed if a timely request for review is not filed with the Commission, or a timely written complaint is not filed with the appropriate circuit court.

4. If an EEOC charge number is cited above, this charge was also filed with the Equal Employment Opportunity Commission (EEOC). If this charge alleges a violation under Title VII of the Civil Rights Act of 1964, as amended, or the Age Discrimination in Employment Act of 1967, Complainant has the right to request EEOC to perform a Substantial Weight Review of this dismissal. Please note that in order to receive such a review, it must be requested in writing to EEOC within fifteen (15) days of the receipt of this notice, or if a request for review is filed with the Human Rights Commission, within fifteen days of the Human Rights Commission's final order. Any request filed prior to your receipt of a final notice WILL NOT BE HONORED. Send your request for a Substantial Weight Review to EEOC, 500 West Madison Street, Suite 2000, Chicago, Illinois 60661. Otherwise, EEOC will generally adopt the Department of Human Rights' action in this case.

**PLEASE NOTE: BUILDING SECURITY PROCEDURES PRESENTLY IN PLACE DO NOT PERMIT ACCESS TO EEOC WITHOUT AN APPOINTMENT. IF AN APPPOINTMENT IS REQUIRED, CALL (312) 869-8000 OR (800) 669-4000.**

DEPARTMENT OF HUMAN RIGHTS
Janice Glenn
Acting Director

HB1509/HB59 NOD/LSE
12/16

# STATE OF ILLINOIS
## DEPARTMENT OF HUMAN RIGHTS
### INVESTIGATION REPORT

**Complainant:** Richard Brooks      **IDHR No.:** 2016CA1966

**Respondent:** City of Kankakee-Police Department      **EEOC No.:** 21BA60878

**Investigator:** RMW      **Supervisor:** ABT      **Date:** 3/22/17

**Issue/Basis:**      **Finding:**

A.  Suspension/Race, black      A.  Lack of Substantial Evidence
B.  Suspension/Age, 53      B.  Lack of Substantial Evidence
C.  Suspension/Retaliation      C.  Lack of Substantial Evidence

**Jurisdiction:**

Alleged violation:      A,B,C: September 12, 2015
Charge filed:      March 8, 2016
Charge perfected:      March 8, 2016
Amendments:      September 19, 2016
Number of employees:      244

**Verified Response:**

Due:      May 23, 2016
Received:      March 29, 2016
Timely:   X   Untimely: ___      **Group Exhibit A**
If untimely, good cause shown:   Yes ___   No ___

**Employment Data:**

Respondent's Equal Employment Opportunity Commission State and Local Government Information Report **(Exhibit B)** indicates that Respondent employs 244 full-time employees, of which 31 are black.

**Uncontested Facts:**

1. On June 10, 1996, Respondent hired Complainant as a Patrolman, where he has generally satisfactorily performed his job duties.

2. On March 25, 2014, Complainant engaged in a protected activity when he filed discrimination charge number 2014CA2471 against Respondent with the Illinois Department of Human Rights.

KANKAKEE 000063

Charge No.: 2016CA1966
Page 2 of 12

3. On September 12, 2015, Respondent issued Complainant a suspension with a document indicating that it was due to violating Respondent's rules and regulations.

## Complainant's Allegations-Counts A&B:

Complainant alleges that on June 10, 1996, Respondent hired him as a Patrolman, where he currently holds this job title. Complainant alleges that his overall work performance is outstanding. Complainant alleges that on September 12, 2015, Larry Regnier (non-black, over 40), Chief of Police, issued him a suspension due to violating the Respondent's rules and regulations. Complainant alleges that similarly situated non-black patrolmen and patrolmen under the age of 40, were not issued suspensions under similar circumstances.

## Respondent's Defenses-Count A:

Respondent's legitimate, non-discriminatory reason for issuing Complainant a suspension is due to Complainant's violation of Respondent's rules and regulations and not due to his race and/or age.

