## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy act statement before completing this form.

#16W0502-14

| AGENCY | CHARGE NUMBER |
|---|---|
| ☒ IDHR | 2016CA2470 |
| ☐ EEOC | |

### Illinois Department of Human Rights and EEOC

| NAME OF COMPLAINANT (Indicate Mr. Ms. Mrs.) | | TELEPHONE NUMBER (include area code) |
|---|---|---|
| Mr. Richard Brooks | | ▓▓▓▓▓ |
| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
| | ▓▓▓▓▓ | M    D    YEAR |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (IF MORE THAN ONE LIST BELOW)

| NAME OF RESPONDENT | NUMBER OF EMPLOYEES, MEMBERS 15+ | TELEPHONE NUMBER (include area code) |
|---|---|---|
| Kankakee City Police Department | | (815) 933-0410 |
| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
| 385 East Oak Street | Kankakee, Illinois 60901 | Cook (031) |

| CAUSE OF DISCRIMINATION BASED ON: | DATE OF DISCRIMINATION EARLIEST (ADEA/EPA)  LATEST (ALL) |
|---|---|
| Race    Age    Sex    Retaliation | 04/25/16 |
| | ☐ CONTINUING ACTION |

THE PARTICULARS OF THE CHARGE ARE AS FOLLOWS:

I. A.  ISSUE/BASIS

WRITTEN DISCIPLINARY WARNING, ON OR ABOUT APRIL 25, 2016, BECAUSE OF MY RACE, BLACK.

B.  PRIMA FACIE ALLEGATIONS

1. My race is black.

2. I have satisfactorily performed my duties as a police officer, and have been employed with the Respondent since June 10, 1996.

Page 1 of 3

I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

SUBSCRIBED AND SWORN TO BEFORE ME

THIS 2nd DAY OF May , 2016.

▓▓▓▓▓

NOTARY SIGNATURE

OFFICIAL SEAL
DONNA M EVANS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:06/03/18

NOTARY STAMP

EEO-5 FORM (Rev. 7/12-INT)

▓▓▓▓▓    05/02/16

SIGNATURE OF COMPLAINANT        DATE

I declare under penalty that the foregoing is true and correct I swear or affirm that I have read the above charge and that it is true to the best of my ▓▓▓▓ and belief.

EXHIBIT
9

8/30/18   BH

KANKAKEE 000294

Exhibit A, Part 3

Charge Number: 26□□A2470
Complainant: Richard Brooks
Page 2 of 3

3. On or about April 25, 2016, I was issued a written disciplinary warning from Chief Larry D. Regnier (white), Respondent's Chief of Police, indicating that I was receiving the written disciplinary warning for criticizing the department with fraudulent statements; and, that I was being ordered to cease from making any further criticism of the Kankakee Police Department, or face future discipline and/or discharge from the Respondent's employ.

4. Similarly situated, non-black employees, who have also been accused of criticizing the Kankakee Police Department, were not issued any written disciplinary warning.

II.  A.  ISSUE/BASIS

WRITTEN DISCIPLINARY WARNING, ON OR ABOUT APRIL 25, 2016, BECAUSE OF MY AGE, 54.

B.  PRIMA FACIE ALLEGATIONS

1. I am 54 years of age.

2. I have satisfactorily performed my duties as a police officer, and have been employed with the Respondent since June 10, 1996.

3. On or about April 25, 2016, I was issued a written disciplinary warning from Chief Larry D. Regnier (age unknown), Respondent's Chief of Police, indicating that I was receiving the written disciplinary warning for criticizing the department with fraudulent statements; and, that I was being ordered to cease from making any further criticism of the Kankakee Police Department, or face future discipline and/or discharge from the Respondent's employ.

4. Similarly situated employees, who are younger than age 40 or who are significantly younger than me, who have also been accused of criticizing the Kankakee Police Department, were not issued any written disciplinary warning.

III.  A.  ISSUE/BASIS

WRITTEN DISCIPLINARY WARNING, ON OR ABOUT APRIL 25, 2016, BECAUSE OF MY SEX, MALE.

B.  PRIMA FACIE ALLEGATIONS

1. My sex is male.

2. I have satisfactorily performed my duties as a police officer, and have been employed with the Respondent since June 10, 1996.

KANKAKEE 000295

Charge Number: 20  A2470
Complainant: Richard Brooks
Page 3 of 3

3.  On or about April 25, 2016, I was issued a written disciplinary warning
    from Chief Larry D. Regnier (male), Respondent's Chief of Police,
    indicating that I was receiving the written disciplinary warning for
    criticizing the department with fraudulent statements; and, that I was
    being ordered to cease from making any further criticism of the Kankakee
    Police Department, or face future discipline and/or discharge from the
    Respondent's employ.

4.  Similarly situated female employees, who have also been accused of
    criticizing the Kankakee Police Department, were not issued any written
    disciplinary warning.

IV.  A.   ISSUE/BASIS

WRITTEN DISCIPLINARY WARNING, ON OR ABOUT APRIL 25, 2016,
IN RETALIATION FOR FILING A PREVIOUS CHARGE OF
DISCRIMINATION AGAINST THE RESPONDENT.

B.   PRIMA FACIE ALLEGATIONS

1.  On or about March 25, 2014, I engaged in a protected activity when I filed
    discrimination charge number 2014CA2471 against the Respondent with
    the Illinois Department of Human Rights.

2.  On or about April 25, 2016, I received a written disciplinary warning from
    Chief Larry D. Regnier, Respondent's Chief of Police, indicating that I
    was receiving the written disciplinary warning for criticizing the
    department with fraudulent statements; and, that I was being ordered to
    cease from making any further criticism of the Kankakee Police
    Department, or face future discipline and/or discharge from the
    Respondent's employ.

3.  Respondent's adverse action follows my protected activity within such a
    period of time as to raise an inference of retaliatory motivation.

ACF/RCG

KANKAKEE 000296

**STATE OF ILLINOIS**
**DEPARTMENT OF HUMAN RIGHTS**

**IN THE MATTER OF:**

RICHARD BROOKS,                    )
                                   )
                COMPLAINANT,       )     CHARGE NO.   2016CA2470
                                   )     EEOC NO.     21BA61222
AND                                )
                                   )
CITY OF KANKAKEE POLICE            )
DEPARTMENT,                        )
                                   )
                RESPONDENT.        )

<u>NOTICE OF DISMISSAL</u>
<u>FOR LACK OF SUBSTANTIAL EVIDENCE</u>

Richard Brooks                          L. Patrick Power, Assistant City Attorney
                    City of Kankakee

DATE OF DISMISSAL: **APRIL 10, 2017**

1.   YOU ARE HEREBY NOTIFIED that based upon the enclosed investigation
     report, the Department has determined that there is NOT substantial evidence to
     support the allegation(s) of the charge. Accordingly, pursuant to Section 7A-
     102(D) of the Act (775 ILCS 5/1-101 <u>et seq.</u>) and the Department's Rules and
     Regulations (56 Ill. Adm. Code. Chapter II, §2520.560) the charge is HEREBY
     DISMISSED.

2.   If Complainant disagrees with this action, Complainant may:

     a) Seek review of this dismissal before the Illinois Human Rights Commission
        (Commission), 100 West Randolph Street, Suite 5-100, Chicago, Illinois,
        60601, by filing a "Request for Review" with the Commission by the request
        for review filing date below. Respondent will be notified by the Commission if
        a Request for Review is filed.

     **REQUEST FOR REVIEW FILING DEADLINE DATE: JULY 14, 2017**

        Or, Complainant may:

     b) Commence a civil action in the appropriate state circuit court within ninety
        (90) days after receipt of this Notice. A complaint should be filed in the circuit
        court in the county where the civil rights violation was allegedly committed.



EXHIBIT
10
8/34/18   BH

KANKAKEE 000297

**Page 2**
**Notice of Dismissal for Lack of Substantial Evidence**
**Charge No. 2016CA2470**

**If you intend to exhaust your State remedies, please notify the Equal Employment Opportunity Commission (EEOC) immediately. The EEOC generally adopts the Department's findings.** The Appellate Courts in Watkins v. Office of the State Public Defender, ___ Ill.App.3d ___, 976 N.E.2d 387 (1st Dist. 2012) and Lynch v. Department of Transportation, ___ Ill.App.3d ___, 979 N.E.2d 113 (4th Dist. 2012), have held that discrimination complaints brought under the Illinois Human Rights Act ("IHRA") against the State of Illinois in the Illinois Circuit Court are barred by the State Lawsuit Immunity Act. (745 ILCS 5/1 et seq.). Complainants are encouraged to consult with an attorney prior to commencing a civil action in the Circuit Court against the State of Illinois.

**PLEASE NOTE: The Department cannot provide any legal advice or assistance. Please contact legal counsel, your city clerk, or your county clerk with any questions.**

3.    Complainant is hereby notified that the charge(s) will be dismissed with prejudice and with no right to further proceed if a timely request for review is not filed with the Commission, or a timely written complaint is not filed with the appropriate circuit court.

