E-FILED
Wednesday, 12 December, 2018  09:28:16 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| Richard Brooks, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| -vs- | ) | No.  17-cv-2265 |
| | ) | |
| City of Kankakee, Illinois, | ) | |
| | ) | |
| *Defendant.* | ) | |

## RESPONSE TO MOTION FOR SUMMARY JUDGMENT

Plaintiff submits the following in response to defendant's motion for summary judgment.

### I.   Introduction

Plaintiff contends that he was denied equal employment opportunities because of his race on the oral interview component of defendant's 2014 police sergeant promotional examination. Defendant responds to this claim with a legally irrelevant "bottom line" defense. Plaintiff shows that a trial is required to resolve the facts material to his claim of discrimination in the oral interview.

Plaintiff also contends that that he was the subject of retaliation because of his complaints of race discrimination. The facts material to this claim, viewed in the list most favorable to plaintiff, show that defendant has unlawfully retaliated against plaintiff.

## II.   Response to Undisputed Material Facts

### (1) Undisputed Material Facts

1.      Plaintiff Richard Brooks is an African-American male who has been a patrolman for the Kankakee Police Department ("KPD") for over 22 years. (Ex. A, Brooks Dep. p. 43; Ex. B., Regnier Dep. p. 30)

2.      Defendant City of Kankakee is a duly-incorporated municipality and maintains a police force. (Dkt. #6, Answer p. 1)

3.      At all relevant times, KPD consisted of about 67 officers, including about 12 sergeants, 5 lieutenants, and a Patrol Commander, Investigations Commander, Deputy Chief, and Chief. (Ex. A, Brooks Dep. pp 35-37)

4.      Larry Regnier was the Deputy Chief of the KPD from 2000 to 2010 and then Chief of Police from 2010 until he retired on May 1, 2016. (Ex. B, Regnier Dep. pp. 5-7)

5.      Robin Passwater is currently a lieutenant in the KPD, and was the Commander of the Investigations Division from about 2009 to 2015, Deputy Chief in 2015 and early 2016, and Acting Chief for a few months in 2016. (Ex. D, Passwater Dep. p. 5)

6.      Christopher Kidwell is currently a lieutenant in the KPD assigned to the Kankakee Area Metro Enforcement Group ("KAMEG").

Kidwell was Commander of the Patrol Division from 2014 to until early
2018, when he returned to KAMEG. (Ex. C, Kidwell Dep. p. 5)

8.     The KPD promotes officers to sergeant through a competitive
examination process, and both notice that testing will occur and the candi-
dates' scores are publicly posted. (Ex. A, Brooks Dep. pp. 48-49; Ex. B,
Regnier Dep. pp. 68-69)

9.     The ranked results of such testing are colloquially called "the
list." If a candidate is promoted off "the list," every other candidate moves
up one spot, and a list remains in effect until it is replaced by a new list.
(Ex. A., Brooks Dep. pp. 41-42)

10.     For the times relevant to this case, there is a 2011 list, issued
November 14, 2011, a 2014 list, issued December 4, 2014, and a 2017 list, is-
sued January 8, 2018. (Ex. A, Brooks Dep. pp. 65-66; Exs. 12-14 of Brooks
Dep.; *see also* Ex. F, 2011 list; Ex. G, 2014 list; Ex. H 2017 list)[1]

11.     State law *requires* the Police Chief to pick from among the
candidates with the top three scores when promoting an officer to ser-
geant. 65 ILCS 5/10-2.1-15 (mandating that for police, "*all* examinations for
promotion *shall* be competitive," and that "*all* promotions *shall* be made
from the 3 having the highest ranking) (emphasis added)); *see also* Ex. B,
Regnier Dep. p. 69 (chief must promote only one of the top 3 candidates))

12.     The Chief may only promote a person when there is an open position. (Ex. B, Regnier Dep. p. 68)

18.     In 2003, Brooks and four other African-American KPD officers—Joe Baptist, Price Dumas, Willie Hunt, and Lamar Upton—sued the City over alleged racial discrimination (the "*Baptist*" litigation). (Ex. A, Brooks Dep. p. 7)

19.     A jury rejected some of the plaintiffs' claims in the *Baptist* litigation. (Ex. A,  Brooks Dep. pp. 7-8)

20.     While the remaining claims were pending, the parties settled. Chief Judge McCuskey entered a settlement order on September 22, 2005 that created a "Blue Ribbon Committee" to review the Police Department's hiring and promotional testing, albeit only in an advisory role, and required certain other changes in KPD's policies, such as public notice of promotional testing. (Ex. A, Brooks Dep. pp. 8, 13; Ex. 2 to Brooks Dep., Agreed Order)

26.     Brooks' fourth complaint, filed on September 19, 2016, under IDHR 17-CA-559, was based on the City's decision to promote Paul Berge (white) instead of Brooks to sergeant in March 2016. Brooks voluntarily dismissed this complaint on June 23, 2017 (Ex. A, Brooks Dep. p. 28; Ex. 11 to Brooks Dep., IDHR pleadings)

27.     Brooks filed a complaint with the EEOC and received a "right to sue" letter within 90 days of filing his complaint in this case. (Dkt. #6, Answer p. 3)

28.     Stanard & Associates is an independent company which prepared and administered the written and oral exams for the KPD promotional process in 2011 and 2014. (Ex. A, Brooks Dep. p. 65; Ex. B, Regnier Dep. pp. 54-55; Ex. E, Newcomb Dep. p. 5)3

29.     While KPD Chief Regnier encouraged Stanard to cover certain topics (e.g., drug laws), Stanard chose the questions and Regnier did not see the questions. (Ex. B, Regnier Dep. pp. 55-57; Ex. E, Newcomb Dep. p. 37)

