IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| RICHARD BROOKS, | ) |
| Plaintiff, | ) Case No. 17-cv-2265 |
| | ) |
| v. | ) Judge Colin Stirling Bruce |
| | ) |
| CITY OF KANKAKEE, ILLINOIS, | ) Magistrate Judge Eric I. Long |
| | ) |
| Defendant. | ) Jury Demand |

## DEFENDANT'S MOTIONS IN LIMINE

NOW COMES Defendant, CITY OF KANKAKEE, ILLINOIS, by and through its attorneys, MICHAEL W. CONDON and G. DAVID MATHUES of HERVAS, CONDON & BERSANI, P.C., and submits the following Motions in Limine.

## STANDARD FOR REVIEW

A motion in limine is a request for a pre-trial ruling on the admissibility of evidence. *Luce v. United States*, 469 U.S. 38, 40 (1984). District courts have the authority to rule on motions in limine pursuant to their inherent authority to manage trials, even though the Federal Rules of Evidence does not explicitly mention such motions. *Id.* at 41 n.4. District judges have broad discretion in ruling on motions in limine. *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). In this case, the Court ordered motions in limine to be filed by March 18, 2019. (Dkt. # 21, Order, Feb. 19, 2019)

## DEFENDANT'S MOTION IN LIMINE NO. 1

### MOTION TO ADMIT BROOKS' FOUR UNSUCCESSFUL CLAIMS FOR RACE DISCRIMINATION BEFORE THE ILLINOIS DEPARTMENT OF HUMAN RIGHTS

It is undisputed that Plaintiff Richard Brooks filed four complaints before the Illinois Department of Human Rights (IDHR) against the Defendant City of Kankakee, alleging racial discrimination. His claims in those complaints were substantially the same as in this suit—that the

City discriminated against him by not promoting him to sergeant and retaliated against him by imposing certain employee discipline. It is equally undisputed that the IDHR investigated and found "no substantial evidence" of discrimination on Brooks' first three complaints, and Brooks voluntarily dismissed the fourth. (*Cf.* Dkt. # 16, Defs. MSJ, pp. 5-6 (listing undisputed material facts ## 22-26) *with* Dkt. # 19, Brooks' Resp. re MSJ, pp. 18-19) (contesting materiality, but not disputing those facts))

The Seventh Circuit has held that "[a]s a general proposition, administrative findings regarding claims of discrimination may be admitted under Rule 803(8)(C). The text of Rule 803(8)(C) provides that such findings are admissible 'unless the sources of information or other circumstances indicate lack of trustworthiness'" *Young v. James Green Mgmt., Inc.*, 327 F.3d 616, 624 (7th Cir. 2003) (quoting Fed. R. Evid. 803(8)(C); other citations omitted)). The IDHR is a state administrative body, so its finding regarding Brooks' unsuccessful charges of discrimination should be admitted under Fed. R. Evid. 803(8)(C). The record shows no reason why those findings would not be trustworthy. Brooks even admitted that the IDHR reopened one of the cases at his request and investigated further before against dismissing his complaint. (Dkt. # 16-1, Defs. MSJ Ex. A, Brooks Dep. p. 5 (Tr. pages 21-22))

Trial courts have "significant discretion" to decide whether the IDHR findings are admissible. *Young*, 327 F.3d at 624. Other courts have admitted such administrative reports. *See, e.g., LaDolce v. Bank Admin. Inst.*, 585 F. Supp. 975, 977 (N.D. Ill. 1984). This Court should do the same, particularly in light of Brooks' allegations of retaliation. In sum, Brooks is claiming that employee discipline imposed on him was retaliation for making complaints to the IDHR and not for his violations of employer policy (e.g., the high speed pursuit policy) or making false statements about Kankakee Police Department in public (that KPD was subject to a consent decree, which is not true). So, the jury will *already* know that IDHR complaints were filed. Fairness requires the jury to

hear how those complaints were resolved. Otherwise, the jury will speculate (perhaps spurred on by clever innuendo from Brooks) that the City is motivated by revenge because Brooks beat the City before the IDHR. The IDHR findings should be admitted to cut off that wrong inference. Relatedly, Brooks' success (or lack thereof) matters because it is a sensible inference that retaliation is less likely against a person who has made unsuccessful complaints than against a person who made successful complaints. In short, success would give the employer increased motivation for revenge. The reverse inference applies here. So, the IDHR's administrative findings should be admitted. At a minimum, *testimony* about Brooks' rejected IDHR complaints should be admitted.