## Investigation Summary-Counts A&B:

A. **Complainant's Evidence.**

1. Complainant stated that on June 10, 1996, Respondent hired him as a Patrolman, where he successfully performs his job duties. Complainant stated that his main job duties include patrolling areas of the city and enforcing the laws of Illinois. Complainant stated that his overall work performance is outstanding.

2. Complainant stated that on September 5, 2015, while he was working overtime, he was getting in his vehicle when he noticed a crotch rocket motorcycle driving recklessly going about 90 miles per hour. Complainant stated that he got into his vehicle and proceeded to approach the vehicle. Complainant stated that as he approached the vehicle, he executed his lights, but the motorcycle accelerated speed and he lost sight of it. Complainant stated that after he no longer saw the motorcycle, he discontinued the chase.

3. Complainant stated that later that night, he sat down and spoke to Sergeant Jeff Martin (non-black, over 40), Shift Supervisor, about the incident, and Martin told him that he did not do anything wrong. Complainant stated that he did not hear anything else regarding the incident.

4. Complainant stated that on September 12, 2015, Chief of Police, Larry Regnier (non-black, over 40, no protected activity), called him into his office and gave him a three-day suspension. Complainant stated that Regnier informed him that the suspension was due to violating Respondent's Pursuit Policy and endangering lives of citizens when he pursued the motorcycle on September 5, 2015.

KANKAKEE 000064

Charge No.: 2016CA1966
Page 3 of 12

5. Complainant stated that Respondent's policy indicates that if an officer believes that a felony has been or is about to be committed, then the officer can initiate a pursuit. Complainant stated that Respondent prefers officers to request permission from a supervisor to further chase, but there is no time for the supervisor to approve. Complainant stated that after the chase, if the driver does not stop or if the officer loses sight of the driver, then the officer can discontinue the chase, and meet with the immediate supervisor for review. Complainant stated that he believed that he was still in the investigation process of the chase. Complainant stated that there is no training in this area.

6. Complainant stated that later that night on September 12, 2015, while working a side job, two officers Michael Berge (non-black, under 40) and Paul Coash (non-black, under 40), were in pursuit of a vehicle and the supervisor, Lieutenant Darnell Austin (black, over 40), called on the radio to ask if they had initiated a chase and what about. Complainant stated that Austin told the officers to terminate the chase. Complainant stated that the officers continued the chase and were in a car accident.

7. Complainant stated that he requested a FOIA to get the notes from the accident, but there was no video. Complainant stated that he requested audio from the chase, and could hear the chase going on. Complainant stated that if an officer's lights come on during a chase, the cameras also automatically turn on.

8. Michael Suprenant (non-black, under 40, no protected activity), Patrolman, stated that he is not familiar with the incident when Complainant pursued the motorcycle. Suprenant stated that he was not present the day of the incident. Suprenant stated that Respondent does not have a pursuit policy. Suprenant stated that unless there is a felony offense, patrolmen are not to pursue a vehicle; however, they can call on the radio to inform the supervisor that they are pursuing a vehicle that is not stopping and the supervisor will advise the patrolman to terminate the pursuit.

9. Lonnie Sturkey (black, over 40, no protected activity), Patrolman, stated that in September 2015, Complainant entered into a pursuit with a motorcycle that went by at high speed but decided to terminate the chase. Sturkey stated that when patrolmen initiate a pursuit, there are supposed to contact the supervisor. Sturkey stated that patrolmen do not have to call the supervisor if they are just following a vehicle as long as they keep a safe distance and do not follow at a high speed.

B.   **Respondent's Evidence.**

1. Respondent's Equal Employment Opportunity Plan **(Exhibit C)** indicates that Respondent strictly prohibits anyone from taking any adverse action regarding employment, including examination, appointment, training, recruitment, selection, promotion, retention, discipline or other personnel action, because of race, color, religion, sex, marital status, sexual orientation, national origin or ancestry, age, physical or mental handicap unrelated to job performance.