4.    If an EEOC charge number is cited above, this charge was also filed with the Equal Employment Opportunity Commission (EEOC). If this charge alleges a violation under Title VII of the Civil Rights Act of 1964, as amended, or the Age Discrimination in Employment Act of 1967, Complainant has the right to request EEOC to perform a Substantial Weight Review of this dismissal. Please note that in order to receive such a review, it must be requested in writing to EEOC within fifteen (15) days of the receipt of this notice, or if a request for review is filed with the Human Rights Commission, within fifteen days of the Human Rights Commission's final order. Any request filed prior to your receipt of a final notice WILL NOT BE HONORED. Send your request for a Substantial Weight Review to EEOC, 500 West Madison Street, Suite 2000, Chicago, Illinois   60661. Otherwise, EEOC will generally adopt the Department of Human Rights' action in this case.

**PLEASE NOTE: BUILDING SECURITY PROCEDURES PRESENTLY IN PLACE DO NOT PERMIT ACCESS TO EEOC WITHOUT AN APPOINTMENT. IF AN APPPOINTMENT IS REQUIRED, CALL (312) 869-8000 OR (800) 669-4000.**

DEPARTMENT OF HUMAN RIGHTS
Janice Glenn
Acting Director

HB1509/HB59 NOD/LSE
12/16

## STATE OF ILLINOIS
## DEPARTMENT OF HUMAN RIGHTS
## INVESTIGATION REPORT

| | | | | |
|---|---|---|---|---|
| **Complainant:** | Richard Brooks | | **IDHR No.:** | 2016CA2470 |
| **Respondent:** | City of Kankakee-Police Department | | **EEOC No.:** | 21BA61222 |

| | | | | |
|---|---|---|---|---|
| **Investigator:** | RMW | **Supervisor:** | | **Date:** 3/27/17 |

**Issue/Basis:**                                        **Finding:**

A.   Written Warning/Race, black        A.   Lack of Substantial Evidence
B.   Written Warning/Age, 54             B.   Lack of Substantial Evidence
C.   Written Warning/Sex, Male          C.   Lack of Substantial Evidence
D.   Written Warning/Retaliation        D.   Lack of Substantial Evidence

**Jurisdiction:**

Alleged violation:                      A-D:  April 25, 2016
Charge filed:                                 May 2, 2016
Charge perfected:                             May 2, 2016
Amendments:                                   November 1, 2016 (technical)
Number of employees:                          244

**Verified Response:**

Due:        July 25, 2016
Received:   June 15, 2016
Timely:   X   Untimely: ___          **Group Exhibit A**
If untimely, good cause shown:  Yes ___  No ___

**Employment Data:**

Respondent's Equal Employment Opportunity Commission State and Local Government Information Report (**Exhibit B**) indicates that Respondent employs 244 employees, of which 42 (17%) are black and 173 (71%) are male. Respondent indicated that they do not track the ages or protected activity status of their workforce.

**Uncontested Facts:**

1. On June 10, 1996, Respondent hired Complainant as a Patrolman, where he has generally satisfactorily performed his job duties.

2. On March 25, 2014, Complainant engaged in a protected activity when he filed discrimination charge (number 2014CA2471) against Respondent with the Illinois Department of Human Rights.

KANKAKEE 000299

Charge No.: 2016CA2470
Page 2 of 10

   3. On April 25, 2016, Chief of Police, Larry Regnier (non-black, over 40, male, no
protected activity), issued Complainant a written disciplinary warning.

**Complainant's Allegations-Counts A,B,C:**

Complainant alleges that on June 10, 1996, Respondent hired him as a Patrolman, where he
satisfactorily performs his job duties. Complainant alleges that on or about April 25, 2016, he
was issued a written disciplinary warning by Chief of Police, Larry Regnier (non-black, over 40,
male, no protected activity), indicating that he made disparaging remarks about Respondent.
Complainant alleges that similarly situated non-black, younger or female employees were not
issued written discipline under similar circumstances.

**Respondent's Defenses-Counts A,B,C:**

Respondent's legitimate non-discriminatory reason for issuing Complainant a written warning is
due to Complainant being in gross violations of Respondent's procedure after he made false
statements about an officer and was not issued the written warning in regards to his race, age or
sex.

**Investigation Summary-Counts A,B,C:**

A.   **Complainant's Evidence.**

    1.   Complainant stated that on June 10, 1996, Respondent hired him as a Patrolman,
where he currently holds this job title and successfully performs his job duties.
Complainant stated that his main job duties included patrolling areas of the city
and enforcement of Illinois laws.

    2.   Complainant stated that on April 25, 2016, Chief of Police, Larry Regnier (non-
black, over 40, male, no protected activity) issued him a written warning.
Complainant stated that the reason given was due to him criticizing the
department with fraudulent statements.

    3.   Complainant stated that in April 2014, he had mentioned to the Illinois
Department of Human Rights, the Chief, and to the Commission Board, that
Michael Berge (non-black, under 40, male), Patrolman, had committed a crime
when he filed a false police report. Complainant stated that he requested that an
investigation be conducted, and it was found that Berge had falsified police
documents after he had driven drunk and run into a building but claimed that it
was a hit and run.

    4.   Complainant stated that on April 25, 2016, Regnier sent him a letter advising him
that if he continued making those comments and requesting an investigation, then
he would terminate his employment.

KANKAKEE 000300

Charge No.: 2016CA2470
Page 3 of 10

5. Complainant stated that there were other officers who complained about Berge's accident and never received a termination letter, but Complainant was unable to identify such specific incident.

6. Michael Suprenant (non-black, under 40, no protected activity), Patrolman, stated that he is not in the position to give insight as to what happened regarding Berge, but Berge was untruthful about an accident; however, he admitted to his wrongdoings about one year ago.

7. Lonnie Sturkey (black, over 40, no protected activity), Patrolman, stated that in April 2016, Complainant showed him a letter indicating that he was to cease making statements about the department or he would be disciplined. Sturkey stated that he is not aware of any comments that Complainant may have made against the department; however, Complainant did file an action report five or six years ago after Berge had a car accident after leaving from the bar and falsified a police report saying that the accident was a hit and run.

B. **Respondent's Evidence.**

1. Respondent's Equal Employment Opportunity Plan (**Exhibit C**) indicates that Respondent strictly prohibits anyone from taking any adverse action regarding employment, including examination, appointment, training, recruitment, selection, promotion, retention, discipline or other personnel action, because of race, color, religion, sex, marital status, sexual orientation, national origin or ancestry, age, physical or mental handicap unrelated to job performance.

2. Larry Regnier (non-black, over 40, male), Chief of Police, stated that on January 10, 1996, Respondent hired Complainant as a Patrolman. Regnier stated that Complainant's main job duties include patrol activities, answering calls for service, and enforcing the law. Regnier stated that Complainant's overall work performance is good as a police officer, but Complainant has a distinct problem with authority.

3. Respondent's Patrol Officer Job Description (**Exhibit D**) indicates that the officer is responsible for preserving public peace, protection of life and property, deterring crime, and enforcement of all State and Local laws. The description indicates that some essential job functions include: conducting patrol of assigned community areas by performing random patrol activities, identifying violation of city ordinances and reporting same to proper city authorities, conducting checks on businesses both when open and closed, conducting building checks, conducting traffic patrol in assigned community areas including monitoring speed and moving violations, parking violations, and city ordinance violations, etc.

4. Regnier stated that on April 12, 2016, Complainant attended a meeting, where he informed Respondent that he did not believe that proper discipline was being given to other employees, and made a statement about an officer's drug use and an accident in which he was involved. Regnier stated that Complainant's

KANKAKEE 000301

accusations were found to have no merit, Complainant had no factual basis, and the incidents that he mentioned happened years ago.   Regnier stated that Complainant was in gross violation of Respondent's procedures.  Regnier stated that Complainant was the only one at the meeting who made such remarks.

5.      Regnier stated that he did not refuse to investigate the matter with Berge, and Complainant did not mention the incident to him until the end of 2015.  Regnier stated that once it was investigated, the officer was disciplined.

6.      Regnier stated that he issued Complainant a letter advising him that continued misconduct would compel him to take further action, and he was to cease conduct or his behavior would be grounds for termination.

7.      Respondent's Memorandum addressed to Complainant by Regnier dated April 25, 2016, **(Exhibit E)** indicates that on April 12, 2016, Complainant attended a Police and Fire Commission Meeting at the Public Safety Center in the combined training room.  In the memo, Regnier indicated that at the meeting, Complainant stood up and made remarks about incidents that he felt were not in accordance with what he believed to be proper policy and procedure.  In the memo, Regnier indicated that this is the third time that he has heard Complainant make disparaging remarks about Respondent.  In the memo, Regnier indicated that Complainant took it upon himself to profess inaccurate facts that took place a number of years ago.  In the memo, Regnier indicated that he found Complainant to be in gross violation of Respondent's Policy and Procedure:  section 340.3.2(f) which requires that the employee report any act by him/herself or another that could result in criminal prosecution or discipline; section 340.3.5(ac) which prohibits any on or off duty conduct which any employee knows or should reasonably know is unbecoming a member of Respondent; and section 340.3.5(af) which prohibits giving false or misleading statements or misrepresenting or omitting material information to a supervisor.