30.     Stanard "customized" its testing for KPD, which is a common practice in its industry, did so in a manner consistent with the governing union contract, and provided training to the individuals responsible for grading the oral exams that was designed to reduce subjectivity and bias. (Ex. E, Newcomb Dep. pp. 15, 21-22, 37)

31.     Stanard, after administering the written and oral exams, took those scores, along with scores from KPD regarding merit, education, seniority, and community service points, and created the ranked lists. (Ex. B, Regnier Dep. p. 69; Ex. E, Newcomb Dep. pp. 22-24)

32.     For the 2011 and 2014 Sergeant lists, 40% of a candidate's score was based on a written test of 100 multiple choice questions. (Ex. A, Brooks Dep. pp. 53-54)

33.     For the 2011 and 2014 Sergeant's list, 30% of a candidate's score came from an oral exam. (Ex. A, Brooks Dep. p. 59)

33.     Note 4: For the 2017 list, the value of the oral exam was reduced to 20% and the written exam increased to 50%, but this change is immaterial because Brooks did not participate in the testing which led to the 2017 list.

34.      Each candidate's oral exam was graded by a panel of five, two from KPD members and three members of other police departments. (Ex. A, Brooks Dep. p. 59; Ex. E, Newcomb Dep. p. 7)

35.     For the 2011 and 2014 Sergeant's list, 15% of a candidate's score came from "Merit Points," which were based on evaluations from every supervisor at KPD. (Ex. A, Brooks Dep. p. 67 (admitting that he does not know how merit points are awarded); Ex. B, Regnier Dep. pp. 49, 65 (explaining that supervisors are sent guidelines to evaluate candidates, and then candidates are "given a numerical score based on what the supervisors give them"))

36. For the 2011 and 2014 lists, the remaining 15% of a candidate's score came from education, community service, and seniority, worth 5% each (Ex. B, Regnier Dep. pp. 65-67)

47. The top 3 candidates on the 2014 list were Berge, Halper, and Jose Martinez; Brooks ranked 9th of 16 candidates with a score of 71.5, which was over 14 points below Berge's top score of 85.25. (Ex. A, Brooks Dep. p. 85; Ex. G, 2014 list)

48. The highest-ranked African-American candidate was Steven Hunter, who placed 6th with a combined score of 76.45. (Ex. A, Brooks Dep. p. 85 (Hunter's race); Ex. G, 2014 list)

49. Brooks' written exam score declined from 77 in 2011 to 71 in 2014, and his oral exam score declined from 62.3 in 2011 to a 57 in 2014. (Ex. A, Brooks Dep. pp. 80-81; Ex. F, 2011 list; Ex. G, 2014 list)

50. The scoring panel for the 2014 oral exam consisted of two KPD members, Passwater and Kidwell, and the three outsiders: Commander Allen Roechner of Joliet Police Department (white), Chief Justin Meyer of the Minooka Police Department (white), and retired Chief Bill McHenry from Cook County Sheriff's Department (black). (Ex. A, Brooks Dep. pp. 50-51; Ex. E, Newcomb Dep. pp. 7-8).

51.     Lory Newcomb of Stanard & Associates selected the three outside panelists herself, not because those names were requested by anyone from KPD. (Ex. E, Newcomb Dep. p. 37)

53.     When rating Brooks' performance on the oral exam, Kidwell and Passwater never gave Brooks the lowest score he received; put differently, the lowest score Brooks received always came from an outside panelist. (Ex. I, Brooks' 2014 Oral Exam Score Sheets; Ex. J, Chart Summarizing Brooks' 2014 Oral Exam Scores; Ex. E, Newcomb Dep. pp. 37-38 (Passwater was rater #5 and Kidwell would have been #4)

55.     Score sheets for Brooks' 2014 oral exam show that no panelist ever gave Brooks a score on a specific question which differed by more than two points from another panelist's score on that same question. (Ex. I, Brooks 2014 Oral Exam Score Sheets)

54.     Stanard required the five panelists to tell each other how they rated a candidate, and to discuss their ratings if one rating differed from another by more than two points. After discussing, the panelists may, but need not, adjust their scores. (Ex. E, Newcomb Dep. p. 18)

56.     Brooks' scores in the subjective categories increased between 2011 and 2014. He received 12 of a possible 15 merit points (up from 10 in

2011) and 5 of a possible 5 community service points (up from 2 in 2011). (Ex. A, Brooks Dep. p. 80; Ex. G, 2014 list)

57.     Only 5 of the 16 candidates received top potential merit scores of "15" in 2014, but even if Brooks had been given a "merit" score of 15, he would not have placed in the top three. (Ex. G, 2014 list)

58.     Berge, who earned the top overall score, and the top written score, was the first person promoted off the 2014 list. (Ex. B. Regnier Dep. p. 68; Ex. G, 2014 list)

66.     Berge's first 30-day suspension was imposed for illegal steroid use in 2012 or 2013. (Ex. A, Brooks Dep. p. 90.)  Berge's steroid use became known before the 2014 list issued; Ex. B, Regnier Dep. p. 25 Berge [was] suspended in 2012 or 2013.

67.     Because of his steroid use, Berge was also subjected to 18 months of random drug testing (he passed), referred for treatment, and passed over for promotion in favor of Sneed (black) despite being ranked higher than Sneed on the 2011 list. (Ex. B, Regnier Dep. pp. 18, 61)

68.     Berge was given a second 30-day suspension in 2016 based on an incident which had occurred in April 2012. Berge left a tavern, got into his car, struck a building, and then drove home and misreported the inci-

dent as a hit-and-run by an unknown driver. (Ex. B, Regnier Dep. pp. 21, 24-25, 72)

69.     KPD command staff did not know Berge's initial report was false at the time Berge made the report. (Ex. B, Regnier Dep. pp. 32-33; Ex. D, Passwater Dep. p. 9)

71.     [a]     Berge was not fired or prosecuted for misreporting his auto accident.