WHEREFORE, Defendant requests that this Court grant its First Motion in Limine and admit evidence of Brooks' four unsuccessful race discrimination claims before the Illinois Department of Human Rights.

### DEFENDANT'S MOTION IN LIMINE NO. 2

### MOTION TO EXCLUDE HEARSAY STATEMENTS FROM BROOKS' FORMER ATTORNEY

Brooks and four other African-American police officers sued the City in 2003. A jury rejected some of those claims. The remaining claims were settled. (Dkt. # 16, Defs. MSJ, p. 5) Brooks and his fellow plaintiffs had a falling-out with their attorney in that case over that settlement. That dispute went to the Seventh Circuit, which ruled against Brooks. *See Baptist v. City of Kankakee,* 481 F.3d 485, 488 (7th Cir. 2007), as amended (Mar. 26, 2007). Brooks' claims about what this former attorney supposedly told him about the terms of that settlement are impermissible hearsay.

Brooks testified that his former attorney told him that the settlement included certain terms—terms squarely contrary to the actual settlement, which was publicly available. (*See* Dkt. # 16-2, pp. 7-9 (Ex. 2 to Brooks Dep., settlement agreement in Case # 03-2115 (C.D. Ill)) Specifically, Brooks claims that his former attorney told him that the settlement barred any City employee from taking part in the promotional testing process. Brooks also claimed that his former attorney told him

that the mayor of Kankakee could bypass the merit promotional system and appoint whomever to be a sergeant. (Dkt. # 16-1, Defs. MSJ Ex. A, Brooks Dep. pp. 3-4, 12 (Tr. pages 8-9, 44-45)) Those alleged statements are hearsay and should be excluded under Fed. R. Evid. 802.

WHEREFORE, Defendant requests that this Court grant his Second Motion in Limine and exclude hearsay statements from Brooks' former attorney.

### DEFENDANT'S MOTION IN LIMINE NO. 3

### MOTION TO BAR UNSUPPORTED HEARSAY TESTIMONY THAT FORMER KANKAKEE POLICE CHIEF LARRY REGNIER HAS A NAZI TATTOO

Brooks claimed that another police officer, Billy Moore, told Brooks that former KPD Police Chief Larry Regnier had a swastika tattoo. (Dkt. # 16-1, Defs. MSJ Ex. A, Brooks Dep. p. 26 (Tr. pp. 99-100)) Brooks never saw this purported tattoo himself. (*Id.*) Regnier will be a primary witness for the defense in this case because Regnier was the Chief of Police during most of the time on which this lawsuit is based, and because Regnier decided which of the top three scoring candidates would be promoted to sergeant (as the City's pending motion for summary judgment stresses, Brooks never made that top three).

As a threshold matter, because Brooks did not see the purported tattoo, and is basing his testimony on hearsay, Brooks should not be permitted to testify that the tattoo exists. Such testimony would not be "rationally based on the witnesses' own perceptions." Fed. R. Evid. 701. But more to the point, such testimony should be barred under Rule 403. The risk of unfair prejudice would grossly outweigh any probative value. Indeed, because the swastika is one of the most odious images in the entire world, the prejudice would be incurable. Nor could Chief Regnier credibly

4

answer the unfounded accusation of having such a tattoo save by literally stripping naked in from of the jury. Trials should not turn on such flimsy second-hand slander.[1]

WHEREFORE, Defendant requests that this Court grant its Third Motion in Limine and exclude any hearsay testimony that former Kankakee Police Chief Larry Regnier has a Nazi tattoo.

### DEFENDANT'S MOTION IN LIMINE NO. 4

### MOTION TO BAR TESTIMONY THAT KPD LT. ROBIN PASSWATER POSTED A "RACIALLY INSENSITIVE" CARTOON

Brooks also claimed at his deposition that former KPD officer Joe Baptist told Brooks that KPD Lt. Robin Passwater posted a "racially insensitive" cartoon. (Dkt. # 16-1, Defs. MSJ Ex. A, Brooks Dep. p. 27 (Tr. pp. 101-02)) "Racially insensitive" is a very broad, subjective label, and Brooks could not describe anything about the cartoon; he claimed that he "did not have a memory" of what that cartoon was, and could not even be sure if he saw it himself. (*Id.*) Brooks further admitted that Mr. Baptist retired some 6 or 7 years before, (*id.*), which means that if this alleged incident happened, it occurred, at the earliest, in 2012 or 2011. The time gap, the lack of detail, and Brooks' own lack of personal knowledge justify excluding references to this cartoon under Rule 403.