Charge No.: 2016CA1966
Page 4 of 12

2. Larry Regnier (non-black, over 40), Chief of Police, stated that on January 10, 1996, Respondent hired Complainant as a Patrolman. Regnier stated that Complainant's main job duties include patrol activities, answering calls for service, and enforcing the law.

3. Respondent's Patrol Officer Job Description (**Exhibit D**) indicates that the officer is responsible for preserving public peace, protection of life and property, deterring crime, and enforcement of all State and Local laws. The description indicates that some essential job functions include: conducting patrol of assigned community areas by performing random patrol activities, identifying violation of city ordinances and reporting same to proper city authorities, conducting checks on businesses both when open and closed, conducting building checks, conducting traffic patrol in assigned community areas including monitoring speed and moving violations, parking violations, and city ordinance violations, etc.

4. Regnier stated that Complainant's overall work performance is good as a police officer, but Complainant has a distinct problem with authority.

5. Regnier stated that on September 12, 2015, he suspended Complainant for engaging in a high speed pursuit with a motorcycle.

6. Complainant's Notice of Suspension served on September 17, 2015, (**Exhibit E**) indicates that as a result of Complainant's violations of Respondent's rules, Complainant was being suspended for three days. The notice indicates that Complainant entered into a vehicle pursuit for a traffic only violation at excessive speeds before terminating the chase at the decision of a supervisor. The notice indicates that Complainant's action in pursuing the motorcycle far exceeded the restrictions of Respondent's policy regarding vehicle pursuits, endangering the lives of innocent citizens and property.

7. Regnier stated that Respondent's policy indicates that for a forcible felony an officer can articulate, the officer must notify the supervisor and the communication center, and inform them of the reason of the pursuit. Regnier stated that after the supervisor is notified, the supervisor will tell the officer if they are to continue or terminate the pursuit.

8. Respondent's Vehicle Pursuit Policy (section 314.1 Purpose and Scope) (**Exhibit F**) indicates that deciding whether to pursue a motor vehicle is a critical decision that must be made quickly and under difficult and unpredictable circumstances. The policy indicates that in recognizing the risk to public safety created by vehicular pursuit, no officer or supervisor shall be criticized or disciplined for deciding not to engage in a vehicular pursuit because of the risk involved; this includes circumstances where Department policy would permit the initiation or continuation of the pursuit. The policy indicates that an officer's conduct during the course of the pursuit must be objectively reasonable.

Charge No.: 2016CA1966
Page 5 of 12

The policy (section 314.2.1 When to Initiate a Pursuit) indicates that officers are authorized to initiate a vehicle pursuit when they have an articulable reason to believe that the occupant(s) of a fleeing vehicle has/have committed or attempted a forcible felony, which, involves the infliction or threatened infliction of great bodily harm, or is attempting to escape by use of a deadly weapon, and receive permission from a supervisor, or other articulable reasons given to and approved by the on-duty Shift Commander.

The policy (section 314.2 2 When to Terminate a Pursuit) indicates that pursuits should be discontinued whenever the totality of objective circumstances known or which reasonably ought to be known to the officer or supervisor during the pursuit indicates that the present risks of continuing the pursuit reasonably appear to outweigh the risks resulting from the suspect(s) escape.

The policy (section 314.4.1 Watch Commander Responsibility) indicates that upon becoming aware that a pursuit has been initiated, the Shift Commander should monitor and continually assess the situation and ensure the pursuit is conducted within the guidelines and requirements of the policy. The policy indicates that the Shift Commander has the final responsibility for the coordination, control and termination of a vehicle pursuit and shall be in overall command.

The policy (section 314.8 Reporting Requirements) indicates that officers shall complete an appropriate report of the pursuit incident and assign a case reporting number to each pursuit incident.

9. Regnier stated that he made the decision to suspend Complainant because he endangered lives of people and reached speeds of 85 miles per hour. Regnier stated that unless there is a forcible felony an officer can articulate Respondent is a non-pursuit company. Regnier stated that there is no practical training on high speed pursuits. Regnier stated that Complainant failed to follow policy, and that he never received or heard anything from Sergeant Jeff Martin (non-black, over 40), Shift Supervisor.