In the memo, Regnier informed Complainant that his continuing of making false public statements regarding other officers, and Respondent in general, and violating Respondent's policies caused him to take action.  In the memo, Regnier informed Complainant that he hereby ordered him to cease any further public disparagement of Respondent or criticism of other police officers including the statement of inaccurate information.   In the memo, Regnier informed Complainant that any further violation of this policy would be grounds for discipline up to and including termination.

8.      Respondent's Discipline Policy **(Exhibit F)** indicates that failure of any employee to meet the guidelines set forth in the policy may be cause for disciplinary action. The policy indicates that Respondent's Disciplinary System consists of training, counseling, disciplinary continuum (counseling and/or training, verbal or written reprimand, suspension, dismissal), and prior to issuing of discipline reviewing the facts and circumstances of the case.

Charge No.: 2016CA2470
Page 5 of 10

The policy (section 341.3 Conduct Which May Result in Discipline) indicates that performance that may result in discipline includes: (h) disparaging remarks or conduct concerning duly constituted authority to the extent that such conduct disrupts the efficiency of the Department or subverts the good order, efficiency and discipline of the Department or which would tend to discredit any member thereof; and (i) knowingly making false, misleading or malicious statements that are reasonably calculated to harm, destroy or discredit the morale, reputation, authority or official standing of the Department or member thereof.

9.  Respondent's Memorandum addressed to Lieutenant Willie Hunt (black, over 40, male) by Regnier dated May 2, 2016, (**Exhibit G**) indicates that on April 20, 2016, Regnier was made aware of various posts and pictures on Hunt's Facebook page that appeared to be racially insensitive and upon viewing the images, Regnier agreed that the images were racially insensitive. In the memo, Regnier informed Hunt that based on the posts and shared materials on Facebook, he was left with no alternative but to issue a letter of reprimand. In the memo, Regnier informed Hunt that he found him to be in violation of Respondent's policy: section 1058.4(b) speech or expression that, while not made pursuant to an official duty, is significantly linked to, or related to Respondent and tends to compromise or damage the mission, function, reputation, or professionalism of Respondent or its employees.

10. Respondent's Memorandum addressed to Patrolman Michael Schreffer (non-black, over 40, male) by Regnier dated February 10, 2016, (**Exhibit H**) indicates that on February 9, 2016, Regnier was made aware of a social media posting from Schreffer referencing the Black Panther half time show during the Super Bowl. In the memo, Regnier indicated that Schreffer's response to a woman with an opposing view to his was highly charged and had an underlying reference to race. In the memo, Regnier informed Schreffer that he was free to post whatever he wished on his own social media but when those posts and words reflect unfavorably upon Respondent, or adversely affect his appearance of impartiality to perform his duties free of bias-based enforcement, then his speech was no longer free and reading through the lists of on-going texts, he felt that he has affected the Department. In the memo, Regnier informed Schreffer that any further violations would trigger progressive discipline up to and including termination.

11. Respondent's Memorandum addressed to Patrolman Richard Cox (non-black, over 40, male) by Regnier dated September 26, 2012, (**Exhibit I**) indicates that on September 5, 2012, Regnier received an email from Cox indicating that he strongly disagreed with the hiring of Patrolman Jason Burse and cited several Fire and Police Commission rules stating that Burse was hired in violation of those rules. In the memo, Regnier informed Cox that he was also made aware that he also posted the same material on the FOP Social Media Site and that he emailed Ted Street, State FOP President, indicating that he was going to contact the persons on the list to notify them that they may have a law suit against

Charge No.: 2016CA2470
Page 6 of 10

> Respondent. In the memo, Regnier informed Cox that he has asked him on two
> previous occasions to come to him with any problems that the FOP may have with
> something he has done to make him feel was in violation of the union contract. In
> the memo, Regnier informed Cox that he has caused discord with the Department
> and made serious public false accusations about Respondent's administration. In
> the memo, Regnier informed Cox that based on his behavior, he found that he had
> lost trust that he could continue to work in his current position as a Detective;
> therefore, he was going to transfer him to the Patrol Division.

## C.    Complainant's Rebuttal.

1.    Complainant stated that he never made disparaging remarks against Respondent.

## Analysis:

Complainant alleges that on April 25, 2016, Respondent issued him a written warning due to his
race, age and sex. Complainant concedes that in April 2016, he reported to the Commission
Board that Patrolman Berge had allegedly filed a false police report. Respondent maintains that
Complainant did not report the incident until years after Berge had the accident and was
disciplined. Respondent's Discipline Policy indicates that conduct which may result in
discipline includes: making disparaging remarks to the extent that such conduct disrupts the
efficiency of the Department or knowingly making false, misleading or malicious statements that
are reasonably calculated to harm, destroy or discredit the morale, reputation, authority or
official standing of the Department or member thereof. The investigation revealed that on April
25, 2016, Chief of Police, Regnier issued Complainant a written warning informing him to cease
any further public disparagement of Respondent or criticism of other police officers including
statements of inaccurate information, and that any further violation of Respondent's policy
would be grounds for discipline up to and including termination. The evidence shows that on
February 10, 2016, Respondent issued Schreffer, a non-black patrolman, a written warning after
he posted a racial charged comment on social media and was informed that any further violations
would trigger progressive discipline up to and including termination. The evidence shows that
on September 26, 2012, Respondent issued Cox, a non-black Detective, a written warning after
causing discord within the Department after he made serious public false accusations about
Respondent's administration.

## Findings and Conclusion-Counts A,B,C:

A finding of lack of substantial evidence is recommended because Complainant has failed to
provide evidence that shows Respondent treated non-black, under 40, or female employees more
favorably under similar circumstances. Complainant also failed to show that Respondent has an
animus towards him due to race, age and sex and that other employees who were accused of
making disparaging comments were not disciplined. Complainant alleges that on April 25, 2016,
Respondent issued him a written warning due to his race, age and sex. The investigation
revealed, and Complainant concedes, that in April 2016 he reported that Patrolman Berge had
filed a false police report. Respondent's Discipline Policy indicates that conduct which may
result in discipline includes making disparaging remarks or knowingly making malicious
statements that harm, destroy or discredit the moral, reputation, authority or official standing of

the Department.  The investigation revealed that Respondent acted within its policy when it issued Complainant the written warning after Complainant accused Officer Berge of filing the false police report.  Furthermore, the investigation revealed that Respondent has also issued other Patrolmen written warnings after making disparaging comments or making insensitive posts on social media.  There is not substantial evidence that shows on April 25, 2016, Respondent issued Complainant a written warning due to his race, black; age, 54; or sex, male.

## Complainant's Allegations-Count D:

Complainant alleges that on June 10, 1996, Respondent hired him as a Patrolman, where he satisfactorily performs his job duties.  Complainant alleges that his overall work performance is outstanding.  Complainant alleges that on March 25, 2014, he engaged in a protected activity when he filed a charge of discrimination (number 2014CA2471) against Respondent with the Illinois Department of Human Rights alleging age, race, and retaliatory discrimination. Complainant alleges that on or about April 25, 2016, he was issued a written disciplinary warning by Larry Regnier, Chief of Police, indicating that he made disparaging remarks about Respondent.  Complainant alleges that the adverse action occurred within such a period of time as to raise an inference of retaliatory motivation.

## Respondent's Defenses-Count D:

Respondent's legitimate non-discriminatory reason for issuing Complainant a written warning is due to Complainant being in gross violations of Respondent's procedures after he made false statements about an officer, and was not issued the written warning in regards to his prior filing regarding alleged discrimination against Respondent.

## Investigation Summary-Count D:

A.    **Complainant's Evidence.**

    1.    See Complainant's Evidence Counts A-C: 1-7

    2.    Complainant stated that on March 25, 2014, he engaged in a protected activity when he filed a charge of discrimination, number 2014CA2471, against Respondent with the Illinois Department of Human Rights alleging age, race, and retaliation discrimination.

    3.    Complainant stated that Regnier was aware of his prior charge of discrimination he filed when he issued him the written warning.

B.    **Respondent's Evidence.**

    1.    See Respondent's Evidence Counts A-C: 1-11

    2.    Regnier stated that he became aware of Complainant's previous charge of discrimination when he received a copy of the charge and attended the fact finding conference.  Regnier stated that he did not issue Complainant the written warning in retaliation for him filing the previous charge of discrimination

Charge No.: 2016CA2470
Page 8 of 10

C.     **Complainant's Rebuttal.**

1.     Complainant did not provide any additional information other than what was previously identified in the Complainant's Evidence section.