71.     [e]     The Last Chance Agreement has a handwritten date of April 6, 2015 by the signatures, but this is clearly a scrivener's error and the actual date of signature is April 6, 2016. The Agreement sets Berge's suspension from April 1 to April 30, 2016, and it refers to Berge as a sergeant, which he was in 2016 but not in 2015. (*See* Ex. K, Berge Last Chance Agreement)

79.     Brooks received a written reprimand on April 25, 2016 from Regnier based on "disparaging remarks" Brooks made at multiple public forums, finding him in violation of three KPD Policies and Procedures, and ordering him to "cease any further public disparagement of the Kankakee Police Department or criticism of other public officers, including the statement of inaccurate information, in public or private." (Ex. B, Regnier Dep. p. 11; Ex. 1 to Regnier Dep., Written Reprimand (emphasis added))

### (2) Disputed Material Facts

80.    Regnier issued that reprimand because Brooks had falsely stated in multiple public forums that KPD was operating under a consent decree based on the Baptist suit, even though it was not. (Ex. B, Regnier Dep. pp. 38, 40-41; Ex. 2 to Brooks Dep., Agreed Order; *Baptist v. City of Kankakee et al*, Case No. 03-2115 (C.D. Ill., Sept. 22, 2005); see also *Baptist v. City of Kankakee* Docket Sheet, available on PACER)

Basis for Dispute: Plaintiff believed that the agreed order in *Baptist* was a consent decree. Brooks Dep. 14:11-12. This view of an "agreed order" is not uncommon. *See, e.g., U.S. v. Cook County, Illinois*, 761 F. Supp. 2d 794, 796 (N.D. Ill. 2011) (referring to "a consent decree (referred to by the parties as the 'Agreed Order').").

### (3) Disputed Immaterial Facts

70.    When the KPD command staff learned of Berge's false report, Internal Affairs was assigned to conduct an investigation. (Ex. B, Regnier Dep. p. 33)

**Basis for Dispute:** This contention is not supported by the cited material.

71.    [b]    [Berge was not fired or prosecuted for misreporting his auto accident] because years passed from the incident to its discovery.

**Basis for Dispute:** This contention is not supported by the cited material. Regnier admitted that the decision to not prosecute Berge was made by the State's Attorney; all that Regnier knows is that "they did not wish to file charges." (Regnier Dep. 17:1.)

71.   [c]   [Berge was not fired or prosecuted for misreporting his auto accident] because he waived his right to contest his 30-day suspension.

**Basis for Dispute:** Berge was not fired because "the discipline that he was given was one of the highest disciplines you can give an officer before being terminated." (Regnier Dep. 25:3-5.)

71.   [d]   [Berge was not fired or prosecuted for misreporting his auto accident] because he had to sign a "Last Chance Agreement," which made clear that further violations of KPD policy would be grounds for immediate termination. Ex. B, Regnier Dep. pp. 25, 73; Ex. D, Passwater Dep. p. 10; Ex. K, Berge Last Chance Agreement (signed in April 2016 and stating that the car accident occurred on April 14, 2012).

**Basis for Dispute:** The cited material does not support this contention.

72.   [a]   Brooks was suspended for 3 days on September 17, 2015 for violating KPD's policies regarding high-speed chases.

**Basis for Dispute:** The suspension was imposed in retaliation. (Brooks Dep. 25:21.) And was subsequently reduced to one day.  (Brooks Dep. 111:10.)

73.    In that incident, which occurred at about 6:00 pm in downtown Kankakee, Brooks accelerated his squad car to about 80 mph in downtown Kankakee while chasing a speeding motorcycle, maintained that speed for several seconds, and during the chase entered an intersection on a red light. (Ex. A, Brooks Dep. pp. 118, 120; Ex. Q, Memo from Commander Kidwell to Commander Passwater re Brooks' Pursuit Incident, Sept. 8, 2015)

**Basis for Dispute:** Plaintiff did not go through a red light. (Brooks Dep. 119:9-12.)

81.    Regnier also issued that reprimand because in these public forums, Brooks ambiguously referred to another officer's "drug use," creating the impression that KPD officers were using drugs such as heroin or cocaine, while in fact Brooks was referring to Berge, and the only drugs Brooks knew of Berge using were steroids. (Ex. A, Brooks Dep. p. 92; Ex. B, Regnier Dep. p. 44; Ex. 1 to Regnier Dep., Written Reprimand)

**Basis for Dispute:** This summary of Regnier's alleged motive is unsupported by admissible evidence. In addition to using steroids without a

prescription, Berge necessarily obtained these illicit drugs unlawfully. This is outrageous conduct for a police officer then working as a narcotics officer. The officer to blame for bringing disrepute to the KPD is Berge.

82.    Regnier also issued the reprimand because Brooks' public statements created the impression that the "drug use" was a current issue and one for which misbehaving officers suffered no consequences, while in fact Berge's conduct had been discovered years earlier and Berge was disciplined through the 30-day suspension, drug testing, and being passed over for promotion—all facts Brook omitted from his public statements. (Ex. B, Regnier Dep. p. 44; Ex. D, Passwater Dep. pp. 13-14)

**Basis for Dispute:** The discipline actually imposed on Berge for his illegal drug use was secret and not known to plaintiff. (Brooks Dep. 95:115.) And Regnier promoted Berge to sergeant in 2014. (Defendant's Uncontested Fact, ¶58.)

### (4) Undisputed Immaterial Facts

7.    Brooks has never personally heard Regnier, Kidwell, or Passwater use racial slurs, and no one else told Brooks that they overheard Regnier, Kidwell, or Passwater use racial slurs. (Ex. A, Brooks Dep. pp. 99, 101).