The secondhand accusation should also be excluded because it is at most a "stray workplace comment" unrelated to the actual employment decisions at issue. *Schreiner v. Caterpillar*, Inc., 250 F.3d 1096, 1099–100 (7th Cir. 2001) (upholding exclusion of such evidence because such comments are relevant only when "related to the adverse decision"). It is years removed from the actual employment decisions Brooks is challenging. It is the only direct evidence of racial bias Brooks testified to about Passwater. And, in order to be admissible, derogatory comments must be

---

[1] If Brooks truly believes in good faith that Chief Regnier has a Nazi tattoo, the issue should be raised and resolved *in camera*, and there must be physical evidence that such a tattoo exists (or existed), before the matter is brought up in front of the jury. The City contends that as a Nazi symbol, the swastika is so loathsome (and rightly so) that its mere mention, without physical evidence, is grounds for immediate mistrial.

"attributable to the person who made the adverse employment decision."[2] *Id.* That person is not Passwater. At most, Passwater was one of five panelists who judged the oral portion of Brooks' promotional exam, a portion which accounted for only 30% of a candidate's overall score. (Dkt. # 19, Brooks' Resp. re MSJ, pp. 6, 8 (admitting undisputed material facts)) And on top of that, Passwater *never* gave Brooks the lowest mark he received among the panelists. (*Id.*) So, Brooks cannot say that Passwater "made the adverse employment decision."

WHEREFORE, Defendant requests that this Court grant its Fourth Motion in Limine and exclude any testimony that KPD Lt. Robin Passwater posted a "racially insensitive" cartoon.

### DEFENDANT'S MOTION IN LIMINE NO. 5

**MOTION TO BAR TESTIMONY THAT
KPD OFFICER MICHAEL SUPRENANT ALLEGEDLY EXPERIENCED
"DISCRIMINATION" FOR BEING FRIENDS WITH BLACK OFFICERS**

Brooks also claimed at his deposition that KPD officer Michael Suprenant, who is white, told Brooks that Suprenant experienced "racial discrimination" because he was friends with black officers. (Dkt. # 16-1, Defs. MSJ Ex. A, Brooks Dep. p. 35 (Tr. pp. 135-36)) Brooks could not provide any details about the conversation, other than that it occurred around 2014. (*Id.*) Suprenant's statement is hearsay. Perhaps it is admissible under Rule 801(d)(2) (statements of party-opponent). But even if it is, or even if Brooks calls Suprenant to the stand, the statement is not admissible under Rule 403. This vague, unsupported, and stale claim would do nothing more than confuse the jury and imply that racial discrimination is common in the KPD, so it must have happened to Brooks. It would also bog down the trial by creating a sideshow about what happened to Suprenant, and why. For this reason, courts in this circuit routinely exclude such tagalong allegations by non-parties. *See, e.g.*, *Reeves v. Fed. Reserve Bank of Chicago*, 2004 WL 742248, at *6 (N.D. Ill. Apr. 6, 2004); *Tzoumis v.*

---

[2] The rule is different for "hostile work environment" claims, but Brooks did not plead such a claim.

*Tempel Steel Co.*, 168 F. Supp. 2d 871, 875 (N.D. Ill. 2001). So too here should this Honorable Court exclude such testimony.

WHEREFORE, Defendant requests that this Court grant its Fifth Motion in Limine and exclude any testimony that KPD Officer Michael Suprenant allegedly experienced discrimination for being friends with black officers.

### DEFENDANT'S MOTION IN LIMINE NO. 6

### MOTION TO ADMIT TESTIMONY OF LORI NEWCOMB, RULE 30(B)(6) WITNESS FOR STANARD & ASSOCIATES

The firm of Stanard & Associates handled the promotion testing for the 2011 and 2014 KPD sergeants' exam. Brooks' counsel deposed her regarding various policies and procedures, and the specific events of the 2014 exam, which she oversaw. She also produced several hundred pages of documents. Despite this, neither side updated their Rule 26 disclosures accordingly.