10. Respondent's Discipline Policy (**Exhibit G**) indicates that failure of any employee to meet the guidelines set forth in the policy may be cause for disciplinary action. The policy indicates that Respondent's Disciplinary System consists of training, counseling, disciplinary continuum (counseling and/or training, verbal or written reprimand, suspension, dismissal), or prior to issuing of discipline reviewing the facts and circumstances of the case.

The policy (section 341.3 Conduct Which May Result in Discipline) indicates that performance that may result in discipline includes: unsatisfactory work performance including incompetence, inefficiency or delay in performing and/or carrying out proper orders, work assignment or instructions of supervisors without a reasonable and bona fide excuse; disobedience of insubordination to constituted authorities, including refusal or deliberate failure to carry out or follow lawful directives and

KANKAKEE 000067

orders from any supervisor or person in a position of authority; any knowing or negligent violation of the provisions of the department manual, operating procedures or other written directive of an authorized supervisor; and failure to take reasonable action while on-duty and when required by law, statue, resolution or approved department practices and procedures.

11. Regnier stated that Officers, Michael Berge (non-black, under 40) and Paul Coash (non-black, under 40), were told by their supervisor to terminate the chase and they immediately ceased the pursuit; however, Shreffler failed to terminate the chase and was suspended due to ignoring the order.

12. Respondent's Memorandum dated February 21, 2015, **(Exhibit H)** indicates that on February 21, 2015, Berge responded to a suspicious vehicle and initiated a traffic stop on Orchard Ave. and Court, but the vehicle refused to stop. The memo indicates that Berge was joined in the pursuit by Officers Coash and Shreffler. The memo indicates that Sergeant Martin was aware of the pursuit and allowed it to continue after considering the road conditions, speed of the pursuit, traffic volume and time of the day. The memo indicates that once the vehicle reached W. Water Street, Sergeant Martin terminated that pursuit. The memo indicates that Shreffler disobeyed Sergeant Martin's order to terminate the pursuit and ultimately arrested the driver of the vehicle.

13. Respondent's Memorandum dated February 21, 2015, **(Exhibit I)** indicates that on February 21, 2015, Berge reported a suspicious vehicle and shortly after, Berge and Coash advised that they were attempting to stop the vehicle. The memo indicates that Berge dispatched that they vehicle was refusing to stop and then initiated pursuit of the vehicle. The memo indicates that due to the time of night, absence of traffic, and relatively low speed, the pursuit was allowed to continue for a brief amount of time; however, as the vehicle traveled onto W. Water Street, Sergeant Martin ordered to terminate the pursuit. The memo indicates that Berge acknowledged the order; however, Shreffler advised that he had reacquired the vehicle pulling the driver into a driveway, securing handcuffs and escorting him to his patrol car.

14. Respondent's Memorandum dated February 23, 2015, **(Exhibit J)** indicates that on February 21, 2015, Officers Berge and Coash were involved in a vehicle pursuit of a suspicious vehicle and after the vehicle did not stop, Shreffler became the third officer to join the pursuit. The memo indicates that Sergeant Martin ordered the that pursuit be terminated and Berge and Coash acknowledged the order. The memo indicates that Shreffler proceeded to parallel the vehicle. The memo indicates that Shreffler disobeyed a direct order to terminate the pursuit which violated Respondent's Pursuit Policy and he fabricated facts to justify his actions after the pursuit was terminated for a misdemeanor offense.

KANKAKEE 000068

Charge No.: 2016CA1966
Page 7 of 12

15. Respondent's Notice of Suspension for Michael Shreffler (non-black, 40), Patrolman, **(Exhibit K)** indicates that on March 15, 2015, Shreffler was suspended for one day as a result of violating Respondent's rules when he failed to terminate a motor vehicle pursuit after being ordered to by a supervisor.