**Analysis:**

Complainant alleges that on March 25, 2014, he engaged in a protected activity when he filed a charge of discrimination number 2014CA2471, against Respondent with the Illinois Department of Human Rights alleging age, race, and retaliatory discrimination. Complainant alleges that on April 25, 2016, Respondent issued him a written warning in retaliation for filing the previous charge. The investigation revealed, in which Complainant concedes that in April 2016, he reported that Patrolman Berge had filed a false police report. Respondent maintains that Complainant did not report the incident until years after the accident and the officer was disciplined. Respondent's Discipline Policy indicates that conduct which may result in discipline includes: making disparaging remarks to the extent that such conduct disrupts the efficiency of the Department or knowingly making false, misleading or malicious statements that are reasonably calculated to harm, destroy or discredit the morale, reputation, authority or official standing of the Department or member thereof. The investigation revealed that on April 25, 2016, Chief of Police, Regnier issued Complainant a written warning informing him to cease any further public disparagement of Respondent or criticism of other police officers including statements of inaccurate information, and that any further violation of Respondent's policy would be grounds for discipline up to and including termination. The evidence shows that February 10, 2016, Respondent issued Schreffer a written warning after he posted a racially charged comment on social media and was informed that any further violations would trigger progressive discipline up to and including termination. The evidence shows that on September 26, 2012, Respondent issued Cox a written warning after causing discord within the Department after making serious public false accusations about Respondent's administration.

**Findings and Conclusion-Count D:**

A finding of <u>lack of substantial evidence</u> is recommended because Complainant has failed to establish a nexus between his written discipline and his involvement in a protected activity when he previously opposed alleged unlawful discrimination. Complainant also failed to show that Respondent had an animus towards him for engaging in a protected activity and that other employees who were accused of making disparaging comments were not disciplined. Complainant alleges that on April 25, 2016, Respondent issued him a written warning in retaliation for opposing unlawful discrimination when he filed a charge of discrimination with the Illinois Department of Human Rights alleging age, race, and retaliatory discrimination on March 25, 2014. The investigation revealed, and Complainant concedes, that in April 2016 he reported that Patrolman Berge had filed a false police report. Respondent's Discipline Policy indicates that conduct which may result in discipline includes making disparaging remarks or knowingly making malicious statements that harm, destroy or discredit the moral, reputation, authority or official standing of the Department. The investigation revealed that Respondent acted within its policy when it issued Complainant the written warning after Complainant reported, or accused the officer of filing the false police report. Furthermore, the investigation revealed that Respondent has also issued other Patrolmen written warnings after making

Charge No.: 2016CA2470
Page 9 of 10

disparaging comments or making insensitive posts on social media. There is not substantial evidence that shows on April 25, 2016, Respondent issued Complainant a written warning in retaliation to opposing unlawful discrimination.

**Witness List:**

Complainant            (CPI, FFC)



Richard Cox



**Staff Note:** The address provided for Cox by Complainant was the address of Respondent. On February 14, 2017, Staff mailed Respondent's attorney a Request for Further Information requesting that Respondent schedule a telephonic interview with Cox. On February 28, 2017, Respondent responded to the request informing staff that Respondent does not have contact information on Cox, as he is no longer employed with Respondent. On March 8, 2017, Staff called Cox on the telephone number provided by Complainant and left a voicemail message requesting that he contact staff. On March 14, 2017, Staff mailed Cox a witness letter informing him that staff had been advised that he could provide pertinent information to the Department's investigation and to contact staff as soon as possible to discuss the matter of the case. To date, he has not contacted staff.

Lonnie Sturkey          (Telephone interview 3/13/2017)
Patrolman

Mike Suprenant          (Telephone interview 3/14/2017)
Patrolman

Larry Reigner          (FFC)
Chief of Police
c/o L. Patrick Power
Assistant Attorney, City of Kankakee

KANKAKEE 000307

Charge No.: 2016CA2470
Page 10 of 10

## **Exhibits:**

A. The Department's Verified Response Good Cause Determination Worksheet and Respondent's Verified Response

B. Respondent's Employment Data

C. Respondent's Equal Employment Opportunity Plan

D. Respondent's Patrol Officer Job Description

E. Respondent's Memorandum addressed to Complainant by Regnier dated April 25, 2016

F. Respondent's Discipline Policy

G. Respondent's Memorandum addressed to Lieutenant Willie Hunt by Regnier dated May 2, 2016

H. Respondent's Memorandum addressed to Patrolman Michael Schreffer by Regnier dated February 10, 2016

I. Respondent's Memorandum addressed to Patrolman Richard Cox by Regnier dated September 26, 2012

MERIT REPORT.docm
10/16

KANKAKEE 000308

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974; See Privacy act statement<br>before completing this form.<br><br>#17W0919-07 | AGENCY<br>☒ IDHR<br><br>☐ EEOC | CHARGE NUMBER<br><br>2017CA 0559 |
|---|---|---|

### Illinois Department of Human Rights and EEOC

| NAME OF COMPLAINANT (Indicate Mr. Ms. Mrs.)<br><br>**Mr. Richard Brooks** | | TELEPHONE NUMBER (include area code) |
|---|---|---|
| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH<br><br>M    D    YEAR |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (IF MORE THAN ONE LIST BELOW)

| NAME OF RESPONDENT<br><br>**City of Kankakee Police Department** | NUMBER OF<br>EMPLOYEES,<br>MEMBERS<br>15+ | TELEPHONE NUMBER (include area code)<br><br>**(815) 933-0401** | |
|---|---|---|---|
| STREET ADDRESS<br><br>**385 East Oak Street** | CITY, STATE AND ZIP CODE<br><br>**Kankakee, Illinois 60901** | | COUNTY<br><br>**Kankakee (091)** |

| CAUSE OF DISCRIMINATION BASED ON:<br><br>Race        Age        **Retaliation** | DATE OF DISCRIMINATION<br>EARLIEST (ADEA/EPA) LATEST (ALL)<br><br>**03/25/16**<br><br>☐ CONTINUING ACTION |
|---|---|

THE PARTICULARS OF THE CHARGE ARE AS FOLLOWS:

**I.  A.  ISSUE/BASIS**

   **FAILURE TO PROMOTE, BEGINNING ON OR ABOUT MARCH 25, 2016, BECAUSE OF MY RACE, BLACK.**

   **B.  PRIMA FACIE ALLEGATIONS**

   1.  **My race is black.**

   2.  **I have satisfactorily performed my duties as a Police Officer, and have been employed with the Respondent since June 10, 1996.**

Page 1 of 3

EXHIBIT
11
8/30/18   BH

| I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | SUBSCRIBED AND SWORN TO BEFORE ME<br><br>THIS 19th DAY OF September, 2016.<br><br><br>NOTARY SIGNATURE |
|---|---|
| OFFICIAL SEAL<br>DONNA M EVANS<br>NOTARY PUBLIC - STATE OF ILLINOIS<br>MY COMMISSION EXPIRES:06/03/18<br><br>NOTARY STAMP | X _____     09/19/16<br>SIGNATURE OF COMPLAINANT          DATE<br><br>I declare under penalty that the foregoing is true and correct I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.          KANKAKEE 000378 |

Charge Number: 20▒▒▒0559
Complainant: Richa▒▒rooks
Page 2 of 3

3. On or during February of 2014, the Respondent advertised their vacancy list for the position of Police Sergeant. I was interested in, and qualified for the position, and applied for the Sergeant's opportunity. I took the Sergeant's examination and qualified.

4. Beginning on or about March 25, 2016, I observed that another prospective candidate, who has less seniority and experience than me, has been selected for Respondent's Sergeant's position. The selected applicant has not been posted by the Respondent as their selected applicant, and to date, there have been no posted notification to the members of Respondent's Department that Respondent's selected applicant has received Respondent's Sergeant's promotional opportunity; but, he has been performing the promotional duties.

5. Paul Berge (white), a less senior, less qualified individual, received Respondent's promotional opportunity.

II.   A.   ISSUE/BASIS

FAILURE TO PROMOTE, BEGINNING ON OR ABOUT MARCH 25, 2016 BECAUSE OF MY AGE, 54.

B.   PRIMA FACIE ALLEGATIONS

1. I am 54 years of age.

2. I have satisfactorily performed my duties as a Police Officer, and have been employed with the Respondent since June 10, 1996.

3. On or during February of 2014, the Respondent advertised their vacancy list for the position of Police Sergeant. I was interested in, and qualified for the position, and applied for the Sergeant's opportunity. I took the Sergeant's examination and qualified.

4. Beginning on or about March 25, 2016, I have observed that another prospective candidate, who has less seniority and experience than me, has been selected for Respondent's Sergeant's position. The selected applicant has not been posted by the Respondent as their selected applicant, and to date, there have been no posted notification to the members of Respondent's Department that Respondent's selected applicant has received Respondent's Sergeant's promotional opportunity, but, he has been performing the promotional duties.