**Basis for Claim of Immateriality:** Plaintiff's claims do not turn on overt discrimination.

13. Between 2011 and the present day, the KPD promoted five patrolmen to sergeant, all of whom were among the top three on the relevant list, and of those five, two were African- American. (Ex. A, Brooks Dep. p. 73 (Berge (white) and Tison (white) promoted off the 2014 list), p. 74 (Hunter (black) promoted off the 2017 list), p. 76 (Martin (white) and Sneed (black) promoted off the 2011 list); see also Ex. B, Regnier Dep. pp. 58-59 (he promoted Martin and Sneed off the 2011 list), p. 60 (he promoted Berge in 2016 off the 2014 list), p. 75 (Tison promoted after Regnier retired))

**Basis for Claim of Immateriality**: "Congress never intended to give an employer license to discriminate against some employees on the basis of race or sex merely because he favorably treats other members of the employees' group." *Connecticut v. Teal*, 457 U.S. 440, 455 (1982).

14. Regnier also promoted Donnell Austin, an African-American, to lieutenant, and after that 40% of the lieutenants at KPD were African-Americans. (Ex. A, Brooks Dep. p. 37 (5 lieutenants in KPD), p. 38 (Hunt already a lieutenant when Austin promoted)) [note 2: The fact that 40% of sergeant promotions went to African-Americans, and 40% of the lieuten-

ants of KPD were African-American, is all the more striking if one accepts Brooks' testimony that only about 10% of KPD officers are African-American. (Ex. A, Brooks Dep. p. 35)

**Basis for Claim of Immateriality**: "Congress never intended to give an employer license to discriminate against some employees on the basis of race or sex merely because he favorably treats other members of the employees' group." *Connecticut v. Teal*, 457 U.S. 440, 455 (1982).

15.    Between 2011 and the present day, both times an African-American became one of the top three candidates, that African American was the next person promoted to sergeant, leapfrogging ahead of higher-ranked non-African-American candidates. (Ex. B, Regnier Dep. p. 62 (Sneed promoted when he moved up to #3); Ex. A, Brooks Dep. p. 85 (Hunter ranked third on the 2017 list, and was the first person promoted off that list))

**Basis for Claim of Immateriality**: "Congress never intended to give an employer license to discriminate against some employees on the basis of race or sex merely because he favorably treats other members of the employees' group." *Connecticut v. Teal*, 457 U.S. 440, 455 (1982).

16.    Brooks was never at any time one of the top 3 candidates, was thus never eligible to be promoted to sergeant, and was never promoted to

sergeant. (Ex. B, Regnier Dep. p. 71; Ex. F, 2011 list; Ex. G, 2014 list; Ex. H, 2017 list)

**Basis for Claim of Immateriality:** Plaintiff does not claim that he was not promoted because of the unlawful testing procedure, but asserts that the oral interview component had a disparate impact on African-American applicants.

17.    Brooks nevertheless believes that no one in the KPD who took the sergeants' test between 2011 and the present day is more qualified than himself to be a sergeant (including the two other African-Americans who scored higher and were promoted to sergeant). (Brooks Dep. p. 90 (answering "absolutely not" to question if anyone on the 2011, 2014, and 2017 lists was more qualified than himself to be a sergeant))

**Basis for Claim of Immateriality:** Brooks' beliefs are immaterial.

21.    One of the Baptist plaintiffs, Willie Hunt, was promoted to lieutenant before 2010, and is currently the Acting Chief of KPD. (Ex. A, Brooks Dep. pp. 15, 38, 55)

**Basis for Claim of Immateriality:** "Congress never intended to give an employer license to discriminate against some employees on the basis of race or sex merely because he favorably treats other members of the employees' group." *Connecticut v. Teal*, 457 U.S. 440, 455 (1982).

22. Since 2014, Brooks has filed four separate complaints against the KPD before the Illinois Department of Human Rights ("IDHR") alleging racial discrimination, and every one has been dismissed—three for lack of substantial evidence to support the allegations, and the fourth by Brooks himself. (Ex. A, Brooks Dep. p. 17)

**Basis for Claim of Immateriality:** Disposition of the previous discrimination charges has no significance in this case.

23. Brooks' first complaint, filed on March 25, 2015 under IDHR 2014-CA-2471, was based on the City's decision to promote Jeff Martin (white) instead of Brooks to sergeant in October 2013. The IDHR dismissed Brooks' complaint for lack of substantial evidence in December 2015. (Ex. A, Brooks Dep. pp. 18-19; Exs. 5-7 of Brooks Dep., IDHR Pleadings)

**Basis for Claim of Immateriality:** Disposition of the previous discrimination charges has no significance in this case

24. Brooks' second complaint, filed on March 8, 2016 under IDHR 2016-CA-1966, was based on a three-day suspension Brooks received for violating KPD's pursuit policies and alleged that similarly-situated white officers did not receive such discipline. The IDHR dismissed this complaint

for lack of substantial evidence on April 3, 2017. (Ex. A, Brooks Dep. pp. 24-25; Ex. 8 of Brooks Dep., IDHR Dismissal Order)

**Basis for Claim of Immateriality:** Disposition of the previous discrimination charges has no significance in this case

25.    Brooks' third complaint, filed on May 2, 2016 under IDHR 2016-CA-2470, was based on a written reprimand Brooks received based on his comments at a KPD Police and Fire Commission meeting. The IDHR dismissed this complaint for lack of substantial evidence on April 10, 2017. (Ex. A, Brooks Dep. pp. 26-28; Exs. 9-10 of Brooks Dep., IDHR pleadings)

**Basis for Claim of Immateriality:** Disposition of the previous discrimination charges has no significance in this case

37.    The KPD command staff encouraged study groups, but no member of the command staff taught any study group. (Ex. B, Regnier Dep. p. 56; Ex. D, Passwater Dep. p. 19)

**Basis for Claim of Immateriality:** Plaintiff does not raise any issue about study groups.

38.    The top 3 candidates from the 2011 testing were Jeff Martin, Michael Lindgren, and Paul Berge, who were all white; Brooks ranked 7th

of 17 candidates with a combined score of 70.49, over ten points behind Martin's top score of 80.92. (Ex. A, Brooks Dep. p. 73; Ex. F, 2011 list)