While parties generally may not use evidence at trial if that evidence was not disclosed in discovery, the Federal Rules make an exception if the nondisclosure was "substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). District courts have discretion on this point. *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).

Here, the Court should permit Newcomb's testimony and documents because any failure to "disclose" her as a witness is purely technical and entirely harmless. After all, it is *Brooks* who elected to take her deposition and subpoena her documents. He cannot now turn around and claim "surprise" or "prejudice" about the fruits of his own discovery. *Cf. David*, 324 F.3d at 851(identifying "prejudice" and "surprise" as key factors in deciding whether to admit "undisclosed" evidence). Nor can there be any credible claim or "willfulness" or "bad faith" when, again, Brooks subpoenaed and deposed this witness. *Cf. id.* (identifying "willfulness" and "bad faith" as additional key factors in deciding whether to admit "undisclosed" evidence). It appears that both sides simply forgot to update their Rule 26(a) disclosures in the hurry of other matters, perhaps because her deposition was

7

taken at the very end of discovery. That is the kind of technical oversight for which the "harmlessness" exception in Rule 37 exists.

WHEREFORE, Defendant requests that this Court grant its Sixth Motion in Limine and admit the testimony of Lori Newcomb, Stanard & Associates Rule 30(b)(6) witness.

### DEFENDANT'S MOTION IN LIMINE NO. 7

### MOTION TO BAR TESTIMONY OR ARGUMENT REGARDING SETTLEMENT, INSURANCE, OR THE DEFENDANT'S FINANCIAL CONDITION

None of these three subjects—settlement, insurance, or financial status—are relevant to any issue the jury will decide. Their mention serves only to nudge the jury towards awarding money for some improper reason. That is why these three topics are regularly barred from trials.

*First*, the Federal Rules of Evidence specifically exclude evidence of settlement negotiations (absent rare exceptions not present in this case). Fed. R. Evid. 408. *Second*, the Rules also specifically exclude evidence of liability insurance to show evidence of fault. Fed. R. Evid. 411. The recognized exceptions for admitting evidence of insurance, such as to show ownership, do not apply. *See id.* And even if Brooks could identify some theoretical relevance of insurance, reference to insurance should still be excluded under Rule 403 as unfairly prejudicial. *Third*, evidence of the respective wealth of the parties, like that of insurance, simply appeals to bias and encourages a jury to award more money because nameless, faceless "deep pockets" will pay any bill. That kind of appeal is flatly forbidden: "Courts have held that appealing to the sympathy of jurors through references to the relative wealth of the defendants in contrast to the relative poverty of the plaintiffs is improper and may be cause for reversal." *Adams Labs., Inc. v. Jacobs Eng'g Co.*, 761 F.2d 1218, 1226 (7th Cir. 1985); *see also Crecy v. Kankakee Sch. Dist. #111*, No. 2017 WL 6945336, at *1 (C.D. Ill. Feb. 6, 2017) (Bruce, J.) (excluding such statements). Any reference or innuendo on these three topics should be excluded.

8

WHEREFORE, Defendant requests that this Court grant its Seventh Motion in Limine and exclude all argument, evidence, innuendo, questions, or testimony regarding settlement, insurance, or the Defendant's financial condition.[3]

## DEFENDANT'S MOTION IN LIMINE NO. 8

### MOTION TO EXCLUDE NON-PARTY WITNESSES DURING OPENING STATEMENTS AND TESTIMONY PROVIDED BY ANY OTHER WITNESS

Defendant moves to exclude the presence of any non-party witnesses from the courtroom until the witness' own testimony has been offered in full (including rebuttal). This ruling will avoid the appearance, and prevent the reality, of witnesses adjusting their testimony based on other testimony. Such motions are routinely granted. *See, e.g.*, *Crecy*, 2017 WL 6945336, at *2 (Bruce, J.).

WHEREFORE, Defendant requests that this Court grant its Eighth Motion in Limine and prohibit all witnesses other than parties from being present in the courtroom until their testimony has been offered in full.