**Staff Note:** On February 9, 2016, Staff mailed Respondent's attorney a Request for Further Information requesting that Respondent provide the Department with documentation of suspensions issued to other patrolmen due to comparable violations within the last 12 months, including their ages and races. On February 27, 2017, Respondent responded to the request informing staff that Respondent has no such documents in its possession since no comparable incidents have occurred during that period.

C.  **Complainant's Rebuttal.**

1.  Complainant stated that Respondent's policy indicates that when there is a problem and the employee meets with his/her direct supervisor, then the problem is resolved.

**Analysis:**

Complainant alleges that on September 12, 2015, Respondent issued him a three-day suspension due to his race, black and age, 53. The investigation revealed that on September 5, 2015, Complainant entered into a vehicle pursuit at excessive speeds. Respondent maintains that it suspended Complainant due to Complainant's action in pursuing the vehicle exceeding the restrictions of Respondent's policy regarding vehicle pursuits, endangering the lives of innocent citizens and property. Respondent's Vehicle Pursuit Policy indicates that officers are authorized to initiate a vehicle pursuit when they have an articulable reason to believe that the occupant(s) of a fleeing vehicle has/have committed or attempted a forcible felony, and receive permission from a supervisor, or other articulable reasons given to and approved by the on-duty Shift Commander. The policy indicates that pursuits should be discontinued whenever the totality of objective circumstances known indicates that the present risks of continuing the pursuit reasonably appear to outweigh the risks resulting from the suspect(s) escape and that the Shift Commander has the final responsibility for the coordination, control and termination of a vehicle pursuit and shall be in overall command. Complainant alleges that Respondent's policy indicates that after an employee meets with his/her supervisor after an incident, then the matter is resolved. The investigation revealed that Complainant did not contact a supervisor to initiate and/or terminate the pursuit. Respondent's Discipline Policy indicates that failure of any employee to meet the guidelines set forth may be cause for disciplinary action which consists of training, counseling, disciplinary continuum (counseling and/or training, verbal or written reprimand, suspension, dismissal), or prior to issuing of discipline reviewing the facts and circumstances of the case. Respondent's policy further indicates that conduct that may result in discipline include unsatisfactory work performance including incompetence, inefficiency or delay in performing and/or carrying out proper orders. The evidence shows that on March 15, 2015, Respondent suspended a non-black, 40-year-old patrolman after failing to terminate a motor vehicle pursuit after being ordered to by a supervisor.

KANKAKEE 000069

Charge No.: 2016CA1966
Page 8 of 12

## Findings and Conclusion-Counts A&B:

A finding of <u>lack of substantial evidence</u> is recommended because Complainant has failed to
provide evidence that shows Respondent treated non-black patrolmen more favorably under
similar circumstances and that Respondent had an animus towards him due to his race and age.
Complainant alleges that on September 12, 2015, Respondent issued him a three-day suspension
due to his race, black and age, 53. The investigation revealed that on September 5, 2015,
Complainant entered into a vehicle pursuit at excessive speeds and Respondent suspended
Complainant due to Complainant pursuing a vehicle exceeding the restrictions of Respondent's
policy regarding vehicle pursuits while endangering the lives of innocent citizens and property.
Respondent's policy indicates that pursuits should be discontinued whenever the circumstances
known indicate that the present risks of continuing the pursuit reasonably appear to outweigh the
risks resulting from the suspect(s) escape and that the Shift Commander has the final
responsibility for the coordination, control and termination of a vehicle pursuit and shall be in
overall command. The investigation revealed that Complainant did not contact his supervisor in
regards to the pursuit. Complainant alleges that he spoke to a supervisor later that night;
however, Respondent maintains that Complainant did not speak to a supervisor. Since
Complainant failed to follow procedure in contacting a supervisor, pursued a vehicle at high
speed, and since Respondent has suspended a non-black patrolman, who is significantly younger
than Complainant for a similar reason, there is no substantial evidence that shows Respondent
issued Complainant a suspension due to his race and age.