KANKAKEE 000379

Charge Number: 201⬤⬤559
Complainant: Richar⬤⬤oks
Page 3 of 3

    5. **Paul Berge (30's), a less senior, less qualified individual, received Respondent's promotional opportunity.**

**III.  A.   ISSUE/BASIS**

    **FAILURE TO PROMOTE, BEGINNING ON OR ABOUT MARCH 25, 2016 AND CONTINUING THROUGH THE PRESENT (SEPTEMBER 19, 2016), IN RETALIATION FOR FILING A PREVIOUS CHARGE OF RACE DISCRIMINATION AGAINST THE RESPONDENT.**

    **B.   PRIMA FACIE ALLEGATIONS**

    1. **On or about March 25, 2014, I engaged in a protected activity when I filed age discrimination charge number 2014CA2471 against the Respondent with the Illinois Department of Human Rights.**

    2. **On or during February of 2014, the Respondent advertised their vacancy list for the position of Police Sergeant. I was interested in, and qualified for the position, and applied for the Sergeant's opportunity. I took the Sergeant's examination and qualified.**

    3. **Beginning on or about March 25, 2016, I have observed that another prospective candidate, who has less seniority and experience than me, has been selected for Respondent's Sergeant's position. The selected applicant has not been posted by the Respondent as their selected applicant, and to date, there have been no posted notification to the members of Respondent's Department that Respondent's selected applicant has received Respondent's Sergeant's promotional opportunity; but, he has been performing the promotional duties.**

    4. **Respondent's adverse actions follow my protected activity within such a period of time as to raise an inference of retaliatory motivation.**

**ACF/RCG**

KANKAKEE 000380



*City of* **Kankakee**

Police and Fire Commission
385 East Oak Street
Kankakee, Illinois 60901
(815) 933-0480 – Fax (815) 933-0482

## KANKAKEE POLICE DEPARTMENT
### 2011 SERGEANT PROMOTIONAL PROCESS
### WITHOUT VETERAN'S POINTS

| LAST NAME | FIRST NAME | WRITTEN EXAM PERCENT (40%) | ORAL ASSESSMENT PERCENT (30%) | CHIEF'S MERIT POINTS (15%) | COMMUNITY SERVICE POINTS (5%) | EDUCATION POINTS (5%) | LONGEVITY POINTS (5%) | OVERALL SCORE |
|---|---|---|---|---|---|---|---|---|
| Martin | Jeff | 85.00 | 73.0769 | 15 | 5 | 0 | 5.00 | 80.9231 |
| Lindgren | Michael | 70.00 | 79.2308 | 13 | 4 | 4 | 5.00 | 77.7692 |
| Berge | Paul | 76.00 | 74.4615 | 15 | 0 | 4 | 5.00 | 76.7385 |
| Halper | Scott | 69.00 | 74.6154 | 12 | 4 | 4 | 5.00 | 74.9846 |
| Sneed | Michael | 60.00 | 71.2308 | 15 | 4 | 4 | 5.00 | 73.3692 |
| Wolfe | Clayt | 59.00 | 69.8462 | 15 | 4 | 2 | 5.00 | 70.5539 |
| Brooks | Richard | 77.00 | 62.3077 | 10 | 2 | 4 | 5.00 | 70.4923 |
| Latham | Brad | 63.00 | 67.8462 | 12 | 3 | 4 | 4.33 | 68.8839 |
| Johnston | Zach | 60.00 | 64.3077 | 15 | 4 | 1 | 5.00 | 68.2923 |
| Martinez | Jose L | 70.00 | 67.3846 | 12 | 0 | 1 | 5.00 | 66.2154 |
| Schneider | Josh | 64.00 | 59.8462 | 15 | 0 | 2 | 5.00 | 65.5539 |
| Wynne | Justin | 55.00 | 62.0000 | 14 | 3 | 0 | 5.00 | 62.6000 |
| Benoit | Chris | 71.00 | 58.9231 | 13 | 0 | 0 | 3.40 | 62.4769 |
| English | Joe | 50.00 | 68.3077 | 15 | 0 | 2 | 4.83 | 62.3223 |
| Martinez | Joseph H. | 59.00 | 58.4615 | 10 | 0 | 2 | 5.00 | 58.1385 |
| Herscher | Michael | 67.00 | 33.6923 | 14 | 0 | 2 | 5.00 | 57.9077 |
| Johnson | Charles | 60.00 | 32.0000 | 11 | 0 | 1 | 5.00 | 50.6000 |

Requests for Veterans preference points should be submitted to the office of the City Clerk, with a copy of your DD214 no later than 5:00 p.m. on November 28, 2011.

Dated this 14 day of November, 2011
POLICE AND FIRE COMMISSION

By: ▮▮▮▮▮▮▮▮▮▮
Robert B. LaBeau, Secretary

Received
NOV 2011
City Clerk
City of Kankakee

EXHIBIT
12
8/30/18

KANKAKEE 000019

City of Kankakee
Police & Fire Commission
385 East Oak Street
Kankakee, Illinois 60901
(815) 933-0480 - Fax (815) 933-0482

# KANKAKEE POLICE DEPARTMENT
## 2014 SERGEANT PROMOTIONAL PROCESS
## WITH VETERAN'S POINTS

| Last Name | First Name | Written Exam Percent (40%) | Oral Assessment Percent (30%) | Chief's Merit Points (15%) | Community Service Points (5%) | Education Points (5%) | Longevity Points (5%) | Veteran's Preference Points | Overall Score |
|---|---|---|---|---|---|---|---|---|---|
| BERGE | PAUL | 86.00 | 79.5000 | 13.00 | 5.00 | 4.00 | 5.00 | | 85.2500 |
| HALPER | SCOTT | 82.00 | 78.8333 | 13.00 | 5.00 | 4.00 | 5.00 | | 83.4500 |
| MARTINEZ | JOSE | 75.00 | 68.5000 | 14.00 | 5.00 | 2.00 | 5.00 | 3.50 | 80.0500 |
| TISON | GARY | 78.00 | 65.8333 | 13.00 | 5.00 | 2.00 | 5.00 | 3.50 | 79.4500 |
| COASH | MICHAEL | 64.00 | 69.3333 | 15.00 | 5.00 | 4.00 | 5.00 | 3.50 | 78.9000 |
| HUNTER | STEVEN | 77.00 | 65.5000 | 15.00 | 5.00 | 1.00 | 5.00 | | 76.4500 |
| LATHAM | BRADFORD | 80.00 | 61.0000 | 12.00 | 5.00 | 4.00 | 5.00 | | 76.3000 |
| BENOIT | CHRIS | 73.00 | 71.3333 | 14.00 | 5.00 | 0.00 | 5.00 | | 74.6000 |
| BROOKS | RICHARD | 71.00 | 57.0000 | 12.00 | 5.00 | 4.00 | 5.00 | | 71.5000 |
| JOHNSTON | ZACHARY | 63.00 | 64.1667 | 15.00 | 5.00 | 1.00 | 5.00 | | 70.4500 |
| SCHNEIDER | JOSHUA | 63.00 | 66.1667 | 15.00 | 0.00 | 2.00 | 5.00 | | 67.0500 |
| MARTINEZ | JOSEPH | 67.00 | 71.3333 | 11.00 | 0.00 | 2.00 | 5.00 | | 66.2000 |
| GARCIA | AURELIO | 69.00 | 41.3333 | 14.00 | 5.00 | 1.00 | 5.00 | | 65.0000 |
| MCCARTY | DONALD | 62.00 | 55.8333 | 10.00 | 5.00 | 2.00 | 5.00 | | 63.5500 |
| ENGLISH | JOSEPH | 50.00 | 53.0000 | 15.00 | 0.00 | 2.00 | 5.00 | | 57.9000 |
| HERSCHER | MICHAEL | 71.00 | 0.0000 | 14.00 | 0.00 | 2.00 | 5.00 | | 49.4000 |

Dated this 4TH day of December, 2014.
POLICE AND FIRE COMMISSION

Received
DEC 2014
City Clerk
City of Kankakee

By: [redacted]
Doug Jones, Secretary

EXHIBIT 13
8/30/18 BH

KANKAKEE 000698

# Kankakee Police Department
## 2017 Sergeant Promotional Process
### With Veterans' Points Added

| Last Name | First Name | Overall Written Exam Percent | Weighted Written Exam Percentage (50%) | Overall Assessment Phase Percent | Weighted Assessment Phase Percent (20%) | Dept. Merit and Efficiency Rating (15%) | Seniority (5%) | Education (5%) | Physical Fitness (5%) | Veteran's Preference Points | Overall Promotional Composite Score |
|---|---|---|---|---|---|---|---|---|---|---|---|
| LATHAM | BRADFORD | 86.00 | 43.00 | 71.67 | 14.33 | 13.00 | 5.00 | 4.0 | 5.00 | 0.00 | 84.33 |
| COASH | MICHAEL | 71.00 | 35.50 | 76.33 | 15.27 | 12.00 | 5.00 | 4.0 | 5.00 | 3.5 | 80.27 |
| HUNTER | STEVE | 76.00 | 38.00 | 83.33 | 16.67 | 15.00 | 5.00 | 0.0 | 5.00 | 0.00 | 79.67 |
| MARTINEZ | JOSE | 70.00 | 35.00 | 69.00 | 13.80 | 12.00 | 5.00 | 2.0 | 5.00 | 3.5 | 76.30 |
| HALPER | SCOTT | 70.00 | 35.00 | 73.33 | 14.67 | 11.00 | 5.00 | 4.0 | 5.00 | 0.00 | 74.67 |
| MARTINEZ | JOSEPH | 61.00 | 30.50 | 69.00 | 13.80 | 12.00 | 5.00 | 4.0 | 5.00 | 0.00 | 70.30 |

Dated this 9th day of January, 2018
POLICE AND FIRE COMMISSION

By 

Nickey F. Yates, Sr., Secretary



**City of Kankakee**

## Police Department
385 East Oak Street
Kankakee, Illinois 60901
(815) 933-0401 – Fax (815) 933-0463
Police Web Site: www.kankakeepolice.com

Patrolman Richard Brooks

11-6-13

The Kankakee Police Department received an e-mail this morning from Paul Slajchert, praising your actions while at a call.  His comments were very gracious and are welcome as those types of comments are rare.  The fact that you took the time tend to his needs as a citizen were reassuring and proof that the work we do on a daily basis is not always overlooked.