**Basis for Claim of Immateriality:** Plaintiff does not raise any issue about the 2011 test.

39.    Michael Sneed, who initially placed 5th, was the highest-ranked African-American candidate with a score of 73.37. (Ex. A, Brooks Dep. p. 73; Ex. F, 2011 list )

**Basis for Claim of Immateriality:** Plaintiff does not raise any issue about the 2011 test.

40.    Brooks had the second-highest written score in 2011, but his oral exam was lower than every candidate who ranked above him, including Sneed. (Ex. F, 2011 list)

**Basis for Claim of Immateriality:** Plaintiff does not raise any issue about the 2011 test.

41.    Brooks received 10 of a potential 15 merit points on the 2011 exam. Martin (white), Sneed (African-American), and four other candidates received 15. But even if Brooks had received "15" he still would not have made the top 3. (Ex. A, Brooks Dep. p. 88; Ex. F, 2011 list)

**Basis for Claim of Immateriality:** Plaintiff does not raise any issue about the 2011 test.

42.     Brooks received 2 out of a potential 5 points for community service. Some white and some black officers received more points; other white and other black officers received fewer (e.g., Martin (white) received 5, Sneed (black) received 4, Schneider and Benoit (both white) received 0, and Johnson, (black) received 0). (Ex. F, 2011 list; see also Ex. A, Brooks Dep. p. 73 (identifying race of candidates))

**Basis for Claim of Immateriality:** Plaintiff does not raise any issue about the 2011 test.

43.     Jeff Martin, who earned the highest written score and highest overall score, was the first person promoted off the 2011 list; Martin's promotion was the subject of Brooks' first unsuccessful IDHR petition. (Ex. B, Regnier Dep. p. 61; Ex. A, Brooks Dep. pp. 18-19)

**Basis for Claim of Immateriality:** Plaintiff does not raise any issue about the 2011 test.

44.     At some point between 2011 and 2014, Michael Lindgren, who placed second, died of cancer. (Ex. A, Brooks Dep. p. 77; Ex. B, Regnier Dep. p. 61)

**Basis for Claim of Immateriality:** Plaintiff does not raise any issue about the 2011 test.

45.    After these departures, the top three candidates were Paul Berge (white), Scott Halper (white), and Michael Sneed (black). (Ex. B, Regnier Dep. p. 62) Brooks was either 4th or 5th, depending on when Clay Wolfe, who initially ranked 6th, left KPD. (Ex. A, Brooks Dep. p. 87; Ex. F, 2011 list)

**Basis for Claim of Immateriality:** Plaintiff does not raise any issue about the 2011 test.

46.    Chief Regnier passed over Berge and Halper, (both white), and promoted Sneed (black), to sergeant. (Ex. A, Brooks Dep. p. 87; Ex. B, Regnier Dep. pp. 60, 62)

**Basis for Claim of Immateriality:** Plaintiff does not raise any issue about the 2011 test.

52.    For the 2014 oral exam, one of the outside panelists was the Team Leader, and was responsible for collecting the assessment materials and then turning them over to Lory Newcomb, and the materials did not leave her custody after that. (Ex. E, Newcomb Dep. pp. 23-24)

**Basis for Claim of Immateriality:** Plaintiff does not raise any issue about the collection of the assessment materials.

59.    At some point between the publication of the 2014 list and the publication of the 2017 list, Scott Halper left the KPD, so the top three

candidates were Jose Martinez, Gary Tison, and Michael Coash. Brooks ranked 7th. (Ex. A, Brooks Dep. p. 74; Ex. G, 2014 list)

**Basis for Claim of Immateriality:** Plaintiff does not raise any issue about these matters.

60.    Later in 2016 after Regnier had retired, another sergeant position opened and Tison was promoted, leaving the top three candidates Jose Martinez, Michael Coash, and Steven Hunter (black), and Brooks 6th. (Ex. A, Brooks Dep. p. 86; Ex. B, Regnier Dep. p. 75)

**Basis for Claim of Immateriality:** Plaintiff does not raise any issue about these matters.

61.    Another round of testing occurred in 2017, which led to a new list that was issued on January 9, 2018, but Brooks did not participate. (Ex. A, Brooks Dep. p. 49; Ex. H, 2017 list)

**Basis for Claim of Immateriality:** The 2017 test does not have anything to do with this case.

62.    The top three candidates on the 2017 list were Bradford Latham (white), Michael Coash (white), and Steven Hunter (black). (Ex. Brooks Dep. p. 85; Ex. H 2017 list)

**Basis for Claim of Immateriality:** The 2017 test does not have anything to do with this case.

63.     Hunter, ranked 3rd overall, was promoted at the next opening, ahead of the two non- African American candidates above him. No one at KPD has been promoted to sergeant since Hunter. (Ex. A, Brooks Dep. pp. 73-74)

**Basis for Claim of Immateriality:** The 2017 test does not have anything to do with this case.

64.     During his tenure as Chief, Regnier terminated two officers: Jeff Sais (white) for theft, a crime for which Sais was later convicted, and B.J. Moore (black) for abandoning his job. (Ex. B, Regnier Dep. pp. 27-28)

**Basis for Claim of Immateriality:** Plaintiff does not raise any issue about these matters.

65.     The only KPD officer to receive a 30-day suspension, the most severe discipline possible short of termination, during Regnier's tenure was Berge (white), who received two such suspensions. (Ex. B, Regnier Dep. pp. 25, 72)

**Basis for Claim of Immateriality:** There "is no token exception to anti-discrimination law." *Diaz v. Kraft Foods Global, Inc.*, 653 F.3d 582, 588 (7th Cir. 2011).