## DEFENDANT'S MOTION IN LIMINE NO. 9

### MOTION TO BAR "GOLDEN RULE" APPEAL

A "golden rule" argument is any variation on the theme in which "the jury is asked to put itself in the plaintiff's position [and] is universally recognized as improper because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." *United States v. Teslim*, 869 F.2d 316, 327 (7th Cir. 1989) (internal citations omitted); *Crecy*, 2017 WL 6945336, at *3 (Bruce, J.) (barring any form of a "golden rule" argument). Common examples of such an appeal include asking how much an injury would be worth to them, or directly telling the jury to do for the plaintiff what they would want done to them, or employing

---

[3] In fairness, there is another side to this coin. Municipalities cannot argue to juries that siding with a Plaintiff will require the municipality to raise taxes to pay the judgment. *Thomas v. Sheahan*, 514 F. Supp. 2d 1083, 1088 (N.D. Ill. 2007). Defendant will not be making any such argument.

"reverse psychology" by expressly disclaiming any claim of asking the jury to put itself in the plaintiff's position. *Thomas v. Ritz*, 2018 WL 1784473, at *4 (S.D. Ill. Apr. 13, 2018). These and all other appeals to a "golden rule" should be prohibited.

WHEREFORE, Defendant requests that this Court grant its Ninth Motion in Limine and bar all argument, evidence, innuendo, questions, or testimony of any "Golden Rule" appeal.

### DEFENDANT'S MOTION IN LIMINE NO. 10

### MOTION TO BAR IMPROPER MEDICAL TESTIMONY BY LAY WITNESSES AND ANY UNDISCLOSED EMOTIONAL DAMAGES TESTIMONY

Plaintiff Richard Brooks testified in his deposition that he is seeking damages for emotional distress. (Dkt. # 16-1, Defs. MSJ Ex. A, Brooks Dep. p. 38 (Tr. pages 146-47)) Brooks described that "distress" as feeling "hopelessness, helplessness, and anger." (*Id.*) More importantly, Brooks admitted he had not been diagnosed with any mental health condition attributable to the alleged discrimination, and had not even sought any professional mental health assistance. (*Id.*) Indeed, the only change in his daily living he could attribute to the negative feelings he allegedly suffered was working out more. (*Id.*) Although Brooks' testimony about his emotional injuries is permissible to a point, the Federal Rules of Evidence and the Seventh Circuit limit lay witness testimony on medical matters and causation of medical conditions. This Court should enforce those limits.

A lay witness's testimony must be limited to "those opinions or inferences which are rationally based on [her] perception" and do not require "scientific, technical, or other specialized knowledge." Fed. R. Evid. 701. Defendant acknowledges that Plaintiff may testify about the "pain and suffering that [s]he experienced during and after" the alleged discrimination. *Smith v. Nurse*, 2016 WL 4539698, at *1 (N.D. Ill., Aug. 31, 2016).

But although Brooks may testify about his feelings, he may not provide a medical diagnosis of his injuries, particularly since he did not seek any professional assistance. The law is clear: "[p]laintiffs, as lay persons, may not testify as to any diagnosis or condition." *Cooper v. Dailey,* 2012

WL 1748150, at *7 (N.D. Ill. May 16, 2012). "Depression" and "anxiety" are mental disorders, listed in the DSM-5, the symptoms and causes of such disorders are complex, and the science of diagnosing mental disorders is ever evolving. *See*, DSM-V, Intro., p. 5. Clinical training and experience are necessary to make such a diagnosis and determine the cause of the disorder. *See, e.g., United States v. Cravens*, 275 F.3d 637, 640 (7th Cir. 2001) ("Although a lay person may readily observe a [health] problem, the causation of a mental disease or defect is a more technical medical determination such that a court would find expert testimony particularly useful to its ultimate decision" (emphasis in original)); *Jones v. City of Lincoln, Illinois*, 2016 WL 9774505, at *2 (C.D. Ill. Jan. 25, 2016) (Bruce, J) (plaintiff may testify about how he felt, but "may not offer opinions or conclusions that would entail expert medical testimony.").

So, Brooks should not be able claim that he "suffered depression" *because of* the alleged discrimination, because that is a professional diagnosis, which he did not seek (let alone receive). And, if Brooks has sought or received any professional mental health services since the date of his deposition, he should be barred from introducing such evidence at trial because he never supplemented his disclosures.

WHEREFORE, Defendant requests that this Court grant its Tenth Motion in Limine and bar all argument, evidence, innuendo, questions, or testimony from lay witnesses, including Plaintiff, as to any medical diagnosis or medical causation.