## Complainant's Allegations-Count C:

Complainant alleges that on June 10, 1996, Respondent hired him as a Patrolman, where he
currently holds this job title. Complainant alleges that his overall work performance is
outstanding. Complainant alleges that on March 25, 2014, he engaged in a protected activity
when he filed a charge of discrimination (number 2014CA2471) against Respondent with the
Illinois Department of Human Rights alleging age, race, and retaliation discrimination.
Complainant alleges that on September 12, 2015, Chief Larry Regnier (no protected activity),
Chief of Police, issued him a suspension with the reason of violating the Respondent's rules and
regulations. Complainant alleges that similarly situated patrolmen, who have not engaged in a
protected activity, were not issued suspensions under similar circumstances. Complainant
alleges that the adverse action occurred within such a period of time as to raise an inference of
retaliatory motivation.

## Respondent's Defenses-Count C:

Respondent's legitimate, non-discriminatory reason for issuing Complainant a suspension is due
to Complainant violating Respondent's rules and regulations and not in retaliation for opposing
unlawful discrimination.

KANKAKEE 000070

Charge No.: 2016CA1966
Page 9 of 12

**Investigation Summary-Count C:**

A.   **Complainant's Evidence.**

    1.   See Complainant's Evidence Counts A&B: 1-9

    2.   Complainant stated that on March 25, 2014, he engaged in a protected activity when he filed a charge of discrimination, number 2014CA2471, against Respondent with the Illinois Department of Human Rights alleging age, race, and retaliation discrimination.

    3.   Complainant stated that Regnier was aware of his charge of discrimination he filed when he issued him the suspension.

B.   **Respondent's Evidence.**

    1.   See Respondent's Evidence Counts A&B: 1-15

    2.   Reigner stated that he became aware of Complainant's previous charge of discrimination after he received the charge and attended the fact finding conference. Reigner stated that he did not issue Complainant the written warning in retaliation for him filing the previous charge of discrimination.

    **Staff Note:** On February 9, 2016, Staff mailed Respondent's attorney a Request for Further Information requesting that Respondent provide the Department with documentation of comparable written warnings issued to other patrolmen, indicating if they have reported discrimination, within the last 12 months. On February 27, 2017, Respondent responded to the request informing staff that Respondent has no such documents in its possession since no comparable incidents have occurred during that period.

C.   **Complainant's Rebuttal.**

    1.   Complainant did not provide any additional information other than what was previously identified in the Complainant's Evidence section.

**Analysis:**

Complainant alleges that on March 25, 2014, he engaged in a protected activity when he filed a charge of discrimination number 2014CA2471, against Respondent with the Illinois Department of Human Rights alleging age, race, and retaliation discrimination. Complainant alleges that on September 12, 2015, Respondent issued him a three-day suspension in retaliation for filing the previous charge. The investigation revealed that on September 5, 2015, Complainant entered into a vehicle pursuit at excessive speeds. Respondent maintains that it suspended Complainant due to Complainant's action in pursuing the vehicle exceeding the restrictions of Respondent's policy regarding vehicle pursuits, endangering the lives of innocent citizens and property. Respondent's Vehicle Pursuit Policy indicates that officers are authorized to initiate a vehicle pursuit when they have an articulable reason to believe that the occupant(s) of a fleeing vehicle