I want to commend you for your actions and patience in dealing with the situation.  I have read the report referenced in his e-mail, and you did an excellent job.  Keep up the good work!



Larry D. Regnier
Chief of Police

EXHIBIT
15
8/30/18  BH

KANKAKEE 000624



**City of Kankakee**

Police Department
385 East Oak Street
Kankakee, Illinois 60901
(815) 933-0401 – Fax (815) 936-3611
City Web Site: www.ci.kankakee.il.us

To: PATROLMAN RICHARD BROOKS

### NOTICE OF SUSPENSION

This is to notify you that in accordance with the powers granted to me under the Illinois Revised Statutes and the Rules of the Board of Fire and Police Commissioners of the City of Kankakee and elsewhere, I am hereby suspending you for a period of _3_ day (s). Such suspension is ordered by me as a result of your violation of Rule(s) _101.2 B(3) & 103.1 B(4)a_ of the Kankakee Police Department which is set forth in Appendix A and made a part of this Notice. Your suspension will be served on the _25th , 26th, and 27th, of March, 2007_ .

Such suspension is based on your conduct in that on the day of _3 / 9 / 2007_ , At or about _8:10_ o'clock _A_ . M., in the City of Kankakee, Illinois you_ WHILE WORKING AS A SCHOOL RESOURCE OFFICER AT KANKAKEE HIGH SCHOOL , YOU REFUSED TO FOLLOW A DIRECT ORDER FROM YOUR SUPERIOR TO REPORT TO KANKAKEE JR. HIGH FOR SCHOOL RESOURCE OFFICER DUTY.

EXHIBIT
_16_
8/34/18  BH

(                                    (

If you wish to appeal this suspension, you may do so within 24 hours after the date and time

set forth below by serving upon the Board of Fire and Police Commissioners of the City a request

for such an appeal.  The 24 hour period within which the notice must be given shall commence

with the serving of this Notice of Suspension upon you.

   Such Notice of Suspension was served upon you on the __20TH__ day of __MARCH__ , 2007, at

_1:45_ o' clock _P_. M..



                         Chief of Police

   I, _RICHARD Brooks_____ do hereby acknowledge receipt of the forgoing Notice

of Suspension and recognize that I may appeal the suspension within a period of time set for the

in the Notice above.



(Officers may use vacation and/or accumulated compensatory time in lieu of suspension without
pay.)

Note: Upon any appeal to the Board of Police and Fire Commissioners by an officer, the Board
may sustain the action of the Chief of Police, may reverse it with instructions that the officer so
suspended receive his or her pay for the period involved, may suspend the officer for additional
time not to exceed thirty (30) days, or discharge the officer, depending of the evidence presented.

KANKAKEE 000629



**City of Kankakee**

**Police Department**
385 East Oak Street
Kankakee, Illinois 60901
(815) 933-0401 – Fax (815) 936-3611
City Web Site: www.ci.kankakee.il.us

Patrolman Richard Brooks                                    06-28-10

When I was appointed Interim Chief of Police on 06-19-10, I was made aware of an outstanding disciplinary situation pertaining to your actions on 07-16-09, 09-20-09, and 09-29-09. I am now going to resolve the situation as part of my duties.

On these dates, you were in possession of items that were to be turned into evidence, or taken to be viewed, then to be returned to the owners. There were four occasions in four months where you did not follow proper procedure when placing items into evidence, or returning them to the owner.

While these charges are almost a year old, they are serious and place great liability on the Police Department. After reading the statements, and the Police Department Rules and Regulations, I find that you are in violation of the following General Orders;

General Order 84.1.1C  Property and Evidence Control
All property collected will be secured in one of the property lockers located in the hall adjacent to the property storage room, prior to the end of the officers shift.

General Order 27.1.1  Mandatory Requirements
Neglecting to properly transfer recovered property to the property officer.

As a result, this letter will act as a written reprimand to be placed in your personnel file. Any future violations will result in progressive discipline and possible dismissal from the Police Department.

Larry D. Regnier
Interim Chief of Police

EXHIBIT
17
8/30/8  BH

KANKAKEE 000627

Stmnt Of: Ptlmn Richard Brooks

RE: Pursuit Policy

Date: 09/05/15

On this date I observed, while getting in my squad car to leave the Police Station, a Crotch Rocket Motorcycle go by heading Southbound on Indiana Ave. weaving through traffic at an approximate speed of 90 to 100 miles per hour, which I later learned that the rider was in pursuit of a driver in a van to do harm, damaging the van by aggressively breaking off the mirror of the van.

By the time I pulled out of the parking lot and reached the intersection of Indiana Ave. and Court St. the rider was out of sight.  I was then advised by a motorist at the red light of Indiana Ave. and Court St. that, the rider turned right onto Court St. from Indiana Ave..  I then observed the rider stopped with a red light in the left turn lane at the intersection of Schuyler Ave. and Court St.

 Through my observation of the reckless nature of the rider, I then activated my overhead lights in an attempt to execute a traffic stop, and when the rider look back and saw this, the rider then took off at a high rate of speed fleeing Southbound on Schuyler Ave..  For a short time I pursued this vehicle using good officer discretion and with an understanding that I could articulate the reason for my short chase, which was based the recklessness of the rider while passing the Police Station,  knowing when I felt that if the chase became to dangerous or that I could no longer see the rider or if I was told to terminate by a supervisor I would do so.

With lights and siren activated, I then determined during the short chase that, after observing the rate of speed and the recklessness of the rider, I then terminated the chase om my own.

The reason I wanted to write this short statement was due to the confusion and frustration I felt while meeting with Commander Kidwell and Lt. Lowman reference this chase and  because of my understanding of the pursuit policy, which is that an officer has three reason that he can pursue, and my thinking during the short pursuit I was involved in was that, I believed that the recklessness of the rider (passing a police department, weaving in and out of traffic at approximately 90 to a 100 mph)led me to believe that a forcible felony could have been, or was about to be committed, which is what led me to attempt the stop.

But after this meeting I now have a better understanding and would like to respectfully thank Commander Kidwell and Lt. Lowman for helping to understand that, the best way and probably the safest way to handle a stop that could possibly lead to a pursuit and to also take out all of the confusion from a vague policy, would be to, when a driver/rider takes off after being stopped or attempting to be stopped just let him/her go if you're not a 100 percent sure a forcible felony has been committed, and with that understanding I assured them that it should not happen again.

Ptlmn Richard Brooks

EXHIBIT
18
8/30/18   BH

RESPONDENT'S EXHIBIT

KANKAKEE 000093

# Documents And Events Officer List

| Officer/Employee | ID Number | Division |
|---|---|---|
| Brooks, Richard | 9608 | Patrol |

To locate the details for a record listed below, Click on the record of interest and the computer will retrieve it for you.

| Date | Number | Type | Document / Event | Related Incident | Description | Purge | Purged |
|---|---|---|---|---|---|---|---|
| 9/5/2015 | 484 | Event | Vehicle Pursuit | Violation Of Department Policy | Excessive Speed in response to | Yes | No |
| 12/29/2014 | 365 | Event | Chargeable Accident | Not Stated | Chargeable Accident | Yes | No |
| 11/29/2014 | 350 | Event | Vehicle Pursuit | N/A | N/A | Yes | No |
| 10/24/2014 | 334 | Event | Vehicle Pursuit | N/A | Violation of Department Policy | Yes | No |

| Locate | | | | | | | |
|---|---|---|---|---|---|---|---|
| Another Officer's Records | Individual Records | Add A New Record | Documents Main Menu | Drop Down Lists | Reports | Help |

# Documents And Events Officer List

| Officer/Employee | ID Number | Division |
|---|---|---|
| Brooks, Richard | 9608 | Patrol |

EXHIBIT 19
8/34/18 BH

KANKAKEE 000100

0x31GYOEview.txt

```
09/05/2015 18:07:56  Martinez  Narrative: ONE SOUTH BOUND ON MOTORCYCLE
09/05/2015 18:08:38  Martinez  Narrative: S ON WASHINGTON NOW
09/05/2015 18:08:50  Martinez  Narrative: RECKLESS DRIVING ALSO
09/05/2015 18:09:26  Martinez  Narrative: CROTCH ROCKET WHITE GAS TANK  BLK MALE
09/05/2015 18:09:32  Martinez  Narrative: LSH WEST ON HAWKINS
09/05/2015 18:10:10  Martinez  Narrative: 10-8  DISCONTINUED CHASE
```

KANKAKEE 000101



# Kankakee Police Department
## Memo

**Date:**  10-28-14

**To:**   Cmdr. Kidwell

**From:** Lt. Lowman

**Re:**    Ptlm. Brooks

On 10-28-14 Ptlm. Brooks and I discussed the chase that he was involved in on 10-24-14. We reviewed the pursuit policy and we are up to date on the Kankakee Police Department's Pursuit Policy.