72.   [b]     That [KPD] policy prohibits officers from beginning such chases unless the occupants have committed a forcible felony, are try-

ing to escape with a deadly weapon, or if a supervisor gives permission. (Ex. A, Brooks Dep. p. 114; Ex. L, Notice of Suspension to Brooks, Sept. 15. 2015; Ex. Q, Memo from Commander Kidwell to Commander Passwater re Brooks' Pursuit Incident, Sept. 8, 2015)

**Basis for Claim of Immateriality:** Acts that occurred in 2015 have nothing to do with the discriminatory test or with the retaliatory letter.

74.    [a]    Brooks' pursuit, which he described after the incident as a "chase" and said "should not happen again," was never authorized by a supervisor.

**Basis for Claim of Immateriality:** The pursuit policy has nothing to do with the discriminatory test or with the retaliatory letter.

74.    [b]    [Brooks' pursuit was] not prompted by anything other than the motorcyclist's speed,

**Basis for Claim of Immateriality:** The pursuit policy has nothing to do with the discriminatory test or with the retaliatory letter.

74.    [c]    Brooks had no reason to believe the motorcyclist was committing a "forcible felony" that would have allowed Brooks to engage in a high-speed pursuit. (Ex. A, Brooks Dep. p. 121; Ex. 18 to Brooks Dep., Brooks Written Statement re Pursuit Policy, Sept. 5, 2015)

**Basis for Claim of Immateriality:** The pursuit has nothing to do with the discriminatory test or with the retaliatory letter.

75.    [a]    Despite claiming that the incident occurred because of his "confusion" over KPD's pursuit policy.

**Basis for Claim of Immateriality:** Plaintiff continues to state that the incident occurred because of confusing instructions. Brooks Dep. 110:8-11 ("But I guess the misunderstanding was that one if one sergeant tells you something and then another one comes mind, the confusion was which one do you follow.")

75.    [b]    Brooks had violated KPD policy on October 24, 2014

**Basis for Claim of Immateriality:** Whether plaintiff violated KPD policy in October of 2014 has nothing to with this case.

75.    [c]    four days after that earlier violation, had discussed the pursuit policy with a superior officer. (Ex. B, Brooks Dep. pp. 123-24; Ex. 18 to Brooks Dep., Brooks Written Statement re Pursuit Policy, Sept. 5, 2015; Ex. 19 to Brooks Dep., KPD Documents and Memo)

**Basis for Claim of Immateriality:** Plaintiff's discussion on October 28, 2014 with Lieutenant Lowman (Brooks Dep. 124:8-22) has nothing to do with this case.

76.     Brooks' suspension was upheld on appeal by the mayor of Kankakee but cut to one day in arbitration. (Ex. A, Brooks Dep. pp. 114, 120; Ex. M, Letter from Mayor Epstein Upholding Brooks' Suspension, February 22, 2016)

**Basis for Claim of Immateriality**: Disposition of the grievance has nothing to do with this case.

77.     Michael Shreffler (white) was suspended one day for violating KPD's pursuit policy on March 11, 2015. (Ex. A, Brooks Dep. p. 128; Ex. 21 to Brooks Dep., KPD Memos and Notice of Suspension to Shreffler)

**Basis for Claim of Immateriality:** There "is no token exception to anti-discrimination law." *Diaz v. Kraft Foods Global, Inc.*, 653 F.3d 582, 588 (7th Cir. 2011).

78.     Shreffler's pursuit occurred at about 3:00 am. Shreffler's pursuit was initially permitted by KPD policy because it was authorized by a supervisor, but Shreffler violated policy by not terminating the pursuit when ordered (Ex. A, Brooks Dep. pp. 130, 132 (conceding that he had no reason to disagree with those facts); Ex. 21 to Brooks Dep., KPD Memos and Notice of Suspension to Shreffler))

**Basis for Claim of Immateriality:** There "is no token exception to anti-discrimination law." *Diaz v. Kraft Foods Global, Inc.*, 653 F.3d 582, 588 (7th Cir. 2011)

83.    The only people Regnier spoke to regarding the reprimand letter were Passwater, Kidwell, and Deputy Chief Garard. They agreed the letter was appropriate. (Ex. B, Regnier Dep. pp. 11-12)

**Basis for Claim of Immateriality:** There is no good faith defense in this case.

84.    Regnier issued KPD Officer Richard Cox (white) a similar reprimand letter for publicly "disparaging" and "ridicule[ing]" the KPD on social media because Cox made false statements about the process by which some KPD officers were hired and encouraged a suit against the KPD. (Ex. D, Passwater Dep. p. 12; Ex. N, Letter from Regnier to Cox, September 12, 2012)

**Basis for Claim of Immateriality:** There "is no token exception to anti-discrimination law." *Diaz v. Kraft Foods Global, Inc.*, 653 F.3d 582, 588 (7th Cir. 2011)

85.    Regnier also transferred Cox from detective to patrol as a consequence of Cox's false and disparaging public statements, a transfer

that diminished Cox's status and ability to work independently. (Ex. N, Letter from Regnier to Cox, September 12, 2012; Ex. P, Regnier Affidavit)

**Basis for Claim of Immateriality:** There "is no token exception to anti-discrimination law." *Diaz v. Kraft Foods Global, Inc.*, 653 F.3d 582, 588 (7th Cir. 2011)

86.   Regnier also issued Patrolman Michael Shreffler (white) a written reprimand for public comments that "adversely affect the public perception" of KPD, based on Shreffler's Facebook postings regarding the 2016 Super Bowl halftime show. Regnier's reprimand to Shreffler contained the same "further violations will trigger progressive discipline up to and including termination" language that the letter to Brooks contained. (Ex. O, Letter from Regnier to Shreffler, February 10, 2016; Ex. P, Regnier Affidavit)

**Basis for Claim of Immateriality:** There "is no token exception to anti-discrimination law." *Diaz v. Kraft Foods Global, Inc.*, 653 F.3d 582, 588 (7th Cir. 2011)

### (5) Additional Material Facts

A1.   Of the 15 police officers who completed all portions of the 2014 promotional test, ten were white, three were Hispanic, and two were African Americans. (Brooks Declaration, December 12, 2018, ¶2, Exhibit 1.)