### DEFENDANT'S MOTION IN LIMINE NO. 11

**MOTION TO BAR EVIDENCE, ARGUMENT, OR INNUENDO OF ANY UNRELATED INCIDENT OF RACIAL DISCRIMINATION OR GENERALIZED APPEAL TO REPARATIONS FOR PAST RACIAL INJUSTICES IN SOCIETY**

Put bluntly, this nation's history of unsavory racial discrimination, and the explosion in recent, high-profile, and polarizing racial incidents are well-known and indisputable. This case will be tried only a two-hour drive from Chicago, site of many such events. Politicians, journalists,

philosophers, and citizens continue to debate these matters daily. Whatever the value of such discussions for our national polity, *they have absolutely no place in this trial.*

This case is solely about why Richard Brooks was not promoted to police sergeant and why he received a written reprimand and a couple of short suspensions. Brooks did not even plead a *Monell* "policy and practice" claim or a hostile work environment claim, which further narrows the scope of relevant evidence. Thus, any reference or appeal to discrimination experienced by any racial minorities, whether current or past, whether in Kankakee or nationwide, should be excluded under Rule 403. To be sure, members of the jury will have heard about, and may have opinions on, incidents such as the shooting of Laquan McDonald, or the arrest of Jussie Smollett for allegedly faking his victimization of a racially-motivated hate crime, or certain presidential hopefuls claiming a need for reparations, or nationally-reported lawsuits filed by UPS workers over racially hostile conditions. But jurors are instructed to be impartial and put preconceived feelings about race and color aside. (Seventh Cir. Pattern Jury Instr. 1.01 "Functions of the Court and Jury," available at http://www.ca7.uscourts.gov/pattern-jury-instructions/7th_cir_civil_instructions.pdf) Any evidence, testimony, or innuendo of other, unrelated incident of racial discrimination undermines the very first instruction a jury receives and should be barred.

Similarly, Brooks' counsel should not be allowed to imply to the jury that racial discrimination is common, so it must have happened to Brooks, or that Brooks should prevail and receive money as some general reparations for past discrimination against African Americans. Arguments and appeals of that nature are not permitted in other types of civil rights cases, and they should not be permitted in this case. *See, e.g.*, *Jones*, 2016 WL 9774505, at *2 (Bruce, J) (barring evidence of other publicized incidents of police abuses in a case alleging Fourth Amendment violations against police officers).

12

WHEREFORE, Defendant requests that this Court grant its Eleventh Motion in Limine and bar all argument, evidence, innuendo, questions, or testimony about unrelated incidents of racial discrimination or any generalized appeal to reparations for past racial injustice in society.

    Respectfully submitted,

/s/ **G. David Mathues**
MICHAEL W. CONDON, ARDC No. 06192071
G. DAVID MATHUES, ARDC No. 06293314
*Attorneys for Defendant*
HERVAS, CONDON & BERSANI, P.C.
333 Pierce Road, Suite 195
Itasca, IL 60143-3156
P: 630-773-4774   F: 630-773-4851
mcondon@hcbattorneys.com
dmathues@hcbattorneys.com

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| RICHARD BROOKS, ) | |
| ) | Case No. 17-cv-2265 |
| Plaintiff, ) | |
| ) | Judge Colin Stirling Bruce |
| v. ) | |
| ) | Magistrate Judge Eric I. Long |
| CITY OF KANKAKEE, ILLINOIS, ) | |
| ) | Jury Demand |
| Defendant. ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on **March 18, 2019,** I electronically filed the foregoing ***Defendant's Motions in Limine*** with the Clerk of the District Court for the Central District of Illinois, Urbana Division, using the CM/ECF system, which will send notification to the following CM/ECF participants:

TO:  Kenneth N. Flaxman
     Joel A. Flaxman
     Kenneth N. Flaxman P.C.
     200 S. Michigan Ave., Ste. 201
     Chicago, IL  60604
     knf@kenlaw.com
     jaf@kenlaw.com

/s/ **G. David Mathues**
MICHAEL W. CONDON, ARDC No. 06192071
G. DAVID MATHUES, ARDC No. 06293314
*Attorneys for Defendant*
HERVAS, CONDON & BERSANI, P.C.
333 Pierce Road, Suite 195
Itasca, IL 60143-3156
P: 630-773-4774   F: 630-773-4851
mcondon@hcbattorneys.com
dmathues@hcbattorneys.com

14