KANKAKEE 000071

Charge No.: 2016CA1966
Page 10 of 12

has/have committed or attempted a forcible felony, and receive permission from a supervisor, or other articulable reasons given to and approved by the on-duty Shift Commander. The policy indicates that pursuits should be discontinued whenever the totality of objective circumstances known indicates that the present risks of continuing the pursuit reasonably appear to outweigh the risks resulting from the suspect(s) escape and that the Shift Commander has the final responsibility for the coordination, control and termination of a vehicle pursuit and shall be in overall command. Complainant alleges that Respondent's policy indicates that after an employee meets with his/her supervisor after an incident, then the matter is resolved. The investigation revealed that Complainant did not contact a supervisor to initiate and/or terminate the pursuit. Respondent's Discipline Policy indicates that failure of any employee to meet the guidelines set forth may be cause for disciplinary action which consists of training, counseling, disciplinary continuum (counseling and/or training, verbal or written reprimand, suspension, dismissal), or prior to issuing of discipline reviewing the facts and circumstances of the case. Respondent's policy further indicates that conduct that may result in discipline include unsatisfactory work performance including incompetence, inefficiency or delay in performing and/or carrying out proper orders. The evidence shows that on March 16, 2015, Respondent suspended a similarly situated patrolman after he failed to terminate a motor vehicle pursuit after being ordered to by a supervisor.

**Findings and Conclusion-Counts C:**

A finding of lack of substantial evidence is recommended because Complainant has failed to show a nexus between his protected activity and suspension. Complainant alleges that on September 12, 2015, Respondent issued him a three-day suspension in retaliation for filing a charge of discrimination that he filed on March 25, 2014, against Respondent with the Illinois Department of Human Rights. The investigation revealed that on September 5, 2015, Complainant entered into a vehicle pursuit at excessive speeds and Respondent suspended Complainant due to Complainant pursuing a vehicle exceeding the restrictions of Respondent's policy regarding vehicle pursuits while endangering the lives of innocent citizens and property. Respondent's policy indicates that pursuits should be discontinued whenever the circumstances known indicate that the present risks of continuing the pursuit reasonably appear to outweigh the risks resulting from the suspect(s) escape and that the Shift Commander has the final responsibility for the coordination, control and termination of a vehicle pursuit and shall be in overall command. The investigation revealed that Complainant did not contact his supervisor in regards to the pursuit. Complainant alleges that he spoke to a supervisor later that night; however, Respondent maintains that Complainant did not speak to a supervisor. Since Complainant failed to follow procedure in contacting a supervisor, pursued a vehicle at high speed, and since Respondent has suspended a similarly situated patrolman for a similar reason, there is no substantial evidence that shows Respondent issued Complainant a suspension in retaliation for his prior engagement in a protected activity.

**Witness List:**

Complainant            (CPI, FFC)



Charge No.: 2016CA1966
Page 11 of 12

Richard Cox



**Staff Note:** The address provided for Cox by Complainant was the address of Respondent. On February 14, 2017, Staff mailed Respondent's attorney a Request for Further Information requesting that Respondent schedule a telephonic interview with Cox. On February 28, 2017, Respondent responded to the request informing staff that Respondent does not have contact information on Cox, as he is no longer employed with Respondent. On March 8, 2017, Staff called Cox on the telephone number provided by Complainant and left a voicemail message requesting that he contact staff. On March 14, 2017, Staff mailed Cox a witness letter informing him that staff had been advised that he could provide pertinent information to the Department's investigation and to contact staff as soon as possible to discuss the matter of the case. To date, he has not contacted staff.

Lonnie Sturkey          (Telephone interview 3/13/2017)
Patrolman



Mike Suprenant          (Telephone interview 3/14/2017)
Patrolman



Larry Reigner          (FFC)
Chief of Police
c/o L. Patrick Power
Assistant Attorney, City of Kankakee



**Exhibits:**

A. The Department's Verified Good Cause Determination Worksheet and Respondent's Verified Response

B. Respondent's Equal Employment Opportunity Commission State and Local Government Information Report

C. Respondent's Equal Employment Opportunity Plan

D. Respondent's Patrol Officer Job Description

Charge No.: 2016CA1966
Page 12 of 12

    E. Complainant's Notice of Suspension

    F. Respondent's Vehicle Pursuit Policy

    G. Respondent's Discipline Policy

    H. Respondent's Memorandum dated February 21, 2015

    I. Respondent's Memorandum dated February 21, 2015

    J. Respondent's Memorandum dated February 23, 2015

    K. Respondent's Notice of Suspension for Michael Shreffler

MERIT REPORT.docm
10/16

KANKAKEE 000074