10/28/14

Lt. Kenneth S. Lowman                    Ptlm. Richard Brooks



RESPONDENT'S EXHIBIT 3

KANKAKEE 000102

*Re: Shreffler case*

Date: 02/21/15

To: D/C John Gerard

From: Cmdr. Chris Kidwell

Subject: Pursuit (15-06608)

On 02/21/15, Ptlm. Paul Berge responded to a suspicious vehicle at 148 N. Harrison Ave. (Salvation Army). While en route to the call, Officer Berge observed the vehicle in question (white SUV). Officer Berge initiated a traffic stop on the white SUV at Orchard Ave. and Court St. The white SUV refused to stop and continued southbound to River St. where it turned westbound. The vehicle continued west on River St. and then turned South on S. Washington Ave. Ptlm. Berge was ultimately joined by Officers' Coash and Shreffler. The white SUV turned west on W. Water St. from S. Washington Ave. at which time Sgt. Martin terminated the pursuit.

Officer Berge was incompliance with **Policy 314.2.1 (When to Initiate a Pursuit)** when he initiated the pursuit. Officer Berge responded to a suspicious vehicle complaint, located the vehicle and attempted to stop it. The vehicle refused to stop. Sgt. Martin (shift supervisor) was aware of the pursuit and allowed it to continue after considering the road conditions, speed of pursuit, traffic volume and time of day. There was little if any traffic out during the pursuit and Sgt. Martin allowed the pursuit to continue until it reached W. Water St., at which time Sgt. Martin terminated the pursuit. Officers Coash and Berge immediately disengaged and terminated the pursuit.

Lt. Hunt documented that Officer Shreffler disobeyed Sgt. Martin's order to terminate the pursuit and continued paralleling the white SUV, in violation of Policy **314.2.2 (When to Terminate a Pursuit)**. Officer Shreffler ultimately arrested the driver of the white SUV after he observed it pull into the driveway of ████████████. The driver of the white SUV, Lee E. Clark (M/B ████) was arrested for DWLS and Resisting a Peace Officer. Officer Berge could not verify if it was the same driver and therefore no citations were issued in relation to the vehicle pursuit.

Sgt. Martin spoke with Officer Shreffler following the pursuit. Officer Shreffler informed Sgt. Martin that he observed the vehicle traveling without lights as it pulled into the driveway ████████████ and upon approaching the subject, he fled towards ███████ Officer Shreffler acknowledged that he heard via police radio that the pursuit was terminated. Officer Shreffler stated that he was on his way to Lincolnshire gas station when he observed the vehicle cross his path. Sgt. Martin documented that he believes Ptlm. Shreffler's actions were in violation of Policy 314.2.2.

Ptlm. Shreffler's report indicates he was on routine patrol traveling west on ███████ when he observed a white Chevy Equinox, pull into ████████████ with no lights on and he got out his squad car and attempted to make contact with the driver. The suspect (Lee Clark) attempted to flee inside the residence but was apprehended and charged accordingly.

Page 1 of 4

EXHIBIT
20
8/30/18   SH
PENGAD 800-631-6989

KANKAKEE 000205

**314.2.2 WHEN TO TERMINATE A PURSUIT**

Pursuits should be discontinued whenever the totality of objective circumstances known or which reasonably ought to be known to the officer or supervisor during the pursuit indicates that the present risks of continuing the pursuit reasonably appear to outweigh the risks resulting from the suspect(s)' escape.

The factors listed in Policy Manual § 314.2.1 are expressly included herein and will apply equally to the decision to discontinue as well as the decision to initiate a pursuit. Officers and supervisors must objectively and continuously weigh the seriousness of the offense against the potential danger to innocent motorists and themselves when electing to continue a pursuit. In the context of this policy, the term "terminate" shall be construed to mean discontinue or to stop chasing the fleeing vehicle(s). (E.) Pursuits are NOT considered terminated, whenever an officer continues to follow the general path of the pursued vehicle, even if that officer turns off their emergency lights and/or siren.

In addition to the factors listed in Policy Manual § 314.2.1 the following factors should also be considered in deciding whether to terminate a pursuit:

(a) Distance between the pursuing officers and the fleeing vehicle(s) is so great that further pursuit would be futile or require the pursuit to continue for an unreasonable time and/or distance.

(b) Pursued vehicle's location is no longer definitely known.

(c) Officer's pursuit vehicle sustains any type of damage that renders it unsafe to drive.

(d) Extended pursuits of violators for misdemeanors not involving violence or risk of serious harm (independent of the pursuit) are discouraged.

(e) Hazards to uninvolved bystanders or motorists.

(f) If the identity of the offender is known and it does not reasonably appear that the need for immediate capture outweighs the risks associated with continuing the pursuit, officers should strongly consider discontinuing the pursuit and apprehending the offender at a later time.

(g) Directed by a supervisor.

I reviewed the Mobile Audio Video (MAV) from Officer Shreffler's vehicle which reveals the pursuit being terminated. The MAV reveals two squad cars turning north on Wall St., and taillights ahead of the squad cars turning south on 8th Street. Officer Shreffler appears to turn south on 6th Ave. before turning west on ▇▇▇▇▇▇▇ where taillights are observed some distance ahead. Ptlm. Shreffler's video then ends with no additional video. It appears that Officer Shreffler is paralleling the vehicle as he reaches 49 mph and disregards a stop sign. Ptlm. Shreffler apparently turned his MAV off prior to initiating this activity because the video is running from the time the pursuit ended until turning onto ▇▇▇▇▇▇▇ when the video goes dead. It is my understanding that the video recording can only be stopped when the officer manually turns it off. This is obviously a concern because the video continues until

Page 2 of 4

enforcement action is taken.  No video or audio recording is available from Clark's initial arrest  or during the transport to the Jerome Combs Detention Center. Policy 446.4.1 defines that the MAV system should be activated as soon as practicable and requires Enforcement Stops be video and audio recorded. The video also does not reveal any of the transport as required by Policy 446.4 (Activation of The MAV). Policy 446.4.2 (Cessation of Recording) defines that if the MAV is stopped or not used for any reason during an incident, other than listed above, a written supplementary report explaining why will be forwarded to the Chief of Police through the Chain of Command. As previously stated, I reviewed Ptlm. Shreffler's MAV which reveals the pursuit being terminated and him traveling south on S. 6th Ave. The video is terminated when Ptlm. Shreffler turns west and he apparently arrested Clark shortly after the video was stopped.

### 446.4.1 REQUIRED ACTIVATION OF MAV

This policy is not intended to describe every possible situation in which the MAV system may be used, although there are many situations where its use is appropriate. An officer may activate the system any time the officer believes it would be appropriate or valuable to document an incident. In some circumstances it is not possible to capture images of the incident, due to conditions or the location of the camera. However, the audio portion can be valuable evidence and is subject to the same activation requirements as the MAV. The MAV system should be activated as soon as practicable in any of the following situations: Officers will have MAV recording whenever a vehicle's emergency lights are activated and ARE REQUIRED to video and audio record all enforcement stops. Enforcement Stops are defined as an action by a law enforcement officer in relation to enforcement and investigation duties, including but not limited to: traffic stops, pedestrian stops, abandoned vehicle contacts, motorist assists, commercial motor vehicle stops, roadside safety checks, requests for identification, or responses to requests for emergency service. Officers may also record other events after advising persons they are being audio recorded, as required by the Illinois Eavesdropping Statute 720 ILCS 5/14-3(H).

### 446.4 ACTIVATION OF THE MAV

The MAV can be activated in one of three ways:

(a) By Manually turning on Video / Audio

(b) By activating the vehicle's emergency lights

(c) By exceeding a set speed

Once the vehicle's emergency lights are activated upon the initial response, officers will NOT cease the recording until completion of the enforcement stop. The enforcement stop is considered complete when the subject of the enforcement stop or the officer has left the scene. In cases where the officer is transporting a subject, the stop is considered complete upon arrival at the destination. Officers will not cease recording an incident solely based on the request of a person being recorded.