### III.    Argument

#### 1.  Denial of Equal Employment Opportunities in Promotion to Sergeant

Title VII prohibits "procedures or testing mechanisms that operate as 'built-in headwinds' for minority groups." *Connecticut v. Teal*, 457 U.S. 440, 448–49 (1982), quoting *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971). Plaintiff in this case challenges the oral interview, one of the procedures used by the City of Kankakee in making promotions to sergeant.

#### i.    The Oral Interview

Fifteen police officers completed all portions of the 2014 promotional exam (the focus of plaintiff's EEOC charge, ECF No. 16-09 at 1): ten white, three Hispanic, and two African Americans. (Brooks Declaration, December 12, 2018, ¶2, Exhibit 1.)

The Chief would fill a vacancy by selecting from among those with the three highest scores. (Defendant's Undisputed Facts, ¶ 11.) The oral interview made up 30% of an applicant's final score. (Defendant's Undisputed Facts, ¶ 33.)

The two highest scores on the oral interview went to Paul Berge (79.5) and Scott Halper (78.83). Both are White. (Plaintiffs' Exhibit 2, infra; Regnier Dep. 16:7-8 (Berge), 19:24-25 (Halper).)

The two African-American officers who took the test (plaintiff and Steven Hunter) scored much lower on the oral component: Hunter re-

ceived 69.50 and plaintiff received a score of 57. (Brooks Declaration, December 12, 2018, ¶2, Exhibit 1.)  More than half of the officers who took the test (8 of 15) scored higher than Hunter; 11 of the 15 scored higher than plaintiff. *Id.* Plaintiff would have ranked in the top three on the test had he received the same score as Berge.[1]

The oral interview thus acted as "'built-in headwinds' for minority groups," *Griggs v. Duke Power Co.*, 401 U.S. 424, 432 (1971), requiring defendant to present evidence that the oral interview is "related to job performance," *Bew v. City of Chicago*, 252 F.3d 891, 894 (7th Cir. 2001).

Defendant has not offered any evidence to explain this disparate impact. Defendant offers information about the identity of the persons who made up the oral interview panel (Agreed Material Fact, ¶ 50) and about the identity of the person who selected three of the five panelists. (Agreed Material Fact, ¶ 51.) Defendant does not provide any information about how the two remaining panelists (Robin Passwater and Chris Kidwell, two members of the Kankakee Police Department command staff, Regnier Dep. 11:25-12:6), were selected.

---

[1] The oral examination was 30% of the total. Thus, if plaintiff's score had been 79.50, rather than 57), his final score would have increased by .3 * 22.5, or 6.75 points, resulting in a final score of 78.25.

Rather than present any information about how the oral interview was scored, defendant reveals the mechanism by which Kidwell and Passwater could manipulate an applicant's final score: rather than judge each applicant individually, the five panelists would reveal "how they rated a candidate, and to discuss their ratings if one rating differed from another by more than two points." (Agreed Material Fact, ¶ 54.)

 Former Chief Regnier sought to hide the fact that two members of his command staff were on each oral interview panel. When asked at his deposition whether those two officers would sit on the same panel, Regnier was adamant that the two never sat together, claiming "They were on separate panels." (Regnier Dep. 73:21-22.) This is untrue: Kidwell and Passwater sat together on each oral interview panel. (Passwater Dep. 7:20-25; Kidwell Dep. 6:12-14.)

One inference from Regnier's false testimony is that he was trying to hide the fact that two members of his command staff sat on the oral interview and therefore could act together to influence the other panelists to give higher scores to the white applicants and lower scores to the African-American applicants. Another inference, which defendant is likely to advance, is that Regnier was simply mistaken. But "the choice between treating it as an honest mistake or a deliberate falsehood is ordinarily a

choice for a jury at trial, not for summary judgment." *Lane v. Riverview Hospital*, 835 F.3d 691, 697 (7th Cir. 2016). And the Court must resolve all inferences in favor of plaintiff in ruling on defendant's motion for summary judgment. *Simpkins v. DuPage Housing Authority*, 893 F.3d 962, 967 (7th Cir. 2018).

Rather than attempt to justify the disparate impact of its oral examination, defendant pins its summary judgment motion on a bottom line defense, arguing that it could not have discriminated against plaintiff because "White officers were similarly disciplined for similar behavior." (ECF No. 16 at 26.)

The Court should reject this argument: "Congress never intended to give an employer license to discriminate against some employees on the basis of race or sex merely because he favorably treats other members of the employees' group." *Connecticut v. Teal*, 457 U.S. 440, 455 (1982). *See, e.g.*, *Whitfield v. International Truck & Engine Corp.*, 755 F.3d 438, 444 (7th Cir. 2014) ("[A] singular instance of [the defendant] hiring a black electrician ... does not entitle [the defendant] to immunity from subsequent discrimination allegations."); *Diaz v. Kraft Foods Global, Inc.*, 653 F.3d 582, 587–88 (7th Cir. 2011) (rejecting argument that "the evidence did not support an inference of discrimination because at least one Hispanic em-

ployee was not discriminated against in the same way" as plaintiff alleged).

Thus, there "is no token exception to anti-discrimination law." *Id.* at 588.

The Court should therefore deny defendant's motion for summary judg-

ment on plaintiff's promotion claim.