### 446.4.2 CESSATION OF RECORDING

Page 3 of 4

An officer at a traffic control scene may manually stop an MAV when the squad's emergency lights are activated. <u>If the MAV is stopped or not used for any reason during an incident, other than listed above, a written supplementary report explaining why will be forwarded to the Chief of Police through the Chain of Command.</u>

KANKAKEE 000208



# Kankakee City Police Department
### 385 E. Oak Street
### Kankakee, IL 60901
**PHONE: (815)933-0426    FAX: (815)933-0525**



To: Commander Kidwell
From: Lieutenant Hunt
Date: February 23, 2015

### REF: Incident 15-6608 and 15-6609 (Michael Shreffler)

Sir:

On 2/21/15, at approximately 3:31 a.m., Officers Berge, Coash, and Shreffler were involved in a vehicle pursuit of a suspicious vehicle that originated at the Salvation Army on East Court Street. The vehicle was located by Officer Berge and he was joined by Officer Coash as they tried to initiate a traffic stop. The vehicle did not stop and Officer Shreffler joined the pursuit in which he became the third vehicle as they passed him. Sgt. Martin ordered that the pursuit be terminated and Officer Berge and Coash acknowledged the order.

However, at approximately 3:43 a.m., Officer Shreffler, who apparently proceeded to parallel to vehicle in question until he located it pulling into the driveway at ███████ ███████ with the lights off. There are several things that need to be addressed: (1) Officer Shreffler disobeying a direct order to terminate the pursuit, (2) Violation of the Department's Pursuit Policy (314.2.2), and (3) fabricating facts to justify his actions after the pursuit was terminated for a misdemeanor offense. The Department was just briefed by Lt. Kane on the do's and don'ts when it comes to pursuits. This subject matter was also covered in the Daily Training Bulletins.

My main concern is the attitude that Officer Shreffler displayed with the supervisors when he was being corrected and briefed on the incident. I was also made aware of some tension between Officer Berge and Officer Shreffler because Officer Berge did not see any reason to write any violations because the pursuit was terminated. There was no way to determine if the driver of the vehicle was the same driver, unless Officer Shreffler never lost sight of the vehicle and driver after the order was given to terminate the pursuit.

I would have handled this at the shift level, but this is an ongoing issue when it comes to Officer Shreffler and his inability to take constructive criticism from his immediate supervisors. I listed this as one of his weaknesses during his evaluation. I concur with Sergeant Martin's interpretation of the policy and that Officer Shreffler did violate the pursuit policy when he continued to pursue the vehicle after being given a direct order by a supervisor to terminate.



I explained to the officer and supervisors involved that the scale on which our actions are weighed is a very delicate one, especially in this day and age.  If Officer Shreffler would have recovered a weapon and a substantial amount of drugs, he would probably be written up for an accommodation for his actions. But, at the same time, if Officer Shreffler would have continued to pursue the vehicle after being ordered to terminate and caused the death of two innocent people, the fate of his actions might be determined in front of the Police & Fire Commission Board and judged on a different scale.

Officer Shreffler is a hard-working individual; however, he has to understand that there are policies, procedures, and laws that we are governed by and must adhere to in order to do our job to the best of our ability. And following the direction of immediate supervisors is not an arbitrary thing that you turn off and on when you feel like it. I will stand behind my sergeants when it comes to running the shift as I have directed them to do in my absence.

Sincerely

Willie Hunt
Lieutenant

KANKAKEE 000210

To:      Lt Hunt
From:   Sgt Martin
Date:   02/21/15
Ref:     Ptlm Shreffler write-up (incident #15-6608 and #15-6609)

On 02/21/15 at approximately 3:31 a.m. Kancomm dispatched K-11 (Ptlm Berge) to the report of a suspicious vehicle in the area of the Salvation Army (incident #15-6608).   Shortly thereafter Ptlm Berge and Ptlm Coash advised they located and were attempting to stop a vehicle matching the suspicious vehicle's description. Ptlm Berge then dispatched that the vehicle was refusing to stop, and provided its direction of travel. Ptlm Berge then initiated a pursuit of the vehicle. Due to the time of night, absence of traffic, and relatively low speed the pursuit was allowed to continue for a brief amount of time. As the vehicle traveled southbound across McMullen bridge and onto W. Water St. I ordered the pursuit terminated. Ptlm Berge acknowledged the order.

At approximately 3:43 a.m. Ptlm Shreffler (K-12) advised he had reacquired the vehicle pulling into the driveway of ▓▓▓▓▓▓▓▓▓ (incident #15-6609), despite the fact the pursuit had been terminated. I then proceeded to Ptlm Shreffler's location, at which time I observed he had a male subject secured in handcuffs and was escorting him to his patrol vehicle. The subject was yelling and struggling with Ptlm Shreffler as they walked towards the squad car. The subject was secured inside Ptlm Shreffler's patrol car. The subject was ultimately found to have a suspended driver's license and was arrested for this violation, as well as resisting arrest.

During a later conversation with Ptlm Shreffler he reported that he observed the vehicle driving without lights as it pulled into the driveway, and upon approaching the subject, he fled towards the residence from the vehicle.   Ptlm Shreffler acknowledged that he heard, via radio, that the pursuit was terminated, but reported that he was on his way to Lincolnshire gas station when he observed the vehicle cross his path.

I believe Ptlm Shreffler's actions were in violation of our department's pursuit policy (Policy #314.2.2) and am submitting this document for your review.

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Sgt. Jeff Martin #2962



**City of Kankakee**

**Police Department**
385 East Oak Street
Kankakee, Illinois 60901
(815) 933-0401 – Fax (815) 933-0463
Police Web Site: www.kankakeepolice.com

To: PATROLMAN MICHAEL SHREFFLER

### NOTICE OF SUSPENSION

This is to notify you that in accordance with the powers granted to me under the Illinois

Revised Statutes and the Rules of the Board of Fire and Police Commissioners of the City of

Kankakee and elsewhere, I am hereby suspending you for a period of __1__ day (s).  Such

suspension is ordered by me as a result of your violation of Rule(s)__314. 2. 2, 446. 4. 1.___

_____of the Kankakee Police Department which is set forth in

Appendix A and made a part of this Notice.  Your suspension will be served on __*03/16/15*__

Such suspension is based on your conduct in that on the day of __*02/21/15*_, at or about

_**3:31**__o'clock _A_ . M., in the City of Kankakee, Illinois   YOU FAILED TO TERMINATE A

MOTOR VEHICLE  PURSUIT AFTER BEING ORDERED TO BY A SUPERVISOR, AND

IN FACT CONTINUED TO PURSUE THE VEHICLE WHILE TURNING OFF YOUR IN-

CAR VIDEO SYSTEM AGAINST DEPARTMENT POLICY.

KANKAKEE 000222

If you wish to appeal this suspension, you may do so within 24 hours after the date and time set forth below by serving upon the Board of Fire and Police Commissioners of the City a request for such an appeal.  The 24 hour period within which the notice must be given shall commence with the serving of this Notice of Suspension upon you.

Such Notice of Suspension was served upon you on the day of ___3-11___, 2015, at

_10:00_ o' clock _A_. M..



<center>Chief of Police</center>

I, _Michael Sheetfler_ do hereby acknowledge receipt of the forgoing Notice of Suspension and recognize that I may appeal the suspension within a period of time set for the in the Notice above.



Employee

(Officers may use vacation and/or accumulated compensatory time in lieu of suspension without pay.)

Note: Upon any appeal to the Board of Police and Fire Commissioners by an officer, the Board may sustain the action of the Chief of Police, may reverse it with instructions that the officer so suspended receive his or her pay for the period involved, may suspend the officer for additional time not to exceed thirty (30) days, or discharge the officer, depending of the evidence presented.

KANKAKEE 000223

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| Richard Brooks, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| -vs- | ) | No. |
| | ) | |
| City of Kankakee, Illinois, | ) | |
| | ) | |
| *Defendant.* | ) | |

## PLAINTIFF'S INITIAL DISCLOSURES

A.  The name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information.

Plaintiff believes that the last known address and telephone number of the following are known to defendant. Plaintiff intends to supplement these disclosures within 8 days with details about the subjects of the information.

1.  Billy Jerome Moore

2.  Joe Bassett

3.  Michael Suprenant

4.  Scott Kerner

5.  Matt Adamson

6.  Willie Hunt

7.  Larry Osenca

8.  Deanne Regas

B.  A copy of, or description by category and location of all documents and tangible things in the possession, custody, or control of the parties that are relevant to disputed facts alleged with particularity in the pleadings.


EXHIBIT
22
8/34/18  BH

1.    Agreed Judgment Order, *Baptist v. City of Kankakee*, 03-2115, September 22, 2005

2.    Step 3 Grievance, High Speed chase, 2/22/2016

3.    Shreffler Documents (19 pages)

C. A computation of any category of damages claimed by plaintiff.

Difference in past and future lieutenant's salary and sergeant's salary; computations pending

D. Any insurance agreement.

None in possession of plaintiff

/s/ <u>Kenneth N. Flaxman</u>
Kenneth N. Flaxman
ARDC No. 08830399
Joel A. Flaxman
200 S Michigan Ave, Ste 201
Chicago, IL 60604
(312) 427-3200
*Attorneys for Plaintiff*