### 2. Retaliation

Title VII provides a remedy for "employer retaliation on account of

an employee's having opposed, complained of, or sought remedies for, un-

lawful workplace discrimination." *University of Texas Southwestern Medi-*

*cal Center v. Nassar*, 570 U.S. 338, 342 (2013). 42 USC §2000e-3(a) provides

as follows:

> It shall be an unlawful employment practice for an employer
> to discriminate against any of his employees or applicants for
> employment, for an employment agency, or joint labor-
> management committee controlling apprenticeship or other
> training or retraining, including on-the-job training programs,
> to discriminate against any individual, or for a labor organiza-
> tion to discriminate against any member thereof or applicant
> for membership, because he has opposed any practice made an
> unlawful employment practice by this subchapter, or because
> he has made a charge, testified, assisted, or participated in
> any manner in an investigation, proceeding, or hearing under
> this subchapter.

On April 25, 2016, then Police Chief Regnier informed plaintiff, in

writing, that he risked "discipline up to and including termination of your

appointment with the Kankakee Police Department." (ECF No. 1 at 7,

Letter Regnier to Brooks.) Regnier's letter makes plain that the reason

the Police Chief made this disciplinary warning was that plaintiff had op-
posed race discrimination by the Kankakee Police Department.

Regnier described a meeting before the Police and Fire Commission
at which plaintiff had "made remarks about incidents you felt were not in
accordance with what you believe to be proper policy and procedure and
more specifically your belief that proper discipline has not occurred in giv-
en situations." (ECF No. 1 at 6, Letter Regnier to Brooks.) Regnier ex-
plained at his deposition that these "remarks" referred to the generous
treatment Regnier had afforded to Paul Berge, a white police officer, who
had been caught using illegal drugs (steroids) and who had also lied in a po-
lice report about a one-car accident he had caused after leaving a tavern.
(Regnier Dep. 15:4-18:6, 21:3-24:6.) Regnier had also promoted Berge to
Sergeant. (Regnier Dep. 15:23-16:6.)

In his disciplinary warning letter to plaintiff, Regnier also described
statements plaintiff had made "at a hearing at the EEOC in Chicago in
2014." (ECF No. 1 at 5.) Regnier asserted that plaintiff had made "factual-
ly false" statements at that hearing and violated police department rules.
(ECF No. 1 at 6.)

Defendant does not disavow Regnier's letter, but argues that the
Chief of Police acted lawfully because plaintiff was "making false and dis-

paraging public statements about KPD." (ECF No. 16 at 25.) Title VII, however, does not include such an affirmative defense.

The Chief's letter to plaintiff easily meets the standard for retaliation articulated by the Seventh Circuit in *Washington v. Ill. Dep't of Revenue*, 420 F.3d 658, 662 (7th Cir. 2005) and approved by the Supreme Court in *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006): whether "a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" (citations omitted). A "reasonable employee" would have been dissuaded from complaining about discrimination when the Chief has issued a disciplinary warning up to discharge for making a charge of discrimination that the Chief deems to be "factually false."

The Court should therefore deny defendant's motion summary judgment.

## IV.   CONCLUSION

The Court should deny defendant's motion for summary judgment.

Respectfully submitted,

/s/  <u>Kenneth N. Flaxman</u>
Kenneth N. Flaxman
ARDC 830399
200 S Michigan Ave, Ste 201
Chicago, Illinois 60604
(312) 427-3200
*an attorney for plaintiff*

**Exhibit 1**

## DECLARATION OF RICHARD BROOKS

The undersigned, under penalties of perjury, certifies that the following statements are true:

1.      My name is Richard Brooks. I am the plaintiff in *Brooks v. City of Kankakee,* 17-cv-2265.

2.      I have firsthand knowledge that the table  below accurately reports the race of the persons who completed all portions of the 2014 test for promotion to the position of Sergeant in the Kankakee police department:

| Name | Race |
|---|---|
| CHRIS BENOIT | White |
| PAUL BERGE | White |
| RICHARD BROOKS | African-American |
| MICHAEL COASH | White |
| JOSEPH ENGLISH | White |
| AURELIO GARCIA | Hispanic |
| SCOTT HALPER | White |
| STEVEN HUNTER | African-American |
| ZACHARY JOHNSTON | White |
| BRADFORD LATHAM | White |
| JOSE MARTINEZ | Hispanic |
| JOSEPH MARTINEZ | Hispanic |
| DONALD MCCARTY | White |
| JOSHUA SCHNEIDER | White |
| GARY TISON | White |

Dated: December 12, 2018

_____
Richard Brooks

Plaintiffs' Exhibit 1

**Exhibit 2**

## Scores on Oral Interview and Race

| Name | | Oral Score | Race |
|---|---|---|---|
| PAUL | BERGE | 79.50 | White |
| SCOTT | HALPER | 78.83 | White |
| CHRIS | BENOIT | 71.33 | White |
| JOSEPH | MARTINEZ | 71.33 | Hispanic |
| MICHAEL | COASH | 69.33 | White |
| JOSE | MARTINEZ | 68.50 | Hispanic |
| JOSHUA | SCHNEIDER | 66.17 | White |
| GARY | TISON | 65.83 | White |
| STEVEN | HUNTER | 65.50 | African-American |
| ZACHARY | JOHNSTON | 64.17 | White |
| BRADFORD | LATHAM | 61.00 | White |
| RICHARD | BROOKS | 57.00 | African-American |
| DONALD | MCCARTY | 55.83 | White |
| JOSEPH | ENGLISH | 53.00 | White |
| AURELIO | GARCIA | 41.33 | Hispanic |

# CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of December, 2018 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following: Michael W. Condon and G. David Mathues, all at HERVAS, CONDON & BERSANI, P.C., 333 W. Pierce Road, Suite 195, Itasca, IL 60143-3156  and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants: none.

/s/  Kenneth N. Flaxman
Kenneth N. Flaxman
ARDC 830399
200 S Michigan Ave, Ste 201
Chicago, Illinois 60604
(312) 427-3200
*an attorney for plaintiff*